UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:  1:21-cv-21698-DPG

ATHOS OVERSEAS, LTD.

               Plaintiff,

vs.

YOUTUBE, INC., YOUTUBE, LLC, and
GOOGLE, LLC,

               Defendants.

_____/

**DEFENDANTS YOUTUBE, INC., YOUTUBE, LLC, AND GOOGLE LLC's
MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW**

<table>
<tr><td>

STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
150 West Flagler Street, Suite 2200
Miami, Florida 33130
Telephone:  (305) 789-3229
Facsimile:  (305) 789-2664
Jay B. Shapiro, Esq.
David T. Coulter, Esq.
</td><td>

WILSON SONSINI GOODRICH &
ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
Brian M. Willen, Esq.
(*Pro Hac Vice* forthcoming)
Lucy Yen, Esq.
(*Pro Hac Vice* forthcoming)
</td></tr>
</table>

## TABLE OF CONTENTS

**Page**

MOTION TO DISMISS ............................................................................................ 1

MEMORANDUM OF LAW ..................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND............................................... 3

    A.     YouTube and Its Content ID Tool ..................................................... 3

    B.     Plaintiff Athos Overseas and Its Claims Against YouTube.................. 4

ARGUMENT .......................................................................................................... 5

I.      LEGAL STANDARD................................................................................. 5

II.     PLAINTIFF'S CLAIMS ARE TIME-BARRED........................................ 5

    A.     The Sherman Act and FDUTPA Claims Are Time-Barred (Counts XII & XIII) ............................................................................................. 5

    B.     The Copyright Infringement and DMCA Claims Occurring Before May 3, 2018 Are Time-Barred (Counts I through XI)........................ 7

III.    PLAINTIFF FAILS TO STATE COGNIZABLE CLAIMS ........................... 9

    A.     Plaintiff Fails to State a Sherman Act Section 1 Claim (Count XIII).................... 9

    B.     Plaintiff Fails to State a FDUTPA Claim (Count XII) ........................ 13

    C.     Plaintiff Fails to State a Section 1202 Claim (Counts VII & XI) ........................ 15

CONCLUSION..................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### CASES

*49er Chevrolet, Inc. v. General Motors Corp.*,
803 F.2d 1463 (9th Cir. 1986) ................................................................10

*A&E Adventures LLC v. Intercard, Inc.*,
2021 U.S. Dist. LEXIS 57483 (S.D. Fla. Mar. 25, 2021) .......................14

*Am. Ass'n for Advancement of Sci. v. Periodicals Publicacoes Tecnicas*,
2008 U.S. Dist. LEXIS 108104 (S.D. Fla. Sept. 8, 2008) .........................5

*Amey, Inc. v. Gulf Abstract & Title, Inc.*,
758 F.2d 1486 (11th Cir. 1985) ..............................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................15, 16

*Atl. Richfield Co. v. USA Petroleum Co.*,
495 U.S. 328 (1990)................................................................................12

*Bray v. Bank of Am. Corp.*,
784 F. App'x 738 (11th Cir. 2019) ........................................................6, 7

*Brexendorf v. Bank of Am., N.A.*,
319 F. Supp. 3d 1257 (M.D. Fla. 2018)................................................6, 7

*Capital Temporaries, Inc. v. Olsten Corp.*,
506 F.2d 658 (2d Cir. 1974)....................................................................11

*Casa Dimitri Corp. v. Invicta Watch Co. of Am.*,
270 F. Supp. 3d 1340 (S.D. Fla. 2017) ...................................................15

*Chelko v. Does JF Rests., LLC*,
2019 U.S. Dist. LEXIS 121590 (W.D.N.C. July 22, 2019)....................16

*Design Pics v. PBH Network*,
2020 U.S. Dist. LEXIS 201169 (E.D.N.Y. Oct. 27, 2020).....................16

*Dolphin LLC v. WCI Cmtys., Inc.*,
715 F.3d 1243 (11th Cir. 2013) ..............................................................14

*Fin. Sec. Assurance, Inc. v. Stephens, Inc.*,
500 F.3d 1276 (11th Cir. 2007) ................................................................3

*Free Speech Sys., LLC v. Menzel*,
390 F. Supp. 3d 1162 (N.D. Cal. 2019) ..................................................16

*Gen. Cigar Holdings, Inc. v. Altadis, S.A.*,
    205 F. Supp. 2d 1335 (S.D. Fla. 2002) ...................................................................11

*Gonsalvez v. Celebrity Cruises, Inc.*,
    750 F. 3d 1195 (11th Cir. 2013) .............................................................................6

*Greene v. Ala. Dep't of Revenue*,
    746 F. App'x 929 (11th Cir. Sept. 5, 2018) ...........................................................5

*Hoeltzell v. Caldera Graphics*,
    2011 U.S. Dist. LEXIS 175016 (S.D. Fla. Nov. 15, 2011).....................................8

*Hunter v. Bev Smith Ford, LLC*,
    2008 U.S. Dist. LEXIS 34982 (S.D. Fla. Apr. 29, 2008) ......................................13

*Illinois Tool Works Inc. v. Independent Ink, Inc.*,
    547 U.S. 28 (2006)..................................................................................................9

*Integon Life Ins. Corp. v. Browning*,
    989 F.2d 1143 (11th Cir. 1993) ..............................................................................9

*Jacobs v. Tempur-Pedic Int'l., Inc.*,
    626 F.3d 1327 (11th Cir. 2010) ............................................................................11

*Jefferson Parish Hospital Dist. No. 2 v. Hyde*,
    466 U.S. 2 (1984)..................................................................................................11

*JES Props., Inc. v. USA Equestrian, Inc.*,
    2005 U.S. Dist. LEXIS 43122 (M.D. Fla. May 9, 2005).......................................13

*Jovine v. Abbott Labs., Inc.*,
    795 F. Supp. 2d 1331 (S.D. Fla. 2011) .................................................................14

*Keogh v. Big Lots Corp.*,
    2006 U.S. Dist. LEXIS 29496 (M.D. Tenn. Apr. 27, 2006)..................................17

*L.H. Equity Invs. LLC v. Wade*,
    2010 U.S. Dist. LEXIS 150922 (S.D. Fla. Mar. 29, 2010)....................................11

*Licul v. Volkswagen Grp. of Am.*,
    2013 U.S. Dist. LEXIS 171627 (S.D. Fla. Dec. 5, 2013) ....................................6, 7

*Macias v. HBC of Fla., Inc.*,
    694 So. 2d 88 (Fla. Dist. Ct. App. 1997) ..............................................................14

*Marlborough Holdings Grp., Ltd. v. Azimut-Benetti*,
    505 Fed. App'x. 899 (11th Cir. 2013) ....................................................................7

*Matthews v. Am. Honda Motor Co.*,
    2012 U.S. Dist. LEXIS 90802 (S.D. Fla. June 6, 2012) .........................................7

*Merideth v. Chi. Tribune Co.*,
  2014 U.S. Dist. LEXIS 2346 (N.D. Ill. Jan. 9, 2014) ............................................................17

*Metzler v. Bear Auto. Serv. Equip. Co., SPX*,
  19 F. Supp. 2d 1345 (S.D. Fla. 1998) ...................................................................................11

*On Top Records Corp. v. Sunflower Entm't Co.*,
  U.S. Dist. LEXIS 190970 (S.D. Fla. Sept. 24, 2015) .............................................................8

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
  572 U.S. 663 (2014)...........................................................................................................1, 8

*Point Blank Sols., Inc. v. Toyobo Am., Inc.*,
  2011 U.S. Dist. LEXIS 51457 (S.D. Fla. May 13, 2011) .......................................................14

*Q Club Resort & Residences Condo. Ass'n v. Q Club Hotel, LLC*,
  2010 U.S. Dist. LEXIS 147051 ..............................................................................................11

*QSGI, Inc. v. IBM Glob. Fin.*,
  2012 U.S. Dist. LEXIS 49601 (S.D. Fla. Mar. 13, 2012).......................................................13

*Raimbeault v. Accurate Mach. & Tool, LLC*,
  2014 U.S. Dist. LEXIS 140313 (S.D. Fla. Sept. 30, 2014) ....................................................14

*Ray v. Spirit Airlines, Inc.*,
  836 F.3d 1340 (11th Cir. 2016) ...............................................................................................5

*Satellite Fin. Planning Corp. v. First Nat. Bank of Wilmington*,
  633 F. Supp. 386 (D. Del. 1986)............................................................................................10

*Shop & Save Food Markets, Inc. v. Pneumo Corp.*,
  683 F.2d 27 (2d Cir. 1982).....................................................................................................11

*Siva v. Am. Bd. of Radiology*,
  2021 U.S. Dist. LEXIS 3806 (N.D. Ill. Jan. 8, 2021) ............................................................10

*Stevens v. CoreLogic, Inc.*,
  899 F.3d 666 (9th Cir. 2018) ..................................................................................................17

*Stripteaser, Inc. v. Strike Point Tacke, LLC*,
  2014 U.S. Dist. LEXIS 28091 (S.D. Fla. Mar. 5, 2014).........................................................15

*Tomelleri v. Natale*,
  2020 U.S. Dist. LEXIS 125264 (S.D. Fla. July 14, 2020).......................................................8

*Viacom Int'l. Inc. v YouTube, Inc.*,
  940 F. Supp. 2d 110 (S.D.N.Y. 2013)......................................................................................3

*Victor Elias Photography, LLC v. Ice Portal, Inc.*,
  2021 U.S. Dist. LEXIS 86216 (S.D. Fla. May 3, 2021) ..........................................................17

*Walker v. Merrill Lynch & Co. Inc.*,
   181 F. Supp. 3d 223 (S.D.N.Y. 2016)......................................................................................12

## STATUTES

15 U.S.C. § 1 et seq.......................................................................................................... *passim*

15 U.S.C. § 15(b) .........................................................................................................................6

17 U.S.C. § 507(b) .......................................................................................................................7

17 U.S.C. § 1202(b) ........................................................................................................ *passim*

17 U.S.C. § 1202(c) .....................................................................................................................15

Fla. Stat. § 95.11(3)(f) ................................................................................................................6

Fla. Stat. § 501.201 et seq. ............................................................................................. *passim*

## RULES

Fed. R. Civ. P. 12(b)(6).......................................................................................................1, 5, 12

## MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants YouTube, Inc., YouTube, LLC, and Google LLC ("YouTube") respectfully request that the Court dismiss Plaintiff's Complaint.

## MEMORANDUM OF LAW

YouTube has developed—at great expense—various tools to help copyright holders find and, if they wish, remove content that third parties post to YouTube. Among those is Content ID, YouTube's advanced video-fingerprinting system. Based on its dissatisfaction with conditions that YouTube allegedly attached to the use of Content ID in 2015, Plaintiff Athos Overseas, Ltd. ("Plaintiff") asserts claims against YouTube for copyright infringement and violations of the Sherman Act, Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and Section 1202(b) of the Digital Millennium Copyright Act ("DMCA"). Plaintiff's claims fail as a matter of law, and the Complaint should be dismissed for multiple reasons.

*First*, Plaintiff's Sherman Act and FDUTPA claims—both of which are governed by four-year statutes of limitations—are time-barred. Those claims are premised on discussions between YouTube and Plaintiff's principal, Carlos Vasallo, during which YouTube allegedly conditioned Plaintiff's access to Content ID on terms that Plaintiff found unreasonable. Those discussions are all alleged to have occurred, in their entirety, in 2015, and whatever claims Plaintiff might have based on YouTube's offer fully accrued at that time. Yet Plaintiff indefensibly waited nearly six (6) years after its claims accrued to bring this lawsuit and assert its Sherman Act and FDUTPA claims. Plaintiff's copyright claims are also untimely. The Copyright Act also has a strict limitations period—pursuant to which "an infringement is actionable within three years, and only three years, of its occurrence." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014). Here, Plaintiff points to numerous alleged infringements and violations that occurred before that window, and the Complaint makes no effort to take account of the limitations period. It is not Defendants' or the Court's job to sort out what claims Plaintiff can

actually assert within the Copyright Act's lookback period. Instead, the Court should dismiss the copyright causes of action with instructions that Plaintiff may assert only such claims that accrued after May 3, 2018.

*Second,* Plaintiff's Sherman Act claim fails as a matter of law. The Complaint tries to concoct a "tying" claim based on conditions (a revenue sharing agreement and a release) that YouTube supposedly attached to Content ID. Even taking Plaintiff's allegations as true, they do not remotely amount to a viable Section 1 tying claim. A Section 1 tying claim requires allegations that, in order to buy one desirable product for which the defendant possessed market power (the "tying product"), the plaintiff was forced to purchase another undesirable one (the "tied product"), resulting in anti-competitive harm in the tied product market. But here the only product that YouTube supposedly offered is Content ID, which Plaintiff alleges is the "tied product." Plaintiff fails to allege any separate "tying product"—instead, its sole allegation is that YouTube supposedly tied the use of Content ID to a revenue sharing agreement and a release. But those simply are not "products" sold by YouTube, much less products that are: (1) alleged to be desirable to Plaintiff; (2) capable of market definition or analysis; or (3) products for which YouTube possesses dominant market power. Instead, the release and revenue sharing agreement are simply unwanted contract terms, for which there is no conceivable cause of action for tying.

*Third*, Plaintiff's FDUTPA claim is based solely on the same deficient antitrust theory and must similarly be dismissed. Beyond that, Plaintiff lacks standing to sue under FDUTPA: the Complaint makes no allegation that YouTube's allegedly unfair offer regarding Content ID inflicted any cognizable harm on Plaintiff that can be redressed under FDUTPA—nor could it— given that it paid nothing to YouTube.

*Fourth*, Plaintiff's claim under Section 1202(b) of the DMCA is deficient on its face. The Complaint does not identify any copyright management information ("CMI") that YouTube supposedly removed from any video containing Plaintiff's copyrighted works, let alone allege any facts to support a plausible inference that YouTube did so *intentionally* and with *knowledge* that doing so would facilitate copyright infringement.

For all these reasons, YouTube respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.      YouTube and Its Content ID Tool**

YouTube is a popular online video hosting platform where content creators may upload videos free of charge, enabling its billions of users to view, share, and comment on them. *See* ¶¶ 6, 49, 56-59.[1] YouTube is committed to helping copyright owners protect against the unauthorized use of their works on the service, and it has implemented numerous industry-leading initiatives toward this end. *See* ¶ 46. YouTube complies in all respects with the safe harbor provisions of the DMCA. *See* ¶ 25 (explaining YouTube's process for removing infringing content: "[o]nce a pirated movie was found, Mr. Vasallo and Plaintiff would send YouTube a takedown notice. YouTube would then remove the pirated video movie in its entirety"); *see also Viacom Int'l. Inc. v YouTube, Inc.*, 940 F. Supp. 2d 110 (S.D.N.Y. 2013).

YouTube's commitment also goes far beyond what the law requires. YouTube has invested substantial time and resources to develop Content ID, an advanced content identification system that uses digital fingerprinting technology to help identify copyrighted materials. *See* ¶¶ 17, 46; Ex. 1.[2] Content ID enables the automatic blocking of videos matching the user's copyrighted works and allows copyright holders to claim matching videos, collect associated advertisement revenue, and track the appearance of matching videos without revenue sharing. Ex. 1. YouTube also makes available additional free tools—including its robust takedown request system—allowing all users, including Plaintiff, to flag allegedly infringing content. Ex. 2 ("By default, the copyright takedown webform is available for everyone on YouTube to use."); *see* ¶ 25.

---

[1] Citations to "¶ _" are to the Complaint.
[2] Citations to "Ex. _" are exhibits attached to the Declaration of Lucy Yen. The Complaint cites "YouTube's own Help page" regarding Content ID to describe its claims against YouTube. ¶ 51. The Complaint thus incorporates the contents of the YouTube Help page as related to Content ID, which the Court may consider in ruling on this motion. *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007).

### B.      Plaintiff Athos Overseas and Its Claims Against YouTube

Plaintiff is a wholly owned company of Carlos Vasallo, a producer of Mexican and Latin American films. ¶ 1. Plaintiff claims to own the copyrights of a collection of such films. ¶¶ 1-4. Plaintiff asserts that for over six years now, unidentified third parties have uploaded clips or versions of some of those movies to YouTube. *See* ¶ 27.

The Complaint alleges that Mr. Vasallo contacted YouTube in 2015 to discuss concerns about his "movie collection" appearing on YouTube. ¶ 9. More specifically, Plaintiff notes that he met with YouTube's head of Hispanic content, Mr. Juanjo Duran. ¶¶ 12-14. During the meeting, Plaintiff claims that YouTube offered Mr. Vasallo the ability to use Content ID to streamline Plaintiff's copyright-monitoring efforts. ¶¶ 16-17, 20. But Plaintiff declined YouTube's offer (¶¶ 19, 21), according to the Complaint, because Mr. Vasallo believed that he was being offered "unreasonable" terms (¶ 22). More specifically, he alleges that YouTube conditioned Content ID on a requirement of the parties entering into a "revenue-sharing" arrangement and on a waiver of prior infringement claims. ¶¶ 18, 19. Plaintiff does not allege any discussions or communications with YouTube after 2015 regarding Content ID or any supposed offers regarding its availability.

In the interim, Plaintiff has continued to take advantage of YouTube's other (free) copyright management tools, including its notice-and-takedown system. Ex. 2; *see* ¶ 25; Compl. Ex. B. Plaintiff claims it regularly monitored YouTube for instances of allegedly unauthorized uploads of his works, and has used YouTube's tools to successfully remove allegedly infringing videos from YouTube. *Id.*; *see* ¶¶ 46, 51; Compl. Ex. B. Plaintiff does not claim that YouTube failed to remove any of the videos that Plaintiff and its agents have identified as infringing. Instead, Plaintiff offers its belief that YouTube should be solely responsible for proactively flagging and removing content that might violate Plaintiff's copyrights. *See* ¶ 53 ("[C]ompanies, such as Defendants, should be required to take reasonable steps to anticipate and filter potential copyright infringements.").

Plaintiff filed this lawsuit on May 3, 2021—nearly six years after the allegedly precipitating meeting. Plaintiff asserts a purported "tying" claim under Section 1 of the Sherman Act and a claim for unfair trade practices under FDUTPA based on YouTube's alleged conditioning of Content ID on allegedly unacceptable terms. ¶¶ 183-207 (Counts XII & XIII).[3] Plaintiff also asserts various claims under the Copyright Act based on the alleged posting of certain copies of its works on YouTube. *See, e.g.*, ¶¶ 137-147 (Count VII). And, based on cryptic allegations that YouTube removes unspecified "copyright management information," Plaintiff asserts a claim under Section 1202(b) of the DMCA. ¶¶ 172-182 (Count XI).

## ARGUMENT

## I.   LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347–48 (11th Cir. 2016) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "To state a plausible claim for relief, a plaintiff must go beyond pleading merely the 'sheer possibility' of unlawful activity by a defendant and must offer 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Greene v. Ala. Dep't of Revenue*, 746 F. App'x 929, 930-31 (11th Cir. Sept. 5, 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "When the allegations contained in a complaint are wholly conclusory and fail to set forth facts which, if proved, would warrant the relief sought, it is proper to dismiss for failure to state a claim." *Am. Ass'n for Advancement of Sci. v. Periodicals Publicacoes Tecnicas*, 2008 U.S. Dist. LEXIS 108104, at *7 (S.D. Fla. Sept. 8, 2008) (citation omitted).

## II.   PLAINTIFF'S CLAIMS ARE TIME-BARRED

### A.   The Sherman Act and FDUTPA Claims Are Time-Barred (Counts XII & XIII)

---

[3] In an apparent scrivener's error, Plaintiff has designated both its FDUTPA count (¶¶ 183-192) and its Sherman Act Section 1 count (¶¶ 193-207) as "Count XII." We therefore refer to the Sherman Act count herein as Count XIII.

Both the Sherman Act and FDUTPA are governed by four-year statutes of limitations. 15 U.S.C. § 15(b) (Sherman Act); Fla. Stat. § 95.11(3)(f) (2018) (FDUTPA). Where a complaint reveals on its face it is untimely under the statute of limitations, its claims are subject to dismissal. *See, e.g.*, *Gonsalvez v. Celebrity Cruises, Inc.*, 750 F. 3d 1195, 1196-97 (11th Cir. 2013); *Bray v. Bank of Am. Corp.*, 784 F. App'x 738, 741-42 (11th Cir. 2019); *Brexendorf v. Bank of Am., N.A.*, 319 F. Supp. 3d 1257, 1264 (M.D. Fla. 2018); *Licul v. Volkswagen Grp. of Am.*, 2013 U.S. Dist. LEXIS 171627, at *15 (S.D. Fla. Dec. 5, 2013). Plaintiff's own allegations establish on their face that Plaintiff's claims under these statutes accrued in 2015—nearly six full years before this lawsuit was filed on May 3, 2021—and thus are time-barred.

Plaintiff's Sherman Act and FDUTPA claims are based on the same theory: Plaintiff alleges that YouTube unlawfully conditioned access to its Content ID tool on the demand that Plaintiff share revenue associated with the presence of its works on YouTube, grant YouTube a license to those works, and release YouTube from any claims based on prior unauthorized postings. ¶¶ 188-91 (FDUTPA), 195-98 (Sherman Act); *accord* ¶¶ 17-21. That offer—which Plaintiff claims constituted "tying" under the Sherman Act and an unfair trade practice under FDUTPA—was allegedly communicated during a 2015 meeting between Mr. Vasallo (Plaintiff's principal) and Mr. Duran (a YouTube representative). ¶¶ 11-19. The Complaint makes clear that, at the time of that 2015 meeting, Mr. Vasallo believed YouTube's alleged proposals to be objectionable and unacceptable. ¶ 19. Indeed, given his unwillingness to use YouTube's Content ID tool and his concerns about the terms proposed by YouTube, Plaintiff alleges that Mr. Vasallo promptly retained a law firm to address his concerns. ¶ 25.

On its face, Plaintiff's Complaint makes clear that the ***entirety*** of the discussions which form the basis of Plaintiff's Sherman Act and FDUTPA claims—both YouTube's supposed communication to Plaintiff of the allegedly unlawful offer and Plaintiff's rejection of it— ***occurred in 2015***. *¶ 9*. The Complaint neither alleges nor suggests that any relevant communications or discussions between the parties about Content ID occurred any time after that. Plainly, whatever claims that Plaintiff might have had (whether under the Sherman Act,

FDUTPA, or any other statute) based on the supposed "tying" or purportedly unfair conditions that YouTube allegedly attached to Content ID in its discussions with Mr. Vasallo fully accrued in 2015. Plaintiff was aware of YouTube's supposed offer at the time and, based on its own allegations, Mr. Vasallo decisively rejected YouTube's approach then and there. Yet, Plaintiff did not file this lawsuit until May 3, 2021—nearly six years after the relevant discussions took place, and two years after the four-year statute of limitations for Plaintiff's Sherman Act and FDUTPA claims expired. Plaintiff's claims are thus time-barred on their face and must be dismissed with prejudice. *See, e.g.*, *Bray*, 784 F. App'x at 741-42 (affirming dismissal of Sherman Act claim as time-barred); *Marlborough Holdings Grp., Ltd. v. Azimut-Benetti*, 505 Fed. App'x. 899, 906 (11th Cir. 2013) (affirming dismissal of FDUTPA claim based on statute of limitations); *Brexendorf*, 319 F. Supp. 3d at 1263-64 (dismissing FDUTPA claim based on statute of limitations); *Licul*, 2013 U.S. Dist. LEXIS 171627, at *15 (same); *Matthews v. Am. Honda Motor Co.*, 2012 U.S. Dist. LEXIS 90802, at *9-13 (S.D. Fla. June 6, 2012) (same).

**B.     The Copyright Infringement and DMCA Claims Occurring Before May 3, 2018 Are Time-Barred (Counts I through XI)**

Plaintiff's  statute of limitations problems run deeper. Plaintiff alleges multiple acts of copyright infringement based on third-party uploads of Plaintiff's videos to YouTube over *seven years*. *See* Compl. Ex. B at 1-89. And, Plaintiff's claim under Section 1202(b) of the DMCA appears to cover the same period of time. ¶¶ 139, 174 (referencing undefined "works in this case"). Plaintiff's approach ignores that Copyright Act claims must be "commenced within three years after the claim accrued." 17 U.S.C. § 507(b).[4] As the Supreme Court has explained:

> Under the Act's three-year provision, an infringement is actionable within three years, and only three years, of its occurrence. And the infringer is insulated from liability for earlier infringements of the same work. Thus, when a defendant has engaged (or is alleged to have engaged) in a series of discrete infringing acts, the copyright holder's suit ordinarily will be timely under § 507(b) with respect to more recent acts of infringement (i.e., acts within the three-year window), but untimely with respect to prior acts of the same or similar kind.

---

[4] Section 507(b) applies to any civil action "under the provisions of this title [Title 17]," which includes Section 1202(b) claims. *See* 17 U.S.C. § 1202(b).

*Petrella*, 572 U.S. at 670-72 (citation omitted). Accordingly, any acts of infringement (or CMI removal) of Plaintiff's works on YouTube that occurred (or perhaps were, or could have been, discovered)[5] more than three years before this case was filed are categorically barred as a matter of law.

The Complaint identifies thousands of videos for which Plaintiff issued takedown notices (and that were removed by YouTube) prior to May 3, 2018. *See* ¶ 70; Compl. Ex. B. at 1-89. For all of these videos, Plaintiff was unquestionably aware of those instances of alleged infringement (or any possible issues regarding CMI removal), brought them to YouTube's attention, and caused any purported infringement to cease more than three years before it commenced this lawsuit. Any such claim accrued outside the "three-year look-back limitations period." *Petrella*, 572 U.S. at 670; *accord Hoeltzell v. Caldera Graphics*, 2011 U.S. Dist. LEXIS 175016, at *5-6 (S.D. Fla. Nov. 15, 2011) (dismissing time-barred copyright infringement).

Plaintiff may have certain claims that accrued within the limitations period, on or after May 3, 2018, but its failure to distinguish between timely and untimely claims of copyright infringement and removal of CMI warrants dismissal of those causes of action in their entirety. *See, e.g.*, *On Top Records Corp. v. Sunflower Entm't Co.*, U.S. Dist. LEXIS 190970, at *7-9 (S.D. Fla. Sept. 24, 2015) (dismissing complaint for failure to distinguish between timely and untimely claims of copyright infringement under the statute of limitations (citing *Petrella*, 572 U.S. at 663)). It is not this Court's job—nor is it Defendants'—to sort out any timely copyright claims Plaintiff might have from the mass of clearly untimely ones. If Plaintiff wishes to proceed with its copyright and CMI claims, it should be required to limit itself to claims that accrued

---

[5] *Petrella* further explains that "the limitations period generally begins to run at the point when the plaintiff can file suit and obtain relief. A copyright claim thus arises or 'accrue[s]' when an infringing act occurs." *Petrella*, 572 U.S. at 670. But the Court noted that some courts have adopted "as an alternative to the incident of injury rule, a 'discovery rule,' which starts the limitations period when 'the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim.'" *Id.* at 670 n.4 (citation omitted). The Eleventh Circuit has not weighed in on that issue. *See Tomelleri v. Natale*, 2020 U.S. Dist. LEXIS 125264, at *5-6 (S.D. Fla. July 14, 2020) *recommendation rejected on other grounds at* 2020 U.S. Dist. LEXIS 183931, at *3 (S.D. Fla. Oct. 5, 2020). Plaintiff's claims here should be dismissed either way.

within the three years of its Complaint. The Court should accordingly dismiss those claims with instructions to comply with the applicable statute of limitations.

## III.   PLAINTIFF FAILS TO STATE COGNIZABLE CLAIMS

Plaintiff's claims also fail on merits, as the Complaint does not state a legally viable claim under the Sherman Act, FDUTPA, or Section 1202 of the DMCA (Counts VII & XI through XIII).

### A.   Plaintiff Fails to State a Sherman Act Section 1 Claim (Count XIII)

Plaintiff seeks to assert a "tying" claim under Section 1 of the Sherman Act—on the theory that YouTube's Content ID is a "tied product" to which Plaintiff was offered access only in exchange for a revenue sharing agreement and a release. This claim fails as a matter of law.

As the Supreme Court has explained, in order for a tying arrangement to violate Section 1, the defendant seller must possess dominant market power in a "tying" product that is sufficient to *force* the buyer to also purchase an otherwise unwanted "tied" product:

> [T]he essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms.

*Illinois Tool Works Inc. v. Independent Ink, Inc.*, 547 U.S. 28, 34-35 (2006) (quoting *Jefferson Parish Hospital Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984). There are five elements in such a claim: "(1) two separate products, a 'tying' or 'desirable' product and a 'tied' or 'undesirable' product; (2) the buyer was in fact forced to buy the tied product to get the tying product; that is, a 'tying'; (3) the seller possessed sufficient economic power in the tying product market to coerce the buyer's acceptance of the tied product; (4) an anti-competitive effect in the tied product market; and (5) the involvement of a not insubstantial amount of interstate commerce in the tied product market." *Integon Life Ins. Corp. v. Browning*, 989 F.2d 1143, 1150 (11th Cir. 1993) (citing *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1502-03 (11th Cir. 1985)). Plaintiff satisfies none of these elements.

*First*, Plaintiff has failed to identify "two separate products" offered for purchase by

YouTube. The complaint identifies Content ID as the "tied" product (¶ 195), but identifies no separate "tying" product at all. Instead, Plaintiff's allegation is that "YouTube offered Content ID to Plaintiff in exchange for revenue sharing exclusively derived from Plaintiff's copyrighted works, as well as Plaintiff's waiver of any prior claims against YouTube for copyright infringement of Plaintiff's copyrighted works." ¶ 196. Plaintiff does not even try to explain how a waiver or revenue sharing agreement could possibly be a separate *product* that YouTube was attempting to sell. If a company offers to sell a customer a truck, but asks the customer to pay 50% of all the revenue it earns from deliveries made via that truck, it makes no sense to think of the truck and the revenue-sharing demand as two separate products (or of the revenue-sharing demand as an offer to purchase anything). So too here, at most, Plaintiff has identified ***unwanted contract terms*** associated with Content ID, but that simply does not amount to unlawful tying of one product to another. *See Siva v. Am. Bd. of Radiology*, 2021 U.S. Dist. LEXIS 3806, at *14 (N.D. Ill. Jan. 8, 2021) (finding service with unwanted contract terms did not constitute "separate products": no tying where a "gardener offered to maintain a customer's garden but required the customer to supply the fertilizer" (citing *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1290 (9th Cir. 1983)); *Satellite Fin. Planning Corp. v. First Nat. Bank of Wilmington*, 633 F. Supp. 386, 396-97 (D. Del. 1986) (granting motion to dismiss tying claim where defendant bank offered only one product to plaintiff, but conditioned the sale of that product on plaintiff's assent to "unwanted" financial terms that did not involve the corresponding purchase of any unwanted product). That is especially so because in supposedly asking for a license and/or revenue sharing agreement, YouTube was not offering to sell anything to Plaintiff. *See 49er Chevrolet, Inc. v. General Motors Corp.*, 803 F.2d 1463, 1469 (9th Cir. 1986) ("In this case, where the dealers perform repair services for GM and are paid by GM, they are not buyers of an allegedly tied product at all, but are sellers. Accordingly, the court was correct that the existing case law on tying does not apply.").

 *Second*, Plaintiff cannot satisfy the second indispensable element of a tying claim because it was not "forced" to buy Content ID (or any other product). To the contrary, Plaintiff

admits it *refused* YouTube's offer of Content ID—and indeed never purchased anything from YouTube. ¶¶ 21, 25-26. With this admission, Plaintiff has effectively pleaded itself out of court: "[N]o tying arrangement can possibly exist unless the person aggrieved can establish that he has been *required to purchase* something which he does not want to take." *Capital Temporaries, Inc. v. Olsten Corp.*, 506 F.2d 658, 662 (2d Cir. 1974) (plaintiff must establish that he is an "unwilling purchaser of an unwanted product") (emphasis added); *Metzler v. Bear Auto. Serv. Equip. Co., SPX*, 19 F. Supp. 2d 1345, 1360 (S.D. Fla. 1998) (dismissing Sherman Act claim for lack of "proof of actual coercion"); *accord Jefferson Parish*, 466 U.S. 2, 25 ("Only if patients are forced to purchase [defendant's] services as a result of the hospital's market power would the arrangement have anticompetitive consequences."); *Shop & Save Food Markets, Inc. v. Pneumo Corp.*, 683 F.2d 27, 30-32 (2d Cir. 1982) ("[A] tying arrangement cannot exist unless the buyer was *actually coerced* by the seller into agreeing to buy the tied product.") (emphasis added). Because Plaintiff admittedly was not coerced by YouTube to purchase any product, it has no tying claim.

*Third*, Plaintiff has not sufficiently pleaded any relevant market. To allege a tying claim, "a plaintiff must identify the relevant market in which the tying product exists, and must allege that the seller has sufficient power within that market to be able to force buyers to purchase the tied product." *Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335, 1355 (S.D. Fla. 2002) (setting forth detailed pleading requirements necessary to establish relevant markets), *aff'd*, 54 F. App'x 492 (11th Cir. 2002); *accord Jacobs v. Tempur-Pedic Int'l., Inc.*, 626 F.3d 1327, 1336 (11th Cir. 2010). Without clear market allegations in the complaint, dismissal is required. *See L.H. Equity Invs. LLC v. Wade*, 2010 U.S. Dist. LEXIS 150922, at *9 (S.D. Fla. Mar. 29, 2010) (collecting cases).

The Complaint here makes no effort to identify (much less define) the relevant markets at issue. There are no allegations at all identifying a tying market (where Plaintiff is also required to allege market power), similarity of competing products, or cross-elasticity of demand. *Jacobs*, 626 F. 3d at 1337-38. And, with respect to the "tied" market (where Plaintiff is also required to

allege anti-competitive effects), the Complaint makes only two wholly conclusory allegations without ever defining what the alleged tied market is: (1) "YouTube's offer to provide Content ID in exchange for a waiver of prior copyright infringement claims has an anticompetitive effect on the tied market" (¶ 205); and (2) "YouTube's unwillingness to prevent the continued piracy of an individual's copyrighted material without the individual's acceptance of YouTube's unreasonable Content ID offer has an anti-competitive effect on the tied market" (¶ 206). These threadbare allegations again come unadorned with any supporting facts necessary to determine and define the relevant market, or which would support any ultimate conclusion of anticompetitive effects in that market. *See Q Club Resort & Residences Condo. Ass'n v. Q Club Hotel, LLC*, 2010 U.S. Dist. LEXIS 147051, at *5 (S.D. Fla. Jan. 5, 2010) ("Rule 12(b)(6) dismissal is appropriate where the plaintiff's description of the [relevant] market is legally inadequate and/or wholly conclusory" and dismissing complaint "because the plaintiffs fail[ed] to provide a legally adequate description of the 'relevant product market' and 'relevant geographic market'").

*Fourth*, Plaintiff fails to allege antitrust injury. "The antitrust injury requirement ensures that a plaintiff can recover only if the loss stems from a *competition-reducing* aspect or effect of the defendant's behavior." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990) (emphasis added). Not only does Plaintiff fail to identify the market that could potentially be affected, it alleges only a uniquely personal injury. *See* ¶ 7. And, far from a market-wide effect on content holders, Plaintiff alleges that "Defendants have not treated other movie collections, owned by non-Hispanic companies, in the same manner as they are treating Mr. Vasallo's movie collection." *See* ¶ 24. Further, according to Plaintiff, "other preferred Content ID holders with extensive catalogues of copyrighted materials can determine whether to block uploads of their copyright materials." ¶ 65. That claimed ability runs counter to his claim that Content ID is causing anti-competitive harm. *See Amey,* 758 F.2d at 1510 (affirming dismissal of tying claim where only plaintiff was harmed, explaining "the almost inherent inability of a single consumer . . . to litigate an antitrust claim"); *Walker v. Merrill Lynch & Co. Inc.*, 181 F. Supp. 3d 223, 235

(S.D.N.Y. 2016) (dismissing tying claim where plaintiff failed to "plausibly allege anti-competitive effects in the tied product's market"). Thus, even assuming that Plaintiff was harmed by his decision not to use Content ID, any resulting injury does not amount to "competition-reducing" injury recognized by antitrust laws.

For all these reasons, Plaintiff's tying claim fails as a matter of law and should be dismissed.

### B.    Plaintiff Fails to State a FDUTPA Claim (Count XII)

Plaintiff's FDUTPA claim fails because it is based on the same deficient allegations as its Sherman Act claim, and Plaintiff lacks standing to bring it.

Plaintiff's FDUTPA theory is the same as its Sherman Act theory: that the alleged "conditioning of the availability of the Content ID system for exclusive rights holders on waivers of their prior infringement is an unfair trade practice." ¶ 190; *compare* ¶¶ 188-190 (FDUTPA) *with* ¶¶ 196-198 (Sherman Act). It is black-letter law that when "a plaintiff's FDUTPA claim is based on the same allegations as its antitrust claim, failure to establish a violation of antitrust law is sufficient to conclude that the plaintiff has also failed to state a FDUTPA claim." *QSGI, Inc. v. IBM Glob. Fin.*, 2012 U.S. Dist. LEXIS 49601, at *12 (S.D. Fla. Mar. 13, 2012) (dismissing Sherman Act and FDUTPA claims on same grounds); *accord JES Props., Inc. v. USA Equestrian, Inc.*, 2005 U.S. Dist. LEXIS 43122, at *64 (M.D. Fla. May 9, 2005) ("Plaintiffs' FDUTPA claim is based on the same allegations as their antitrust claims. Therefore, for the same reasons this Court has found no violation of the Federal antitrust laws, this Court finds that Plaintiffs have failed to establish the elements of a violation of Fla. Stat. § 501.201 et seq."); *Hunter v. Bev Smith Ford, LLC*, 2008 U.S. Dist. LEXIS 34982, at *20 (S.D. Fla. Apr. 29, 2008), *aff'd*, 353 F. App'x 218 (11th Cir. 2009) (because plaintiff based FDUTPA allegations on violation of state and federal statutes that court already rejected, FDUTPA claim is similarly unviable).

While the Court need go no further to dismiss Plaintiff's FDUTPA claim, that claim cannot stand even apart from the Sherman Act. To state a FDUTPA claim, Plaintiff "must allege

(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013). Here, Plaintiff has not identified any deceptive or unfair practice: even if its allegations were true, Plaintiff was not deceived—its story is that YouTube explained the conditions under which Content ID would be available and Plaintiff refused those terms. Nor does Plaintiff explain why, even if Mr. Vasallo did not like those (supposed) conditions, they were unfair as a matter of law.

In any event, Plaintiff suffered no actual damages from YouTube's purported conditioning of Content ID. "Under FDUTPA, Plaintiffs suffered damages when they purchased something that was not what they were led to believe they were purchasing." *Point Blank Sols., Inc. v. Toyobo Am., Inc.*, 2011 U.S. Dist. LEXIS 51457, at *18 (S.D. Fla. May 13, 2011); *accord A&E Adventures LLC v. Intercard, Inc.*, 2021 U.S. Dist. LEXIS 57483, at *39 (S.D. Fla. Mar. 25, 2021) ("FDUTPA damages are *limited* to the product's diminution in value"). But that is not what happened here. On Plaintiff's own account, it unilaterally decided not to use Content ID, and Athos never paid YouTube anything, whether for Content ID or for any other product or service. *See supra* at 10. Under these circumstances, Plaintiff suffered no damages that can give rise to a FDUTPA claim against YouTube. *See, e.g.*, *Raimbeault v. Accurate Mach. & Tool, LLC*, 2014 U.S. Dist. LEXIS 140313, at *19 (S.D. Fla. Sept. 30, 2014) (dismissing FDUTPA claim because plaintiff failed to allege the "purchase of goods or services from any Defendant"); *Jovine v. Abbott Labs., Inc*., 795 F. Supp. 2d 1331, 1344 (S.D. Fla. 2011) (rejecting plaintiff's effort to predicate FDUTPA damages claim on "injury he suffered beyond the purchase price of the product"); *Macias v. HBC of Fla., Inc.*, 694 So. 2d 88, 90 (Fla. Dist. Ct. App. 1997) ("Based upon Macias' allegations in the amended complaint that she was not afforded an opportunity to even enter the contest due to its premature termination by HBC, it is clear that she sustained no losses as a result of the alleged violations of FDUTPA and was not otherwise an aggrieved party.").[6] For this reason as well, Plaintiff's FDUTPA claim fails as a matter of law.

---

[6] The only damages Plaintiff even tries to identify are those caused by the supposed infringement of its copyrighted works on YouTube. But "the Copyright Act preempts a

(continued...)

**C.      Plaintiff Fails to State a Section 1202 Claim (Counts VII & XI)**

Plaintiff's claim under Section 1202 of the DMCA, which governs the removal of "copyright management information" ("CMI") from copyrighted works, should also be dismissed. Section 1202(b) contains two provisions: (1) a prohibition on "intentionally" removing or altering CMI without authorization, 17 U.S.C. § 1202(b)(1); and (2) a prohibition on distributing copies of works "knowing" that CMI associated with them had been impermissibly removed or altered without authorization, *id*. §1202(b)(3).[7] To establish a claim under either provision, the plaintiff must show that the defendant knew or had "reasonable grounds to know" that its conduct "will induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b).

Plaintiff's CMI claim is cryptic, but whatever theory it advances, fails to state a viable claim. *First*, Plaintiff does not identify either the relevant CMI or any relevant videos from which CMI was supposedly removed. Plaintiff's theory is that unidentified third parties posted videos on YouTube that contained clips or copies of Plaintiff's movies. ¶¶ 7, 67. Plaintiff alleges generally that its "works in this case contains [*sic*] copyright management information" (¶¶ 139, 174), and that "[w]hile processing the unlawful and unauthorized uploading of Plaintiff's copyrighted materials, YouTube intentionally and knowingly removed or perpetuated the removal of the Plaintiff's copyright management information of the Plaintiff works" (¶¶ 142, 177). But setting aside threadbare recitals, which are "not entitled to the assumption of truth," *Iqbal*, 556 U.S. at 680, absent from the Complaint is even a single concrete reference to any actual video that, at the time it was uploaded to YouTube, had Plaintiff's CMI associated with it,

---

FDUTPA claim premised on allegations of copying." *Casa Dimitri Corp. v. Invicta Watch Co. of Am.*, 270 F. Supp. 3d 1340, 1354 (S.D. Fla. 2017); *accord Stripteaser, Inc. v. Strike Point Tacke, LLC*, 2014 U.S. Dist. LEXIS 28091, at *15 (S.D. Fla. Mar. 5, 2014) (explaining that where "the only unfair or deceptive practice is the same conduct which forms the basis of the plaintiff's copyright claim, the FDUTPA claim is preempted" (citations omitted)). And certainly nothing in FDUTPA allows a plaintiff to recover copyright damages or use such damages to sustain a claim under the statute.

[7] CMI is defined as "information conveyed in connection with copies . . . or displays of a work," including "[t]he title and other information identifying the work," information about the copyright owner, and various other categories of information. 17 U.S.C. § 1202(c).

but where such CMI was supposedly removed by YouTube, whether during the upload process or afterwards. ¶¶ 75, 85, 172-182.

This absence is critical. The Complaint says, "some of the Plaintiff's works include metadata on their digital files, others include the mentioned information in their packaging." ¶¶ 139, 174. But of course, if the CMI was just on the packaging (for example, of a DVD), there is no way it could have been removed by YouTube if someone uploaded a clip of the work. Likewise, if CMI disappeared before the videos at issue were uploaded to YouTube (or was never there in the first place), there was nothing for YouTube, even theoretically, to remove. In short, the actual facts pleaded in the Complaint do not "permit the court to infer more than the mere possibility of misconduct," which is not enough to state a claim. *Iqbal*, 556 U.S. at 679; *accord Design Pics v. PBH Network*, 2020 U.S. Dist. LEXIS 201169, at *5 (E.D.N.Y. Oct. 27, 2020) (dismissing Section 1202 claim where "[plaintiff] does not adequately allege in its Complaint that [defendant] removed any CMI"); *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1174-75 (N.D. Cal. 2019) (granting motion to dismiss § 1202(b) claim because plaintiff "merely alleged that his photographs 'were altered to remove certain of [his] copyright management information' without providing any facts to identify which photographs had CMI removed or to describe what the removed or altered CMI was"); *cf. Chelko v. Does JF Rests., LLC*, 2019 U.S. Dist. LEXIS 121590, at *17-19 (W.D.N.C. July 22, 2019) ("Without a more descriptive pleading, it is impossible to know that the metadata and text in question relates to Plaintiff or the copyrights of the works. . . . Plaintiff does not adequately identify CMI on his photographs that Defendant removed or altered.").

*Second*, Plaintiff offers no plausible factual allegations to meet Section 1202's two-fold scienter requirements, which require plausible allegations that the defendant both (1) "*intentionally* removed" CMI (or distributed works knowing that CMI had been removed); *and* (2) did so "knowing, . . . or having reasonable grounds to know" that such removal "will induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b). Plaintiff claims that "Google intentionally and knowingly removed or perpetuated the removal of the Plaintiff's [CMI]," ¶

177, but here too such conclusory assertions can be disregarded. No facts pleaded in the Complaint remotely suggest that Defendants actually knew of any CMI that was associated with Plaintiff's works that was then removed (much less that Defendants removed such CMI *intentionally*),[8] nor does the Complaint identify even a single video that YouTube distributed knowing that Plaintiff's CMI had been removed. Without such allegations, the Complaint fails to state a 1202(b) claim. *See, e.g.*, *Merideth v. Chi. Tribune Co.*, 2014 U.S. Dist. LEXIS 2346, at *8 (N.D. Ill. Jan. 9, 2014) (dismissing Section 1202(b)(3) claim where plaintiff failed to allege defendant's "actual knowledge" of third-party CMI removal); *Keogh v. Big Lots Corp.*, 2006 U.S. Dist. LEXIS 29496, at *8 (M.D. Tenn. Apr. 27, 2006) (denying motion to reconsider dismissal of Section 1202(b)(3) claim for failure to allege "actual knowledge of the removal of CMI" without authorization).

On top of that, Plaintiff offers no non-conclusory allegations that YouTube "knew" or "[had] reasonable grounds to know" that either its removal of CMI or distribution of copies of works without CMI "[would] induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b). This additional scienter element is essential: Section 1202(b) requires more than "the universal possibility of encouraging infringement; specific allegations as to how identifiable infringements 'will' be affected are necessary." *Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018). Where this is missing, the plaintiff has no viable claim. *See Victor Elias Photography, LLC v. Ice Portal, Inc.*, 2021 U.S. Dist. LEXIS 86216, at *11 (S.D. Fla. May 3, 2021) ("Plaintiff has not established one of the elements of a claim under § 1202—that Defendant knew or had reason to know that its actions would induce, enable, facilitate, or conceal infringement."). Here, apart from yet more threadbare recitals (¶ 179), Plaintiffs have nothing to meet this requirement. There are simply no facts alleged from which it would be

---

[8] The Complaint suggests that YouTube was aware of Plaintiff's CMI (and its alleged removal) because "Plaintiff's takedown notices identifies [*sic*] both the infringed materials and the Plaintiff as copyright owner of the materials." ¶¶ 145, 180. That is a non-sequitur. There is no indication that any of Plaintiff's takedown notices said anything about CMI, but even if they had, Plaintiff concedes that YouTube removed the videos identified in Plaintiff's notices. Those notices could not possibly create a basis for holding YouTube liable for knowingly removing CMI or distributing videos from which it knew CMI had been removed.

plausible to conclude that YouTube acted with the culpable mental state that Section 1202(b) requires. For this reason as well, Plaintiff's Section 1202 claim must be dismissed.

## **CONCLUSION**

For all these reasons, Plaintiff's Complaint should be dismissed.


Dated:  June 22, 2021                    Respectfully submitted,

                                      STEARNS WEAVER MILLER WEISSLER
                                      ALHADEFF & SITTERSON, P.A.
                                      150 West Flagler Street, Suite 2200
                                      Miami, Florida 33130
                                      Telephone:  (305) 789-3229
                                      Facsimile:   (305) 789-2664

By:      */s/ Jay B. Shapiro*
        Jay B. Shapiro, Esq.
        Florida Bar No. 776361
        jshapiro@stearnsweaver.com
        David T. Coulter, Esq.
        Florida Bar No. 119874
        dcoulter@stearnsweaver.com


WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5801

        Brian M. Willen, Esq.
        (*Pro Hac Vice* forthcoming)
        bwillen@wsgr.com
        Lucy Yen, Esq.
        (*Pro Hac Vice* forthcoming)
        lyen@wsgr.com

        ***Counsel for Defendants***

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 22, 2021, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

*/s/Jay B. Shapiro*
JAY B. SHAPIRO, ESQ.

## <u>SERVICE LIST</u>

Case No. 1:21-cv-21698-DPG
United States District Court, Southern District of Florida

Rey Dorta, Esq.
Florida Bar No. 0084920
Omar Ortega, Esq.
Florida Bar No. 0095117
Rosdaisy Rodriguez, Esq.
Florida Bar No. 112710
Natalie A. Ferral, Esq.
Florida Bar No. 1012314
**DORTA & ORTEGA, P.A**
3860 SW 8th Street, PH
Coral Gables, Florida 33134
Telephone:(305) 461-5454
Facsimile: (305) 461-5226
oortega@dortaandortega.com
rdorta@dortaandortega.com
rrodriguez@dortaandortega.com
nferral@dortaandortega.com
dcruz@dortaandortega.com

*Counsel for Plaintiff*