**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT FLORIDA**

**CASE NO. 1:21-cv-21698-DPG**

ATHOS OVERSEAS, LTD.,

    *Plaintiff,*

v.

YOUTUBE, INC., YOUTUBE, LLC, and
GOOGLE, LLC.

    *Defendants.*

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANTS YOUTUBE, INC., YOUTUBE, LLC, AND**
**GOOGLE LLC'S MOTION TO DISMISS AND SUPPORTING**
**MEMORANDUM OF LAW**

    Plaintiff, ATHOS OVERSEAS, LTD. ("Plaintiff"), pursuant to Federal Rule of Civil Procedure 12(b)(6) responds to Defendants YouTube, Inc., YouTube, LLC, and Google LLC's (collectively "Defendants") Motion to Dismiss and Supporting Memorandum of Law ("Motion") as follows.

**Introduction and Motion to Dismiss Standard**

    Throughout the Motion, Defendants attempt to distract the Court with meritless statute of limitations arguments and factual disputes inappropriately raised in a motion to dismiss. The crux of Plaintiff's Complaint is that Defendants are not immune under the Digital Millennium Copyright Act ("DMCA"), § 512, for their knowing and intentional copyright infringement of Plaintiff's works on the YouTube platform while retaining the means to eliminate the piracy of Plaintiff's works. Defendants seek to advance the position that they can and should be allowed to violate Plaintiff's ownership of its movie catalogue because daily ongoing violations are somehow barred by the statute of limitations. Moreover, Defendants ask the Court, at this preliminary stage,

to make the foregoing conclusion in contravention to established law. The remainder of Defendants' Motion to Dismiss advances baseless claims of failures to state causes of action that should be summarily denied.

When analyzing a motion to dismiss under Rule 12(b)(6), the Court is to "the face of the complaint and documents attached thereto." *See Financial Sec. Assur., Inc. v. Stephens, Inc.,* 500 F.3d 1276, 1284 (11th Cir. 2007). Accordingly, the Court must determine whether a plaintiff's complaint contains "enough facts to state a claim to relief that is plausible on the face of the complaint." *See Bell Atlantic Corporation et al. v. Twombly,* 550 U.S. 544, 570 (2007). While "detailed factual allegations are not required," plausibility is present when a plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (citing *Twombly* at 556). Moreover, "even if doubtful in fact," the Court must accept the complaint's well-pled allegations as true, as well as interpret the allegations in plaintiff's favor. *See Twombly* at 555; *see also Aaberg v. Francesca's Collections, Inc.* 2018 WL 1583037 (S.D.N.Y. March 27, 2018), at 3. Determining the plausibility of a complaint is a context specific task that requires the court to draw on its common sense and judicial experience. *See Aaberg* at 3.

## I.   Statute of Limitations

### A.  Sherman Act

Pursuant to this Court's precedent, "a statute of limitations bar is an affirmative defense, and…plaintiffs are not required to negate an affirmative defense in their complaint." *See La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004); *see also Tregenza v. Great Am. Comms. Co.*, 12 F.3d 717, 718 (7th Cir. 1993). Accordingly, under Rule 12(b)(6), "dismissal for failure to state a claim on statute of limitations grounds is appropriate only if it is apparent from

*Athos Overseas, Ltd., v. YouTube, Inc., et. al.*
Plaintiff's Response to Defendants' Motion to Dismiss
Page 2 of 22

the face of the complaint that the claim is time barred." *See GlobalTranz Enterprises, LLC v. Global Transservice Corp.*, No. 20-62519-CIV-SINGHAL/VALLE, 2021 WL 1151417 (S.D.Fla. Mar. 26, 2021).

Under the Sherman Act, "a cause of action accrues, and the statute of limitations begins to run when a defendant commits an act that injures the plaintiffs' business." *See Morton's Market, Inc. v. Gustafson's Dairy, Inc.,* 98 F.3d 823 (11th Cir. 1999); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 388 (1971). Pursuant to 15 U.S.C. § 15(b), a plaintiff must file his claim within four years following defendant's injurious act. However, a plaintiff may bring suit "more than four years after the events that initially created the cause of action only if the action is commenced within four years after the defendant commits (1) an overt act in furtherance of the antitrust conspiracy or (2) an act that by its very nature constitutes a "continuing antitrust violation." *See Morton's Market* at 828; *see also Zenith* 401 U.S. at 338. Under the foregoing statute, a continuing anti-trust violation occurs if the violation "injures the plaintiff over a period of time." *Id.* Furthermore, "even if the illegal act occurs at a specific point in time, if it inflicts 'continuing and accumulating harm' on a plaintiff, an antitrust violation occurs each time the plaintiff is injured by the act." *Id.*; *see also Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 502 (1968).

Defendants fail to explain how their daily violation of Plaintiff's copyrights is not a continuing violation. In this case, Plaintiff's Complaint does not provide a specific date in which damages arose from the tying because it is ongoing. At the time the Complaint was written, the Defendants presented their Motion, this Response was drafted, and this Court is reviewing both, the Defendants will continue to damage the Plaintiff. Plaintiff alleges that YouTube's tying "ensures the continued piracy of the individual's copyrighted works on the YouTube platform,

*Athos Overseas, Ltd., v. YouTube, Inc., et. al.*
Plaintiff's Response to Defendants' Motion to Dismiss
Page 3 of 22

which inevitably places the individual, such as Plaintiff, at a disadvantage within the subject market." *See Complaint*, ¶ 205. Moreover, in ¶ 63 and 86, Plaintiff sufficiently pleads that the tying and the resulting, continued, copyright infringement of Plaintiff's works have negatively impacted Plaintiff's business, as the availability of Plaintiff's copyrighted videos on the YouTube website, free of charge, has diminished the value of Plaintiff's movie catalogue, as well as interfered with Plaintiff's ability to secure licensing agreements for the display of his videos.

During the last six (6) years, Plaintiff has submitted five to six takedown notices related to the infringement of Plaintiff's copyrighted videos on the YouTube website each day. *See Complaint* ¶ 26-27. Exhibits A and B attached and incorporated into Plaintiff's Complaint reflect an exhaustive list of YouTube's continued copyright infringement of Plaintiff's videos on the YouTube website between the years 2016 and 2020. *See Complaint*, Exhibit A; Exhibit B. With each subsequent take-down notice submitted by Plaintiff, Defendants know or have reason to know that their illegal tying arrangement magnifies the harm caused by Defendants' refusal to remove infringing content beyond the narrowest interpretation of the take down request. Thus, the antitrust action continues to be an ongoing and renewing harm.

Accordingly, in ¶ 86-87 and 182, Plaintiff sufficiently pleads that it is entitled to both statutory and actual damages under the Sherman Act. To accept Defendants' argument, would be allowing them to reap the benefits of their violation of Plaintiff's copyrights because the violations started more than four years ago. Since Plaintiff did not immediately stop the Defendants, the argument goes, the Defendants now have carte blanche to violate the Sherman Act and Plaintiff's ownership rights. Defendants' anti-trust violation of tying not only gave rise to Plaintiff's statutory damages under the Sherman Act, but also caused Plaintiff's actual damages, such as a decrease in the value of Plaintiff's video catalogue, as well as Plaintiff's inability to execute additional

*Athos Overseas, Ltd., v. YouTube, Inc., et. al.*
Plaintiff's Response to Defendants' Motion to Dismiss
Page 4 of 22

licensing agreements for the display of its videos due to the availability of Plaintiff's videos on the YouTube website, free of charge. *See Complaint*, ¶ 86-87; 102. The allegations found within Plaintiff's Complaint, as well as the exhaustive list of Defendants' continued acts of piracy provided by Plaintiff as attachments, Exhibits A and B to Plaintiff's Complaint, defeat Defendants' statute of limitations attacks.

Defendant improperly analogizes this case to *Bray v. Bank of America Corp.* 784 Fed.Appx. 738 ,741 (11th Cir. 2019). The facts presented in this case do not mirror *Bray*, but rather mirror the facts presented in *Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823 (11th Cir. 1999). In *Bray*, <u>at summary judgment</u>, the court ruled against the plaintiff's argument that one e-mail "informal in tone and which also addressed personal matters -- merely informed Maritz of Bray's departure from Merrill Lynch and assured Maritz that no default would occur" constituted an overt act in furtherance of the anti-trust conspiracy related to the loan agreement executed in 2009. *See Bray v. Bank of America Corp.* at 741. In *Morton's Market*, by contrast the court held in favor of the plaintiffs finding

> Plaintiffs claim that the Dairies conspired to fix the retail prices of milk in Florida over a twenty-year period, and that sales at these fixed prices continued at least until 1992, when Gustafson's pled guilty to price-fixing. Thus, even if there were no price-fixing conversations after 1987, as the Dairies contend, if plaintiffs purchased milk at a fixed price after that date, the purchase would constitute an overt act that injured it.

*See Morton's Market, Inc.*, 198 F.3d at 828.

The *Morton Market's* court held that the plaintiffs' claims were within the statute of limitations, despite the occurrence of the initial action in 1987, because "a cause of action would accrue with each purchase and a new statutory period would begin to run." *Id.*; *see also Zenith,* 401 U.S. at 338. The *Morton Market's* court further held that "where there is evidence of the continuing nature of an agreement to eliminate competition, absent an affirmative showing of the termination

*Athos Overseas, Ltd., v. YouTube, Inc., et. al.*
<u>Plaintiff's Response to Defendants' Motion to Dismiss</u>
Page 5 of 22

of that agreement, the conspiracy must be presumed to have continued." *See Morton's Market Inc.* at 828-829; *see also United States v. Portsmouth Paving Corp.,* 694 F.2d 312, 318 (4th Cir.1982). Like the plaintiffs in *Morton's Market*, Plaintiff's pleadings make the reasonable inference that Defendants' subsequent acts of copyright infringement against Plaintiff were in furtherance of Defendants' tying, anti-trust violation, which injured Plaintiff over a period of time and resulted in continuing and accumulating harm to Plaintiff. *See e.g. Complaint*, ¶ 20-22; 48-50, 196 and Exhibit A; Exhibit B. More importantly, despite Defendants' arguments to interpret the facts in one fashion or another, it is improper to enter into this debate on a motion to dismiss. Certainly, Defendants will seek to do so on summary judgment even if those future arguments are likewise futile. *See La Grasta* at 85.

### B. FDUTPA

Defendants' request for dismissal of the FDUTPA claim on statute of limitations also fails. When bringing a claim under the FDUTPA, a plaintiff's complaint must allege the following elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland,* 951 So.2d 860, 869 (Fla. 2d DCA 2006). In Florida, "actions other than for recovery of real property shall be commenced ...within four years ... if an action is founded on a statutory liability." *See Sundance Apartments I, Inc. v. General Elec. Capital Corp.,* 581 F.Supp.2d 1215 (S.D. Fla. 2008); Fla. Stat. §95.11(3)(f)(2006). Accordingly, claims brought under the FDUTPA are subject to a four-year statute of limitations and "a cause of action accrues…when the last element constituting the cause of action occurs." *See GlobalTranz Enterprises, LLC v. Global Transservice Corp.* No. 20-62519-CIV-SINGHAL/VALLE, 2021 WL 1151417 (S.D.Fla. Mar. 26, 2021)*;* Fla. Stat. §95.11(3)(f)(2006); *Sundance Apartments I, Inc.*, 581 F.Supp.2d at 1215; *New Lenox Indus., Inc. v. Fenton,* 510 F.Supp.2d 893, 906 (M.D.Fla.2007); Fla. Stat. §95.031(1).

*Athos Overseas, Ltd., v. YouTube, Inc., et. al.*
Plaintiff's Response to Defendants' Motion to Dismiss
Page 6 of 22

However, as described above, a statute of limitations bar is an affirmative defense and "a plaintiff "is not required to negate an affirmative defense in its complaint." *See GlobalTranz* at 2; *see also Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP*, 609 F. App'x 972, 976 (11th Cir. 2015).  Moreover, in cases where a plaintiff alleges a defendant has damaged or will continue to damage plaintiff under the FDUTPA, the plaintiff is not required to allege "a specific date on which damages were sustained, nor plead facts to overcome the statute-of-limitations defense" to avoid dismissal of its complaint. *Id*.

In ¶188-192, Plaintiff sufficiently pleads that Defendants' policy regarding their Content ID, such as the "requirement of shared revenue in order to implement their Content ID," "the conditioning of the availability of the Content ID system for exclusive rights holders on waivers of their prior infringement," and additional "significant restrictions on the potential contractual partners" of Content ID, "constitutes an unfair and deceptive trade practice under the FDUTPA. Moreover, in ¶ 192, Plaintiff alleges that "as a direct and proximate result of YouTube's policy regarding their Content ID, Plaintiff has been directly affected and has suffered damages." In ¶ 20, Plaintiff alleges that YouTube's deceptive and unfair Content ID policy has caused the piracy and infringement of Plaintiff's copyrighted films on Defendants' platform to continue. Furthermore, Plaintiff sufficiently pleads that YouTube's refusal to use Content ID to detect copyright infringement of Plaintiff's works in accordance with its Content ID policy has resulted in YouTube's continued piracy of Plaintiff's works. *See Complaint*, Exhibit A; Exhibit B. Through Exhibits A and B attached to the Complaint, Plaintiff sufficiently pleads that YouTube's unfair and deceptive Content ID policy resulted in YouTube's continued infringement of Plaintiff's works, as the mentioned exhibits are comprised of exhaustive reports reflecting each time YouTube infringed on Plaintiff's copyrights between the years of 2016 and 2020. Defendants'

*Athos Overseas, Ltd., v. YouTube, Inc., et. al.*
Plaintiff's Response to Defendants' Motion to Dismiss
Page 7 of 22

statute of limitations argument for both Sherman Act and FUDPTA violations would be laughable if the subject was not of such a grave concern.   At its core, Defendants argue they are permitted, in fact entitled, to continue to violate every ownership right of the Plaintiff because once having failed to raise a timely objection, the Plaintiffs are estopped from thereafter ever raising a challenge.

### C. Copyright Act / DMCA

Under the Copyright Act, "no civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17. U.S.C. § 507(b)3 (2020).  While a claim ordinarily accrues "when [a] plaintiff has a complete and present cause of action, a copyright claim…accrues when an infringing act occurs." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014). Moreover, "it is widely recognized that the separate-accrual rule attends the copyright statute of limitations." *Id.* In *Petrella*, the U.S. Supreme Court described the separate-accrual rule as follows:

> Under that rule, when a defendant commits successive violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete "claim" that "accrue[s]" at the time the wrong occurs. In short, each infringing act starts a new limitations period. *See Stone v. Williams*, 970 F.2d 1043, 1049 (C.A.2 1992) ("Each act of infringement is a distinct harm giving rise to an independent claim for relief.").

*Id.* at 671.

Therefore, "when a defendant has engaged (or is alleged to have engaged) in a series of discrete infringing acts, the copyright holder's suit ordinarily will be timely under § 507(b) with respect to more recent acts of infringement (i.e., acts within the three-year window)." *Id.* at 672.

In ¶ 66 of Plaintiff's Complaint, Plaintiff sufficiently pleads that "for the past six years, Plaintiff's representatives have sent over ten thousand (10,000) notices of violations to YouTube

*Athos Overseas, Ltd., v. YouTube, Inc., et. al.*
Plaintiff's Response to Defendants' Motion to Dismiss
Page 8 of 22

for copyright infringement of Plaintiff's content on the YouTube website." In the same paragraph, Plaintiff also alleges that "YouTube currently maintains posts that are a direct infringement on Plaintiff's copyrighted works." *See Complaint*, ¶ 66. In addition to the foregoing, Exhibit A to Plaintiff's Complaint is comprised of a list reflecting each time YouTube infringed on Plaintiff's copyrights in 2020, while Exhibit B contains exhaustive reports reflecting each time YouTube infringed on Plaintiff's Copyrights, as well as the associated date of each infringement between the years 2016 and 2020. *See Complaint*, Exhibit A; Exhibit B. Through the foregoing allegations and exhibits, Plaintiff sufficiently pleads that YouTube committed successive violations of the Copyright Act in this case. Accordingly, each time YouTube infringed on Plaintiff's videos, YouTube committed a new wrong, which started a new limitations period. *See Petrella* at 671.

Despite the foregoing, in Defendants' Motion, Defendant improperly cites to *On Top Records Corp. v. Sunflower Entertainment Co.*, 2015 WL 13264222 (S.D. Fla. Sept. 24, 2015), and argues that Plaintiff's alleged "failure to distinguish between timely and untimely claims of copyright and removal of CMI warrants dismissal of those causes of action in their entirety." *See Motion*, p. 8. First, *On Top Records* does not discuss the foregoing and fails to apply to this case, as this Court specifically dismissed the original complaint in *On Top Records* because "based on plaintiff's own allegations, it is unclear whether an alleged infringement has occurred within the applicable statute of limitations." Second, Plaintiff sufficiently alleges many copyright infringement acts perpetuated by Defendants within the three-year statute of limitations provided by the Copyright Act in this case. *See Complaint*, ¶ 28; Exhibit A; Exhibit B. Third, unlike the plaintiff in *On Top Records*, Plaintiff not only sufficiently alleges each of the above-mentioned acts of copyright infringement in Exhibit A and Exhibit B, but also provides the dates of the corresponding takedown notices submitted. It should be noted that in *On Top Records* the Court

*Athos Overseas, Ltd., v. YouTube, Inc., et. al.*
Plaintiff's Response to Defendants' Motion to Dismiss
Page 9 of 22

granted Plaintiff leave to amend and a subsequent attack by the defendants on statute of limitations grounds was denied, because, as in the case at bar, the Plaintiff pleaded the necessary facts to establish a justiciable claim.  *On Top Records Corp. v. Sunflower Entertainment Co.*, 2015 WL 13264196 (S.D. Fla. Oct. 28, 2015).

## II.   <u>All of Plaintiff's Claims State Cognizable Claims</u>

### A. **Plaintiff Sufficiently Pleads the Facts Required to Bring an Action Under the Sherman Act Section 1 (Count XIII).**

Defendants' arguments regarding the sufficiency of the Sherman Act claim fail for the same reason as the statute of limitations arguments *supra.* Specifically, Defendants seek to have this court make factual rulings at this preliminary stage. While Defendants claim Plaintiff has failed to state a cause of action, the true nature of Defendants' argument is their disagreement with whether the manner in which Defendants use and make available Content ID constitutes a tying. This is certainly not fodder for a motion to dismiss.

As the Supreme Court has explained, in order for a tying arrangement to violate Section 1, the defendant seller must possess dominant market power in a "tying" product that is sufficient to force the buyer to also purchase an otherwise unwanted "tied" product:

> [T]he essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms.

*Illinois Tool Works Inc. v. Independent Ink, Inc*., 547 U.S. 28, 34-35 (2006) (quoting *Jefferson Parish Hospital Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984).

There are five elements in such a claim: "(1) two separate products, a 'tying' or 'desirable' product and a 'tied' or 'undesirable' product; (2) the buyer was in fact forced to buy the tied product to get the tying product; that is, a 'tying'; (3) the seller possessed sufficient economic

*Athos Overseas, Ltd., v. YouTube, Inc., et. al.*
<u>Plaintiff's Response to Defendants' Motion to Dismiss</u>
Page 10 of 22

power in the tying product market to coerce the buyer's acceptance of the tied product; (4) an anti-competitive effect in the tied product market; and (5) the involvement of a not insubstantial amount of interstate commerce in the tied product market." *Integon Life Ins. Corp. v. Browning*, 989 F.2d 1143, 1150 (11th Cir. 1993) (citing *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1502-03 (11th Cir. 1985)).

Defendant erroneously suggests that Plaintiff failed to allege a tying product, ignoring the allegations in the Complaint. *See e.g.* ¶ 19-27, 45, 66, 70-72, 77-81. Defendants try to suggest that the Content ID system cannot be divorced from settlement claims. In *Jefferson Parish Hospital Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984), the Court addressed the anesthesiological services separate from hospital services. The plaintiffs in that case make the same argument as Defendants, that the market is essentially all-or-nothing. Yet the Court rejected such an analysis in *Parish Hospital* and should do so here.

Defendants are required by statute to provide notice and takedown services as a condition of its continued protection under the §1201 safe harbor. When it conditions such notice-and-takedown on the restrictive additional terms of its Content ID contract, it ties two unrelated services to each other.

The injury the Defendants undertake now is not new. The Supreme Court first addressed it in *Motion Picture Patents Co. v. Universal Film Mfg. Co.*, 243 U.S. 502 (1917). The Motion Picture Patents Company used its patents on aspects of the motion picture projector to control the licensed exhibition of theatrical motion pictures in the United States. Although that case focused on the scope of the patent, the Supreme Court was deeply mindful of the efforts of Thomas Edison to control the content available on his machines "what would doubtless aggregate many times this amount for the use of this same invention, after its machines have been sold and paid for." *Id*. at

*Athos Overseas, Ltd., v. YouTube, Inc., et. al.*
Plaintiff's Response to Defendants' Motion to Dismiss
Page 11 of 22

518-19.

> A restriction which would give to the plaintiff such a potential power for evil over an industry which must be recognized as an important element in the amusement life of the nation, under the conclusions we have stated in this opinion, is plainly void, because wholly without the scope and purpose of our patent laws, and because, if sustained, it would be gravely injurious to that public interest, which we have seen is more a favorite of the law than is the promotion of private fortunes.

*Id*. at 519.

As to the second element, the question is not whether the victim is forced to buy from the defendant in an illegal tying arrangement, because in no case is the party forced to buy the product. The relevant question is whether the victim can purchase the tying product without being forced to also purchase the tied product. Defendants refuses to provide Plaintiff and others the ability to use Content ID without giving up substantial rights. Since Defendants are profiting from the illegally posted films, they can hardly claim that Plaintiff can simply walk away from the deal they do not like. Defendants essentially take the copyrights hostage as a condition of negotiating the terms of Content ID.

The third factor is the seller's sufficient economic power in the tying product market to coerce the buyer's acceptance of the tied product. Defendants are widely reported as the most popular search engine.  To sufficiently plead a seller's market power, Plaintiff must first plead the relevant market. S*ee Sentry Data Systems, Inc. v. CVS Health*, 379 F.Supp.3d 1320 (Fla. S.D. 2019). The 11th Circuit has repeatedly held that markets need not be defined by "metes and bounds" and "cannot be defined with scientific precision...." *Id.*; *United States v. Conn. Nat'l Bank*, 418 U.S. 656, 669 (1974). Moreover, "the parameters of a given market are questions of fact, ... [and] antitrust plaintiffs ... must present enough information ... to plausibly suggest the contours of the relevant…markets." *Id.*; *Jacobs v. Tempur-Pedic Intern., Inc.*, 626 F.3d 1327, 1336 (11th

*Athos Overseas, Ltd., v. YouTube, Inc., et. al.*
Plaintiff's Response to Defendants' Motion to Dismiss
Page 12 of 22

Cir. 2010). Once a relevant market is sufficiently pleaded, plaintiff's pleadings may establish a seller has sufficient market power in the tying product market to force the buyer to accept the tied product, if the plaintiff pleads that the "the seller's share of the market is high," or "the seller offers a unique product that competitors are not able to offer." *See Jefferson Parish* at 17; *see also Times Picayune Publishing Co. v. United States*, 345 U.S. 594, 611–613 (1953).

Despite Defendants' contention that Plaintiff fails to plead a relevant market, in ¶ 45, Plaintiff sufficiently pleads that "YouTube, an ISP with the largest video-sharing platform in the world, knowingly and persistently engages in copyright piracy, as its platform is overwhelmed with infringed content at the expense of copyright holders." *See Complaint*, ¶ 45. Only in Defendants' mind could its "market" be a legitimate question. The Complaint is replete with descriptions of the Defendants and its global market. For example, in ¶63, Plaintiff alleges that "unsurprisingly, with thirty thousand (30,000) hours of new content uploaded to YouTube each hour, it is infeasible for the Plaintiff to adequately enforce its rights as a copyright holder." Moreover, in ¶199-203, Plaintiff sufficiently alleges the following:

> YouTube is the worlds' second largest search engine and second most visited site after Google. 200. YouTube is the second most popular social media platform with 1.9 billion users. 201. 500 hours of audio-visual content is uploaded to YouTube every minute. 202. Consumers watch over 1 billion hours of YouTube videos a day, more than Netflix and Facebook combined. 203. YouTube has sufficient economic power when tying a product in the subject market to coerce Plaintiff's acceptance of Content ID.

*See Complaint*, ¶ 199-203. This is certainly sufficient to describe the market in a Complaint.

The fourth factor is the anti-competitive effect in the tied product market. In order to establish anticompetitive effects in the tied market, Plaintiff must sufficiently allege that in the circumstances of the case, "a restrictive practice imposes 'an unreasonable restraint on competition.'" *Seagood Trading Corp. v. Jerrico Inc.*, 924 F.2d 1555, 1569 (11th Cir. 1991); *see*

*Athos Overseas, Ltd., v. YouTube, Inc., et. al.*
Plaintiff's Response to Defendants' Motion to Dismiss
Page 13 of 22

also *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49 (1977); *see also Standard Oil Co. v. United States*, 221 U.S. 1, 31 (1911). The 11th Circuit has repeatedly held that "a restraint is unreasonable if it has an adverse impact on competition and cannot be justified as a procompetitive measure. *See Seagood Trading Corp.* at 1569; *Consultants & Designers, Inc. v. Butler Service Group, Inc.*, 720 F.2d 1553, 1562 (11th Cir. 1983). As we stated in *Kestenbaum v. Falstaff Brewing Corp.*, 575 F.2d 564, 571 (5th Cir.1978): '[T]he rule of reason standard hinges the ultimate legality of a restraint on whether the plaintiff has demonstrated an anticompetitive effect which is not offset by a need to achieve a procompetitive benefit or justification.'" Moreover, plaintiff must sufficiently plead an antitrust injury, such as "freedom to select the best bargain in the second market is impaired by his need to purchase the tying product, and perhaps by an inability to evaluate the true cost of either product when they are available only as a package." *See Jefferson Parish* at 3. Plaintiff may also establish an anti-trust injury through allegations of "harm to existing competitors or the creation of barriers to entry of new competitors in the market for the tied product, whereby the seller can increase the social costs of market power by facilitating price discrimination, thereby increasing monopoly profits over what they would be absent the tie." *See Jefferson Parish* at 141-5; *see also Fortner I*, 394 U.S., at 509, 89*; Fortner Enterprises v. United States Steel Corp. (Fortner II)*, 429 U.S. 610, 617 (1977).

In ¶ 46, Plaintiff sufficiently alleges that "YouTube exclusively offers Content ID to its preferred holders – an exclusive class predominantly comprised of the few major players within the creative industry. While denying approximately ninety-five (95) percent of all Content ID applications and aware of the average copyright holder's lack of leverage and resources to combat the extensive, infringing activity prevalent on the YouTube platform, Defendants require that each copyright holder engage in self-monitoring, detecting, and presenting of a takedown notice to

*Athos Overseas, Ltd., v. YouTube, Inc., et. al.*
Plaintiff's Response to Defendants' Motion to Dismiss
Page 14 of 22

YouTube any time their copyrighted materials are infringed." *See Complaint*, ¶ 45. Plaintiff alleges "that Defendants had the ability to detect and discontinue all acts of piracy 'very easily' with their Content ID system, which recognizes pirated material prior to its upload on the YouTube platform." *Complaint,* ¶16. Moreover, in ¶ 64, Plaintiff sufficiently alleges that "YouTube's decision to deny Content ID to average copyright holders is aligned with Defendants' business model to maximize profits, as denying widespread access to Content ID allows infringers to continue uploading infringed materials, which increases content volume, viewers, advertising, and ultimately profits." Accordingly, through ¶ 45, 16, and 64, Plaintiff not only sufficiently alleges that Defendants uses Content ID to unreasonably restrain the competition and ability to profit of most copyright holders in the video sharing market, but also an antitrust injury.

As should be clear from the first and third factor, the ability for Defendants to financially undermine video producers that do not qualify or opt in to Content ID has a direct, negative financial consequence to these companies. The injury for the plaintiff is the loss of audience and revenue tied to the Defendants' hosting and search functions. Content ID creates a system of haves and have-nots. Those content producers unable to use Content ID face significantly greater piracy on the Defendants' platform which harms the market value for the product, and the onerous terms of the Content ID result in economic harm to the plaintiffs while enriching the Defendants.

The Defendants did not challenge the final factor, "the involvement of a not insubstantial amount of interstate commerce in the tied product market" presumably because the nature of web hosting and search is intimately involved with interstate commerce.

*Athos Overseas, Ltd., v. YouTube, Inc., et. al.*
Plaintiff's Response to Defendants' Motion to Dismiss
Page 15 of 22

**B. Plaintiff Sufficiently Pleads the Facts Required to Bring an Action Under the FDUTPA.**

The FDUTPA is designed "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). To state an FDUTPA claim, a plaintiff must allege (1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages. *See Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013) (citing *Rollins*, 951 So. 2d at 869). A deceptive practice is one that is "likely to mislead" consumers. *Rollins*, 951 So. 2d at 869. An unfair practice "offends established public policy" and is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id.* (quoting *Spiegel, Inc. v. Fed. Trade Comm'n*, 540 F.2d 287, 293 (7th Cir.1976)). "The FDUTPA broadly declares unlawful any unfair or deceptive acts or practices committed in the conduct of any trade or commerce." *See Jones v. TT of Longwood, Inc.*, No. 606CV-651ORL-19DAB, 2006 WL 2789140, at 6 (M.D. Fla. Sept. 26, 2006). Moreover, in 2001, the Florida legislature amended the FDUTPA statute and changed "who could bring an action from 'a consumer' to 'a person.'" *See Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach County, Inc.*, 169 So. 3d 164, 167–68 (Fla. 4th DCA 2015). Additionally, during the same session, the Legislature also amended section 501.203(7), Florida Statutes, to change the definition of "consumer" to include a "business" and "commercial entity." *Id*. Based on the foregoing, the Florida Legislature seemingly intended to expand the redressability of harms brought under the FDUTPA beyond the harms recognized at the Federal level. *Id.*  Lastly, to show causation under the FDUTPA, a plaintiff must simply allege that the defendant's practice was likely to deceive a reasonable consumer in the same circumstances. *See Frayman v. Douglas Elliman Realty, LLC*, No. 20-23393-CIV, 2021 WL 299951, at 10 (S.D. Fla. Jan. 25, 2021). "The measure of actual

*Athos Overseas, Ltd., v. YouTube, Inc., et. al.*
Plaintiff's Response to Defendants' Motion to Dismiss
Page 16 of 22

damages is the difference in the market value of the product or service in the condition in which it was delivered according to the contract of the parties." *See Jovine v. Abbott Laboratories, Inc.*, 795 F.Supp. 2d 1331 (S. D. Fla. 2011).

For the same reasons the antitrust claims are legally and factually established, the FDUTPA allegations state a cause of action.  Plaintiff's FDUTPA claim is based on "YouTube's selective use of the Content ID system, which constitutes an unfair and deceptive trade practice." *See Complaint*, ¶ 188. Furthermore, in ¶¶ 46, 16, and 64, Plaintiff sufficiently alleges that Defendants engage in unfair trade practices, as Defendants "had the ability to detect and discontinue all acts of piracy 'very easily' with their Content ID system, which recognizes pirated material prior to its upload on the YouTube platform," yet denies use of Content ID to detect and discontinue acts of piracy to "approximately ninety-five (95) percent of all Content ID applications" and as a result of the copyright holder's "lack of leverage and resources to combat the extensive, infringing activity prevalent on the YouTube platform," YouTube maximizes its profits by intentionally allowing "infringers to continue uploading infringed materials, which increases content volume, viewers, advertising, and ultimately profits." *See Complaint*, ¶ 46, 16, 64. Although Plaintiff needs only to allege either unfair trade practice or deceptive acts, Plaintiff sufficiently alleges that Defendants' conditioning of the availability of the Content ID system for exclusive rights, as well as its imposition of "significant restrictions on the potential contractual partners…is coercive to the content producers and deceptive for the public." *See Complaint*, ¶190-191. Despite Defendants' assertion that Plaintiff fails to allege actual damages, Plaintiff establishes consumer injury. *Complaint*, ¶8. Plaintiff sufficiently alleges that Defendants' continued restriction on most copyright holders' access to Content ID has resulted in a loss of value in Plaintiff's movie collection, as well as prevented Plaintiff from securing licensing agreements for the display of

*Athos Overseas, Ltd., v. YouTube, Inc., et. al.*
Plaintiff's Response to Defendants' Motion to Dismiss
Page 17 of 22

Plaintiff's infringed videos due to the availability of Plaintiff's infringed videos on the YouTube website. Based on the foregoing, Plaintiff sufficiently states a claim under FDUPTA.

### C.  Plaintiff Sufficiently States a Section 1202 Claim (Counts VII and XI).

Plaintiff has identified the works that are the subject of the Complaint. *See Complaint* ¶ 67. Plaintiff further pleads that Defendants "alter the content's CMI to facilitate the dissemination of the infringed content on their own site and additional platforms. *See Complaint* ¶ 75.  Incorporating by reference its movies, Plaintiff further pleads that "while processing the unlawful and unauthorized uploading of Plaintiff's copyrighted materials, YouTube intentionally and knowingly removed or perpetuated the removal of the Plaintiff's copyright management information of the Plaintiff's works." *See Complaint* ¶142.  The same allegation is made in the Complaint against defendant Google. *See Complaint* ¶ 177.  Unlike *Iqbal*, these are not legal conclusions, but plausible allegations rising to the level above the speculative level.  These factual allegations must be accepted by the court as true with all reasonable inferences in the Plaintiff's favor.  *See Agence France Presse* at 301.

To state a valid clam under 1202(b), Plaintiff must allege 1) the existence of CMI on the products at issue; 2) removal and/or alteration of that information; and 3) that the removal and/or alteration was done intentionally. *See Aaberg* at 6.  Section 1202(b)(3) has a "double scienter" requirement: the defendant who distributed improperly attributed copyrighted material must have actual knowledge that CMI has been removed or altered without authority of the copyright owner or the law, as well as actual or constructive knowledge that such distributions "will induce, enable, facilitate, or conceal an infringement."  *Mango v. Buzzfeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020).  Yet, courts must be lenient in allowing scienter issues to survive a motion to dismiss.  *Agence France Presse* at 306.  The plausibility standard must raise a reasonable expectation that discovery

*Athos Overseas, Ltd., v. YouTube, Inc., et. al.*
Plaintiff's Response to Defendants' Motion to Dismiss
Page 18 of 22

will reveal evidence of the alleged infraction. *Robbins v. Oakley, Inc.*, No. CV 18-5116 PA (KSX), 2018 WL 5861416, at *2 (C.D. Cal. Sept. 27, 2018).  In a motion for summary judgment, evidence must show that the defendant possessed the mental state of knowing or having a reasonable basis to know that his actions "will induce, enable, facilitate, or conceal infringement," yet in the pleading stage this requirement is not so exacting as long as the Plaintiff had pled facts to satisfy the plausibility standard. *Id.* at 3.

Plaintiff identifies that CMI is present in the metadata on their digital files. *See Complaint*, ¶¶ 139, 174.  Plaintiff incorporates by reference all the titles with the CMI metadata. *Complaint,* ¶ 67.  Plaintiff alleges Defendants "intentionally and knowingly removed or perpetuated the removal of Plaintiff's copyright management information of the Plaintiff's works. *See Complaint*, ¶¶ 142 and 177.  Despite Defendants' claim that the double scienter requirement was improper, the Complaint further alleges that Defendants "not only removed Plaintiff's copyright management information, but also altered the metadata in efforts to exploit, display and infringe Plaintiff's copyrighted materials on multiple systems with knowledge and intent to induce, enable, facilitate, or conceal the ongoing and additional copyrighted infringement of Plaintiff's materials." *See Complaint,* ¶¶ 144, 179.  Lastly, the Complaint alleges and incorporates by reference, the take down notices sent to Defendants indicating: "Plaintiff hired counsel, who provided YouTube with actual and constructive knowledge of the copyright management information as Plaintiff's takedown notices identifies both the infringed materials and the Plaintiff as the copyright owner of the materials." *See Complaint,* ¶¶ 145, 180.  As such, Plaintiff has pleaded plausible facts alleging all elements of the claim.  Once again, Defendants simply want to argue the meaning of the facts and their application, rather than accept them as true for purposes of this Court's ruling on the Motion.

*Athos Overseas, Ltd., v. YouTube, Inc., et. al.*
Plaintiff's Response to Defendants' Motion to Dismiss
Page 19 of 22

Defendants' reliance on *Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018) indicating "that the additional scienter element is essential as Section 1202(b) requires more than the universal possibility of encouraging infringement; specific allegations as to how identifiable infringements 'will' be affected are necessary," is misplaced.  In *Stevens* the case was not in the pleading stage, it was at a Motion for Summary Judgement.  As stated in *Robbins*

> While it is true that Stevens held that both 1202(b)(1) and 1202 (b)(3) 'require the defendant to possess the mental state of knowing, or having a reasonable basis to know, that his actions will induce, enable, facilitate, or conceal infringement,' 899 F.3d at 673. *Stevens* was decided on summary judgment, not at the pleading stage. According to the Ninth Circuit, it was the plaintiffs' failure to offer any evidence to satisfy the mental state requirement that was fatal to the DMCA claim alleged in that action.  *Id.*  A plaintiff's burden at the pleading stage is not so exacting.

*Robbins v. Oakley, Inc.*, No. CV 18-5116 PA (KSX), 2018 WL 5861416, at *3.

In light of the foregoing the Plaintiff has more than sufficiently pleaded a Section 1202 claim to withstand Defendants' attack.

*Athos Overseas, Ltd., v. YouTube, Inc., et. al.*
Plaintiff's Response to Defendants' Motion to Dismiss
Page 20 of 22

**WHEREFORE**, Plaintiff respectfully request the Court enters an order denying

Defendants' Motion and enter all further orders it deems just and proper.

**DORTA & ORTEGA, P.A.**

/s/ *Omar Ortega*_____
Omar Ortega, Esq.
Florida Bar No.: 0095117
Reinaldo Dorta, Esq.
Florida Bar No.: 0084920
Rosdaisy Rodriguez, Esq.
Florida Bar No.: 0112710
Natalie Ferral, Esq.
Florida Bar No.: 1012314
3860 S.W. 8th Street, PH
Coral Gables, Florida 33134
Telephone: (305) 461-5454
Facsimile: (305)461-5226
Email: OOrtega@dortaandortega.com
Email: RDorta@dortaandortega.com
Email: RRodriguez@dortaandortega.com
Email: NFerral@dortaandortega.com
Email: DKoch@dortaandortega.com
Email: DCruz@dortaandortega.com

***Counsel for Plaintiff***

*Athos Overseas, Ltd., v. YouTube, Inc., et. al.*
Plaintiff's Response to Defendants' Motion to Dismiss
Page 21 of 22

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 13th day of July 2021, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF, and that a true and correct copy of the

foregoing has been served via automated e-mail on all counsel of record:

__/s/   Omar Ortega__
**OMAR ORTEGA**

**Jay B. Shapiro, Esq.**
**David T. Coulter Esq.**
Stearns Weaver Miller Weissler Alhadeff &
Sitterson, P.A.
150 West Flagler Street, Suite 2200
Miami, FL 33130
Telephone:(305) 7869-3229
Facsimile: (305) 789-2664
Email: jshapiro@stearnsweaver.com
Email: dcoulter@stearnsweaver.com
***Counsel for Defendants***

**Brian M. Willen, Esq.**
Lucy Yen, Esq.
Wilson Sonsini Goodrich & Rosati, P.A.
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
Email: bwillen@wsgr.com
Email: lyen@wsgr.com
***Counsel for Defendants***

*Athos Overseas, Ltd., v. YouTube, Inc., et. al.*
Plaintiff's Response to Defendants' Motion to Dismiss
Page 22 of 22