UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:21-cv-21698- DPG

ATHOS OVERSEAS, LTD.

        Plaintiff,

vs.

YOUTUBE, INC., YOUTUBE, LLC, and
GOOGLE, LLC,

        Defendants.

_____/

**DEFENDANTS YOUTUBE, INC., YOUTUBE, LLC, AND GOOGLE LLC's
REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

| | |
|---|---|
| **S**TEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.<br>150 West Flagler Street, Suite 2200<br>Miami, Florida 33130<br>Telephone:  (305) 789-3229<br>Facsimile:   (305) 789-2664<br>Jay B. Shapiro, Esq.<br>David T. Coulter, Esq. | WILSON SONSINI GOODRICH & ROSATI, P.C.<br>1301 Avenue of the Americas, 40th Floor<br>New York, NY 10019<br>Telephone: (212) 999-5800<br>Facsimile: (212) 999-5801<br>Brian M. Willen, Esq. (*Pro Hac Vice*)<br>Lucy Yen, Esq. (*Pro Hac Vice*) |

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................. 1

I.   PLAINTIFF'S CLAIMS ARE TIME-BARRED............................................................... 1

II.  PLAINTIFF'S CLAIMS ARE IRREMEDIABLY DEFICIENT ....................................... 4

    A.   Plaintiff Cannot Save Its Tying Claims Under The Sherman Act Or FDUTPA ......................................................................................................... 4

    B.   Plaintiff Has No Viable Claim Of Actual Damages Under FDUTPA.................... 7

    C.   Plaintiff Cannot Save Its DMCA Claim For Alleged Removal Of CMI................ 9

CONCLUSION..................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page(s)**

### **CASES**

*Am. Online, Inc. v. GreatDeals.Net*,
   49 F. Supp. 2d 851 (E.D. Va. 1999) ........................................................................................6

*In re Am. Online, Inc. Version 5.0 Software Litig.*,
   168 F. Supp. 2d 1359 (S.D. Fla. 2001) ....................................................................................6

*Bray v. Bank of Am. Corp.*,
   784 F. App'x 738 (11th Cir. 2019) ......................................................................................2, 3

*Capital Temporaries, Inc. v. Olsten Corp.*,
   506 F.2d 658 (2d Cir. 1974)......................................................................................................6

*Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*,
   169 So. 3d 164 (Fla. 4th DCA 2015) ...................................................................................8, 9

*Dolphin LLC v. WCI Cmtys., Inc.*,
   715 F.3d 1243 (11th Cir. 2013) ................................................................................................9

*Donoff v. Delta Air Lines, Inc.*,
   2020 U.S. Dist. LEXIS 41408 (S.D. Fla. Mar. 6, 2020) ...........................................................8

*Frayman v. Douglas Elliman Realty, LLC*,
   2021 U.S. Dist. LEXIS 13936 (S.D. Fla. Jan. 25, 2021) ..........................................................9

*Illinois Tool Works Inc. v. Independent Ink, Inc.*,
   547 U.S. 28 (2006).....................................................................................................................5

*Jacobs v. Tempur-Pedic Int'l., Inc.*,
   626 F.3d 1327 (11th Cir. 2010) ................................................................................................6

*Jones v. TT of Longwood Inc.*,
   2006 U.S. Dist. LEXIS 70664 (M.D. Fla. Sept. 26, 2006) .......................................................9

*Jovine v. Abbott Labs., Inc.*,
   795 F. Supp. 2d 1331 (S.D. Fla. 2011) .....................................................................................8

*Macias v. HBC of Fla.*,
   694 So. 2d 88 (Fla. 3d DCA 1997l)..........................................................................................8

*Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*,
   198 F.3d 823 (11th Cir. 1999) ..................................................................................................3

*Nat'l Ass'n of Freelance Photographers v. AP*,
   1997 U.S. Dist. LEXIS 19568 (S.D.N.Y. Dec. 10, 1997) ...............................................2, 5, 7

*On Top Records Corp. v. Sunflower Entm't Co.*,
    2015 U.S. Dist. LEXIS 190970 (S.D. Fla. Sept. 24, 2015) ......................................................4

*QSGI, Inc. v. IBM Global Fin.*,
    2012 U.S. Dist. LEXIS 49601 (S.D. Fla. Mar. 14, 2012)......................................................7, 8

*Robbins v. Oakley, Inc.*,
    2018 U.S. Dist. LEXIS 227112 (C.D. Cal. Sept. 27, 2018).....................................................10

*Rodriguez v. Recovery Performance & Marine, LLC*,
    38 So. 3d 178 (Fla. 3d DCA 2010) ........................................................................................7

*Rollins Inc. v. Butland*,
    951 So. 2d 860 (Fla. 2d DCA 2006) ......................................................................................9

*Varner v. Peterson Farms*,
    371 F.3d 1011 (8th Cir. 2004) ...............................................................................................2

## STATUTES

15 U.S.C. § 1 et seq............................................................................................................... *passim*

17 U.S.C. § 507(b) .........................................................................................................................3

17 U.S.C. § 1202.................................................................................................................1, 3, 9, 10

**INTRODUCTION**

Plaintiff's Opposition cannot save its time-barred and legally deficient claims. In an effort to overcome the obvious statute of limitations problem with its Sherman Act and FDUTPA claims, Plaintiff relies entirely on a "continuing antitrust violation" theory. But no such continuing violation is alleged, and Plaintiff does not contend that YouTube did anything to supposedly "tie" Content ID after 2015. Instead, Plaintiff's argument is premised entirely on ongoing third-party copyright infringement, which cannot form the basis for Sherman Act and FDUTPA claims, much less extend their statutes of limitations.

Even if these claims were not time-barred on their face, Plaintiff cannot conjure a legally viable tying claim under the Sherman Act or a cognizable theory of consumer injury under FDUTPA. Nor can Plaintiff save its DMCA Section 1202 claim, as it continues to fail to identify even a single video that supposedly had CMI removed in alleged violation of the statute or offer any plausible allegations of scienter. Instead, Plaintiff resorts to merely reciting elements of its claims and pointing to conclusory allegations. The Court should dismiss the Complaint.

**I.     PLAINTIFF'S CLAIMS ARE TIME-BARRED**

As Plaintiff recognizes (Opp. 2-3), the Court can dismiss claims that are time-barred on their face. That is the case here with the Sherman Act and FDUTPA claims, as well as the copyright infringement and DMCA claims that accrued before May 2018.

*Sherman Act & FDUTPA*. Plaintiff concedes that its Sherman Act and FDUPTA claims are based on the same underlying allegations concerning Content ID. Opp. 17. Plaintiff also does not dispute that the purported tying arrangement was offered in 2015 and that no other relevant communications about Content ID took place thereafter. ¶¶ 9, 19. On its face, those tying claims are untimely. Mot. 11-13. Plaintiff nonetheless argues that it should be permitted to bring its stale claims based on a "continuing antitrust violation" theory. Opp. 3. Plaintiff is wrong.

To escape the statute of limitations based on a "continuing violation" theory, a plaintiff must allege that *during* the limitations period, the defendant committed "(1) an overt act in furtherance of the antitrust conspiracy or (2) an act that by its very nature constitutes a

'continuing antitrust violation.'" *Bray v. Bank of Am. Corp.*, 784 F. App'x 738, 740-41 (11th Cir. 2019). The "overt act," in turn, must meet two elements: "(1) it must be a *new and independent act that is not merely a reaffirmation of a previous act*, and (2) it must inflict *new* and accumulating injury on the plaintiff." *Varner v. Peterson Farms*, 371 F.3d 1011, 1019-20 (8th Cir. 2004) (emphases added). Nothing like that is alleged (or argued) here. Plaintiff relies solely on the purported "daily violation of Plaintiff's copyrights" by third-party YouTube users. Opp. 3. This theory fails for two independent reasons.

*First*, purported third-party copyright infringements are, by definition, not "antitrust violations." They are neither an overt act in furtherance of an alleged antitrust conspiracy nor acts that, by their nature, amount to continuing violations of the antitrust laws. *Bray*, 784 F. App'x at 740-41; *accord Nat'l Ass'n of Freelance Photographers v. AP*, 1997 U.S. Dist. LEXIS 19568, at *32 (S.D.N.Y. Dec. 10, 1997) (AP's purported copyright infringement could not constitute antitrust violation because such violations must "demonstrate the requisite effect on *'competition*, not *competitors'*" (quoting *Balaklaw v. Lovell*, 14 F.3d 793, 797 (2d Cir. 1994)). Plaintiff can attempt to assert actual copyright infringement claims (as it has), but it cannot argue that those same alleged infringements are antitrust violations to save its untimely Sherman Act and FDUTPA claims.

*Second*, even accepting Plaintiff's premise, its approach runs afoul of the established rule in the Eleventh Circuit "that a newly accruing claim for damages must be based on some injurious act actually occurring during the limitations period, not merely the abatable but unabated inertial consequences of some pre-limitations actions." *Bray*, 784 F. App'x at 741; *accord Varner*, 371 F.3d 1019-20 (same, and explaining that "[p]erformance of the alleged anticompetitive contracts during the limitations period is not sufficient to restart the period"). Plaintiff points to no new *antitrust violation* that YouTube supposedly committed during the limitations period. Instead, Plaintiff's theory is that because Plaintiff refused to take Content ID on the terms that YouTube allegedly offered it in 2015, Plaintiff faces ongoing injury from various third-party copyright infringements. But the law is clear that ongoing *injury* is not

sufficient to extend the limitations period on a continuing *violation* theory. Indeed, that is exactly what *Bray* rejected:

> Bray's complained-of injury—the inability to continue to manage independently the GPA—was caused by the 2009 Loan Amendment and the resulting transfer of the GPA to Merrill Lynch in March 2021: both of which occurred outside the limitations period. Bray has shown no "specific act or word" that occurred within the limitations period that can be construed as an attempt to enforce the agreement or to modify the agreement such that Bray suffered a new injury.

784 F. App'x at 741. So too here, "[n]o pertinent change in conditions happened by Defendants' acts," and the ongoing harm Plaintiffs claims to be suffered is (at most) merely the "unabated inertial consequences" of the rejected Content ID offer. *Id.*[1]

In short, without any allegation that YouTube made a new and independent effort to tie Content ID to the purchase of any other product during the limitations period, Plaintiff cannot avoid the four-year statute of limitations for its Sherman Act and FDUTPA claims. That it claims to be suffering ongoing injury as the unabated consequence of the original purported offer of Content ID is not enough. And because no amendment could cure this problem, the Court should dismiss the Sherman Act and FDUTPA claims with prejudice. Mot. 7 (collecting cases).

*Copyright & CMI Claims*. The parties agree that Copyright Act claims, including infringement and violations of Section 1202, must be "commenced within three years after the claim accrued." 17 U.S.C. § 507(b); *see* Mot. 7-8; Opp. 8. Like the Complaint, however, the Opposition makes clear that Plaintiff has pleaded thousands of Copyright Act claims outside of the statute of limitations: "*for the past six years*, Plaintiff's representatives have sent over ten

---

[1] Trying to evade *Bray*, Plaintiff relies almost entirely on *Morton's Market*, claiming that its tying claims "mirror the facts presented" there. Opp. 5 (citing *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823 (11th Cir. 1999)). But there is almost nothing analogous about *Morton's Market*, which is not a tying case, but a *price fixing* case, which involved a years-long, criminal conspiracy by dairy producers to fix the price of milk sales at artificially high prices. 198 F.3d at 828. There, a price-fixing claim accrued each time price-fixed goods were sold through the illegal conspiratorial agreement among the defendants. *Id.* Here, by contrast, there was no criminal conspiracy, price-fixing, or ongoing antitrust violations—only (at most) continuing acts of *copyright* infringement by third parties, which according to Plaintiff, were occurring both before and after the alleged 2015 tying offer.

thousand (10,000) notices of violations to YouTube for copyright infringement of Plaintiff's content on the YouTube website." Opp. 8-9 (emphasis added); *accord* ¶ 66. Plaintiff thus does not shy away from its mixing of plainly untimely claims—based on alleged copyright and CMI violations from more than 3 years before this case was filed—with claims that may be timely.

Plaintiff's only attempt to clarify this self-created morass is a single sentence: "each time YouTube infringed on Plaintiff's videos, YouTube committed a new wrong, which started a new limitations period." Opp. 9. That misses the point. Plaintiff's Complaint alleges that thousands of videos were purportedly uploaded to YouTube, became the subject of Plaintiff's takedown notices, and *then were removed by YouTube*—all prior to May 3, 2018. ¶ 70 & Compl. Ex. B. For such videos, there is no possible resetting of the limitations period—any claims based on videos removed from YouTube more than three years before the Complaint was filed are clearly time-barred. Plaintiff's refusal to filter out such claims places an improper burden on Defendants and the Court, warranting dismissal. Mot. 8.[2]

## II. PLAINTIFF'S CLAIMS ARE IRREMEDIABLY DEFICIENT

### A. Plaintiff Cannot Save Its Tying Claims Under The Sherman Act Or FDUTPA

As shown in Defendants' Motion, the Complaint does not come close to alleging the required elements of a Section 1 "tying" claim (or a related claim under FDUTPA). In response, Plaintiff merely regurgitates the standards for tying, while barely engaging with the deficiencies in its theory. The Opposition thus only confirms that Plaintiff has no viable claim.

*No Separate Tying and Tied Products*. In the Complaint, Plaintiff's only attempt to identify the products that are part of its purported "tying" arrangement appears in paragraphs 195 and 196. The supposedly "tied product" is Content ID (¶ 195), which YouTube supposedly

---

[2] Plaintiff's attempt (Opp. 9-10) to distinguish *On Top Records Corp. v. Sunflower Entm't Co.*, 2015 U.S. Dist. LEXIS 190970, at *7-9 (S.D. Fla. Sept. 24, 2015), on its facts is unavailing. The case is relevant here not because of the kind of infringement alleged, but for its clarification that a copyright plaintiff bears the burden of distinguishing between timely and untimely claims of infringement. The plaintiff's failure to do so in *On Top* resulted in dismissal, and Plaintiff's similar failure here warrants the same result.

offered "***in exchange for revenue sharing*** exclusively derived from Plaintiff's copyrighted works, ***as well as Plaintiff's waiver of any prior claims*** against YouTube for copyright infringement of Plaintiff's copyrighted works" (*id*. ¶ 196 (emphases added)). This simply does not describe two *separate* products. Instead, the purported offer of revenue sharing or waiver in connection with Content ID amounts (at most) to unwanted contract terms—which cannot support a tying claim. Mot. 10 (citing cases). That is all the more so where Content ID was *free* (not a product that YouTube ever even allegedly sold), and Plaintiff was supposedly asked to agree to waiver and/or a revenue-sharing agreement (not to buy some other product or service from YouTube).

Plaintiff does not engage with these principles in any way, instead offering only incomprehensible mischaracterizations of Defendants' positions. *See, e.g.*, Opp. 11 ("Defendants try to suggest that the Content ID system cannot be divorced from settlement claims.").[3] In addition to ignoring the extensive authority cited in Defendants' motion, Plaintiff does not cite even a single case suggesting that a release or revenue sharing agreement (especially one associated with a free service like Content ID), can be considered a tying product. Nor could it. *See, e.g.*, *Nat'l Ass'n of Freelance Photographers*, 1997 U.S. Dist. LEXIS 19568, at *35-36 ("There simply is no way that the plaintiffs can make out a tying claim in this case as presently configured, given that the only purchaser at issue is AP, the alleged antitrust violator, and that AP is purchasing only *one product*, the photographs that are the subject of the plaintiffs' present copyright claims."). As a matter of law, what Plaintiff has alleged is not tying.

***No Coercion To Buy The Tied Product.*** Plaintiff acknowledges that another essential element of a tying claim is that "the buyer ***was in fact forced to buy the tied product*** to get the

---

[3] The Opposition also adds to the confusion by seeming to claim, for the first time, that YouTube has tied its "notice and takedown" service to "restrictive additional terms of [the] Content ID contract." Opp. 11. In addition to being unpleaded and legally deficient, this new assertion is flatly contradicted by the very allegations of the Complaint: by its own allegations, Plaintiff successfully used YouTube's notice-and-takedown service hundreds of times over the past 6 years (¶ 25; Compl. Ex. B). Plainly this service was not tied to or conditioned on Plaintiff's using Content ID or entering into any revenue-sharing or licensing deal. *Cf. Illinois Tool Works Inc. v. Independent Ink, Inc.*, 547 U.S. 28, 34-35 (2006).

tying product." Opp. 10 (emphasis added); *accord* Mot. 16-17. Despite recognizing this rule, Plaintiff immediately tries to do away with it: "the question is not whether the victim is forced to buy from the defendant in an illegal tying arrangement, because in no case is the party forced to buy the product." Opp. 12. This double-speak is unadorned with any authority, and Plaintiff fails to mention—much less try to distinguish—the many cases clearly holding that a tying claim requires the plaintiff to be an "unwilling purchaser of an unwanted product." *Capital Temporaries, Inc. v. Olsten Corp.*, 506 F.2d 658, 662 (2d Cir. 1974); Mot. 10-11. Because Plaintiff admittedly was not coerced by YouTube to purchase any product, unilaterally declined the YouTube's offer of Content ID, and refused to enter into a revenue sharing or licensing arrangement, it has no tying claim.

*No Relevant Market.* While pleading lip service to the requirements that it must adequately define for the tying product a relevant market over which Defendants possess dominant market power, Plaintiff does not remotely meet them. Opp. 10-12. Plaintiff offers no explanation of how a release and revenue sharing arrangement could ever comprise a relevant product market, much less explain how this theory is supported by plausible factual allegations. There are, for example, no allegations: (1) comparing releases and revenue sharing agreements to similar competing products or services offered by other companies; (2) measuring the cross-elasticity of demand; or (3) analyzing the substitutability of competing products or services. *See e.g.*, *Jacobs v. Tempur-Pedic Int'l., Inc*., 626 F.3d 1327, 1336 (11th Cir. 2010).

Instead, Plaintiff relies on only general background information about Defendants; it asserts that "[t]he Complaint is replete with descriptions of the Defendants and its global market" such as "YouTube is the worlds' [sic] second largest search engine and second most visited site after Google. [Cites.] YouTube is the second most popular social media platform with 1.9 billion users." Opp. 13. These generalized allegations do not even purport to define a relevant product or geographic market for the specific products and services at issue (whether Content ID or revenue-sharing for online distribution of motion pictures). *Cf. In re Am. Online, Inc. Version 5.0 Software Litig.*, 168 F. Supp. 2d 1359, 1376 (S.D. Fla. 2001) (holding that "Internet Service

Market" was not adequately defined and dismissing antitrust claims); *Am. Online, Inc. v. GreatDeals.Net*, 49 F. Supp. 2d 851, 857-59 (E.D. Va. 1999) ("With respect to the relevant geographic market in which competition takes place, the Court finds that the Internet cannot be defined with outer boundaries. It is not a place or location; it is infinite."). The utter absence of any coherent market analysis further dooms Plaintiff's claims.

*No Antitrust Injury.* Finally, Plaintiff cannot avoid its failure to allege antitrust injury. Mot. 12-13. As discussed, the only injury alleged here is purported copyright infringement of Plaintiff's movies by YouTube users. ¶ 27. But not only is that not an injury cognizable under the antitrust laws, it does not suggest any market-wide harm; it is, at most, an injury only to Plaintiff itself. *See also, e.g.*, *Nat'l Ass'n of Freelance Photographers*, 1997 U.S. Dist. LEXIS 19568, at *33 ("[A]t no point does the Complaint adduce facts to show that *competition in the market* . . . was harmed by AP's copyright transfer policies or its 'refusal to deal with Freelance Photographers.' To the contrary, the Complaint merely sets forth a situation in which a purchaser of goods dictates the terms of its purchases."). Plaintiff also asserts that Content ID is made available to only a small percentage (5%) of those who apply to use it. Opp. 14-15 (citing ¶ 46 (alleging that YouTube "den[ies] approximately ninety-five (95) percent of all Content ID applications"). That is a non-sequitur. Plaintiff alleges that it was the one who *refused* YouTube's offer of Content ID. Neither that refusal nor the purported infringement that Plaintiff claims would have been prevented by Content ID suggests any harm to competition or to a broader market.

For all these reasons, Plaintiff's Sherman Act claim (and associated FDUTPA claim)[4] fail as a matter of law.

### B. Plaintiff Has No Viable Claim Of Actual Damages Under FDUTPA

Plaintiff's FDUTPA claim also should be dismissed for the independent reason that Plaintiff has no "actual damages" recoverable under FDUTPA. Mot. 14; *accord Rodriguez v.*

---

[4] Plaintiff acknowledges, as it must, that its Sherman Act and FDUTPA claims rise and fall together. Opp. 17; *accord QSGI, Inc. v. IBM Global Fin.*, 2012 U.S. Dist. LEXIS 49601, at *12 (S.D. Fla. Mar. 14, 2012).

*Recovery Performance & Marine, LLC*, 38 So. 3d 178, 180 (Fla. 3d DCA 2010) ("[W]hen a plaintiff in her complaint fails to allege a recoverable loss under FDUTPA, the complaint fails to state a cause of action under FDUTPA."); *Donoff v. Delta Air Lines, Inc.*, 2020 U.S. Dist. LEXIS 41408, at *27 (S.D. Fla. Mar. 6, 2020) (same). As Plaintiff acknowledges, FDUTPA damages focus on "the difference in the market value of the product or service in the condition in which it was delivered according to the contract of the parties." Opp. 17 (quoting *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331 (S.D. Fla. 2011)); *see* Mot. 14.

But this case does not involve any buying or selling at all. Plaintiff does not suggest that it ever purchased anything from YouTube or that any goods or services it received from YouTube were diminished in value. Instead, Plaintiff announces in wholly conclusory terms that it alleged a "consumer injury" because of alleged copyright infringement of Plaintiff's works at the hands of third parties. Opp. 17. But that is not an injury cognizable under FDUTPA. Indeed, as explained in Defendant's opening brief, any effort to premise a FDUTPA claim on copyright infringement is preempted. Mot. 14 n.6. Ignoring those cases, Plaintiff cites no authority even hinting that "actual damages" under FDUTPA can arise from purported copyright infringement. Nor could it, as the harm Plaintiff alleges from the asserted infringement—"loss of value in Plaintiff's movie collection" and lost opportunities to secure other licensing agreements (Opp. 17)—are clearly excluded from FDUTPA. As Judge Cohn has explained: "a statutory limitation on such 'actual' damages is that FDUTPA 'does not apply to [a] claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction.'" *Jovine,* 795 F. Supp. 2d at 1344 (quoting Fla. Stat. § 501.212(3)). What Plaintiff seeks here is, at most, purported damage to (intellectual) property that was not the subject of a consumer transaction. Similarly, "speculative losses as a result of missed opportunities are not recoverable under FDUTPA." *Macias v. HBC of Fla.*, 694 So. 2d 88, 90 (Fla. 3d DCA 1997l); *accord QSGI, Inc.*, 2012 U.S. Dist. LEXIS 49601, at *13-14 (claims for "lost profits" and "lost business" are "not available under FDUTPA").

Plaintiff cites (Opp. 16) *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach*

*Cty., Inc.*,169 So. 3d 164 (Fla. 4th DCA 2015), but that case addresses an entirely different issue that has divided courts: whether FDUTPA claims can only be asserted by "consumers" or instead can be brought by a broader class of plaintiffs. The Court need not wade into that debate here. Even if Plaintiff (as a non-consumer) were not categorically barred from suing under FDUTPA, under settled law, it still must satisfy the elements for a claim—including actual damages, as that term is defined by the statute. *Caribbean Cruise Line* itself made clear that a plaintiff "would have to prove that *there was an injury or detriment to consumers* in order to satisfy all of the elements of a FDUTPA claim." *Id*. at 168-69. Plaintiff here alleges nothing of the sort. The copyright harm it alleges was not remotely a consumer injury. Thus, even if Plaintiff could assert claims as a non-consumer, those claims fail as a matter of law because Plaintiff suffered no actual damages recoverable under FDUTPA and because this case simply involves no detriment to consumers at all.[5]

### C. Plaintiff Cannot Save Its DMCA Claim For Alleged Removal Of CMI

The first and most obvious defect with Plaintiff's Section 1202 claim is the failure to identify even a single video that supposedly contained CMI before it was allegedly removed by YouTube. Mot. 16. In response, Plaintiff offers only hand waving. The Opposition says that "Plaintiff has identified the works that are the subject of the Complaint" via exhibits attached to the complaint. Opp. 18. But those exhibits merely purport to identify videos that third parties allegedly uploaded to YouTube in violation of Plaintiff's copyrights. *See* Compl. Ex. B. Neither in its Complaint nor Opposition does Plaintiff suggest that any of the listed videos (much less *which ones*) ever had any CMI associated with them—or that YouTube removed that CMI from those videos or distributed them knowing that CMI had been removed. Neither the exhibits nor

---

[5] All the other cases Plaintiff cites involve straightforward consumer transactions for goods or services. *See Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1246 (11th Cir. 2013) (payment for condominium unit); *Rollins Inc. v. Butland*, 951 So. 2d 860, 865-66 (Fla. 2d DCA 2006) (payment for extermination services); *Jones v. TT of Longwood Inc.*, 2006 U.S. Dist. LEXIS 70664, at *1 (M.D. Fla. Sept. 26, 2006) (automobile and financing agreement purchase); *Frayman v. Douglas Elliman Realty, LLC*, 2021 U.S. Dist. LEXIS 13936 (S.D. Fla. Jan. 25, 2021) (rental payment for residential property).

anything else in the Complaint or Opposition makes Plaintiff's CMI claim less hypothetical or gives Defendants fair notice of what is actually at issue.

Separately, Plaintiff cannot overcome the lack of plausible scienter allegations. Mot. 16-17. Plaintiff acknowledges that Section 1202 has an exacting "two-fold scienter" requirement, but its argument ignores the problem by repeating the Complaint's conclusory allegations. Opp. 18. That is not enough. There is not a single fact alleged that makes it plausible to conclude that YouTube *knowingly* removed CMI from any of Plaintiff's videos, much less that it did so *knowing or having reasonable grounds to know* that doing so would facilitate copyright infringement. Plaintiff's only response is to refer to its takedown notices. Opp. 19. That is a non-sequitur. There is no allegation that these notices (which asserted copyright infringement) made any mention of any CMI. And in any event, Plaintiff does not dispute that YouTube took down the videos identified in the notices. Thus, even if the notices somehow gave YouTube after-the-fact knowledge that CMI had been removed from those videos (which they did not), YouTube's purging of those videos from its system could not possibly give rise to a claim of unlawful removal or distribution of CMI. Mot. 17 n.8.

Finally, Plaintiff proposes a more "lenient" standard for scienter on a motion to dismiss (Opp. 18-19), relying solely on *Robbins v. Oakley, Inc.*, 2018 U.S. Dist. LEXIS 227112, at *8 (C.D. Cal. Sept. 27, 2018). But *Robbins* expressly rejected the notion that "a wholly conclusory statement of a claim would survive a motion to dismiss." *Robbins*, 2018 U.S. Dist. LEXIS 227112, at *4. The court there denied a motion to dismiss where plaintiff alleged that defendant personally removed plaintiff's signature from reproductions of a physical mural, explaining that scienter could plausibly be inferred from the very nature of the specific facts alleged. *Id*. at *8. Here, Plaintiff has alleged nothing like that, and this case involves exactly the kind of "wholly conclusory" knowledge allegations that established law rejects.

## CONCLUSION

For these reasons, Plaintiff's Complaint should be dismissed.

Dated: July 30, 2021

Respectfully submitted,

STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
150 West Flagler Street, Suite 2200
Miami, Florida 33130
Telephone: (305) 789-3229
Facsimile: (305) 789-2664

By: */s/ Jay B. Shapiro*
Jay B. Shapiro, Esq.
Florida Bar No. 776361
jshapiro@stearnsweaver.com
David T. Coulter, Esq.
Florida Bar No. 119874
dcoulter@stearnsweaver.com


WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5801

Brian M. Willen, Esq. (*Pro Hac Vice*)
bwillen@wsgr.com
Lucy Yen, Esq. (*Pro Hac Vice*)
lyen@wsgr.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 30, 2021, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

*/s/ Jay B. Shapiro*
JAY B. SHAPIRO, ESQ.

## SERVICE LIST

Case No. 1:21-cv-21698-DPG
United States District Court, Southern District of Florida

Rey Dorta, Esq.
Florida Bar No. 0084920
Omar Ortega, Esq.
Florida Bar No. 0095117
Rosdaisy Rodriguez, Esq.
Florida Bar No. 112710
Natalie A. Ferral, Esq.
Florida Bar No. 1012314
**DORTA & ORTEGA, P.A**
3860 SW 8th Street, PH
Coral Gables, Florida 33134
Telephone:(305) 461-5454
Facsimile: (305) 461-5226
oortega@dortaandortega.com
rdorta@dortaandortega.com
rrodriguez@dortaandortega.com
nferral@dortaandortega.com
dcruz@dortaandortega.com

*Counsel for Plaintiff*