UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-cv-21698-GAYLES/TORRES

**ATHOS OVERSEAS, LTD.**,

    Plaintiff,

v.

**YOUTUBE, INC., YOUTUBE, LLC, and GOOGLE, LLC**,

    Defendants.
_____/

## ORDER

**THIS CAUSE** comes before the Court upon Defendants YouTube, Inc., YouTube, LLC, and Google LLC's Motion to Dismiss (the "Motion") [ECF No. 14]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons set forth below, the Motion is granted in part and denied in part.

## BACKGROUND[1]

Plaintiff, Athos Overseas, Ltd, is a wholly owned company of Carlos Vasallo ("Vasallo"), a Spanish-language movie producer, who, through several holding companies, owns the world's largest collection of Mexican and Latin American movies. Vasallo, through Plaintiff and his other companies, holds the proper copyright registration, both internationally and in the United States, for each movie within his collection. Vasallo's companies are the primary sources of classic, Mexican

---

[1] As the Court is proceeding on a Motion to Dismiss, it takes Plaintiff's allegations in the Complaint for Declaratory and Injunctive Relief and Damages (the "Complaint"), [ECF No. 1], as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). Moreover, the Court may properly consider the exhibits attached to the Complaint. *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." (citation omitted)); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

movies for television networks, such as Univision, Telemundo, and Televisa. These networks pay millions of dollars for the rights to show these films. Carlos Slim, a multi-billion dollar television mogul in Mexico and Latin America, even offered Vasallo over one hundred million dollars for his entire movie collection.

Defendants YouTube, Inc. and YouTube, LLC (collectively, "YouTube") are an internet service provider and have the largest video-sharing platform in the world (the "YouTube Platform"). Defendant Google LLC ("Google") owns YouTube (collectively, the "Defendants"). In or about 2015, Vasallo learned that films in his movie collection were being pirated on the YouTube Platform when one of his traditional buyers refused to pay for licensing fees and the right to show his movie because the same movie was being freely shown on the YouTube Platform. Vasallo then contacted Defendants at their offices in New York. John Farrell, the head of YouTube's Latin American Division in New York, referred Vasallo to Google's Director of Latin Media and Entertainment, Juanjo Duran ("Duran").

During Vasallo's initial conversation with Duran, Duran acknowledged that Vasallo's movies, including those owned by Plaintiff, "were routinely and repeatedly pirated on the YouTube [P]latform." [ECF No. 1 at 5]. However, Duran told Vasallo that Defendants could "very easily" detect and discontinue the acts of piracy with their Content ID system. *Id.* The Content ID system[2] recognizes pirated material prior to its upload on the YouTube Platform and allows YouTube to instantaneously block that content. Duran, acting on behalf of YouTube, offered Plaintiff, through Vasallo, three options: (1) Vasallo could allow the piracy to continue, and YouTube would direct some of that revenue to Vasallo; (2) Defendants could restrict the content so that only Vasallo could publish his movies on YouTube, and both parties would share the profits; or (3) a hybrid of the first

---

[2] The Complaint does not indicate whether YouTube's Content ID system is a free or paid service.

two options where Vasallo could allow the piracy to continue but also upload better quality versions of the movies, and the parties would share the profits. *Id.* at 6–7. These options would also require Vasallo to agree to release YouTube from all possible claims for prior acts of piracy. Vasallo did not agree to these terms. YouTube indicated that without an agreement in place, Defendants would not use their Content ID system for Plaintiff's films and Vasallo would have to use the self-monitoring procedure available for the YouTube Platform. Vasallo asked why Defendants would take this position and YouTube responded with: "because we are YouTube, we are part of Google, and we are protected by the Digital Millennium Copyright Act[.]" *Id.* at 7.

Vasallo, on behalf of Plaintiff and his other companies, hired a law firm to monitor YouTube's Platform for his pirated movies. Utilizing YouTube's self-monitoring procedure, Vasallo and Plaintiff would send takedown notices to YouTube and YouTube would then remove that pirated content. However, under YouTube's policy, it would not remove all matching content, only the specific video uploaded by the specific infringer identified in the notice. That infringer would then be free to upload the same content again until three takedown notices were filed against him in a 90-day period. Only then, would YouTube cancel that infringer's username. Moreover, YouTube limits the number of takedown notices Plaintiff can submit. For over six years, Plaintiff and Vasallo have sent more than 10,000 notices to YouTube. Yet, posts that directly infringe on Plaintiff's copyrighted works are still available on the YouTube Platform. Meanwhile, YouTube profits from its users' uploads of infringed copyrighted material.

On May 3, 2021, Plaintiff filed this thirteen-count action against Defendants. [ECF No. 1]. Plaintiff brings the following causes of action: (1) direct copyright infringement by public performance against YouTube (Count I); (2) direct copyright infringement by public display against YouTube (Count II); (3) direct copyright infringement by reproduction against YouTube (Count III);

(4) inducement of copyright infringement against Defendants (Count IV); (5) contributory copyright infringement against Defendants (Count V); (6) vicarious copyright infringement against Defendants (Count VI); (7) removal and alteration of copyright information along with intentional distribution of materials lacking copyright information against YouTube (Count VII); (8) direct copyright infringement by public performance against Google (Count VIII); (9) direct copyright infringement by public display against Google (Count IX); (10) direct copyright infringement by reproduction against Google (Count X); (11) removal and alteration of copyright information along with intentional distribution of materials lacking copyright information against Google (Count XI); (12) Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") against YouTube (Count XII); and (13) violation of § 1 of the Sherman Act for illegal tying against YouTube (Count XIII)[3]. In response, Defendants filed the instant Motion.

## LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The pleadings are construed broadly, *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff, *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). On a motion to dismiss, the court need not determine whether the plaintiff "will ultimately prevail . . . but whether [its] complaint [is] sufficient to cross the federal court's threshold." *Skinner*

---

[3] This count is labeled in the Complaint as "XII", but the Court will construe it as "XIII".

*v. Switzer,* 562 U.S. 521, 530 (2011).

## DISCUSSION

I.     **Sherman Act and FDUTPA Claims**[4]

In Count XIII, Plaintiff claims that YouTube violated § 1 of the Sherman Act by engaging in illegal tying. YouTube argues that Plaintiff's claim for tying under the Sherman Act fails as a matter of law. "Generally, to state a claim under section 1 of the Sherman Act, a plaintiff must allege that the defendant (1) entered into an anticompetitive agreement (2) proximately causing antitrust injury (3) in a relevant market." *Restore Robotics, LLC v. Intuitive Surgical, Inc.*, No. 19CV55, 2019 WL 8063989, at *2 (N.D. Fla. Sept. 16, 2019). "A tying arrangement is an agreement by a party to sell one product [or service] but only on the condition that the buyer also purchases a different (or tied) product [or service]." *Id.* (citing *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1502 (11th Cir. 1985)). An illegal tying arrangement consists of five elements:

> (1) a tying and a tied product; (2) evidence of actual coercion by the seller that in fact forced the buyer to purchase the tied product; (3) that the seller have sufficient market power in the tying product market to force the buyer to accept the tied product; (4) anticompetitive effects in the tied market; and (5) involvement of a not insubstantial amount of interstate commerce in the tied product market.

*Amey*, 758 F.2d at 1502–03 (citation, internal quotation marks, and original alteration omitted). Here, Plaintiff alleges that YouTube's Content ID is a tied product that was offered "in exchange for revenue sharing" and "Plaintiff's waiver of any prior claims against YouTube for copyright infringement[.]" [ECF No. 1 at 46]. Plaintiff contends that Duran's offer is a tying. *Id.* However, the Court finds that Plaintiff fails to state a claim for a Sherman Act violation.

YouTube argues that Plaintiff fails to meet the second element because Plaintiff was not "forced" to buy Content ID. Indeed, Plaintiff admits that it refused YouTube's offer and nothing

---

[4] In light of the Court's findings, it need not address Defendants' statute of limitations argument as it applies to these claims.

in the allegations suggests that Plaintiff ever purchased anything from YouTube or entered into any agreement. Instead, Plaintiff states in a conclusory fashion, and without citation to any authority, that "the question is not whether the victim is forced to buy from the defendant [but rather] whether the victim can purchase the tying product without being forced to also purchase the tied product." [ECF No. 21 at 12].[5] This is not sufficient to state a claim. *See Tic-X-Press, Inc. v. Omni Promotions Co.*, 815 F.2d 1407, 1416 (11th Cir. 1987) (to establish the second element, "the plaintiff must establish that the seller *forced* or *coerced* the buyer into purchasing the tied product"); *Shop & Save Food Markets, Inc. v. Pneumo Corp.*, 683 F.2d 27, 30 (2d Cir. 1982) (finding no illegal tying arrangement where no agreement was reached on an offer because "a tying arrangement cannot exist unless the buyer was actually coerced by the seller into agreeing to buy the tied product or to refrain from purchasing the tied product from the seller's competitors"); *Kellam Energy, Inc. v. Duncan*, 668 F. Supp. 861, 881 (D. Del. 1987) ("As a precondition to a tying claim, the buyer must actually purchase or lease the unwanted product.").

Additionally, Plaintiff does not allege that it had to purchase Content ID. If Content ID is a free service offered by Defendants, Plaintiff's claim must fail because the acceptance of a free service does not constitute an impermissible tie-in. *See Kellam Energy, Inc.*, 668 F. Supp. at 881 ("Merely accepting something provided for free does not constitute an impermissible tie-in.").

Plaintiff also fails to establish the first element of this claim. As YouTube notes, Plaintiff fails to identify a separate tying product. The Court agrees. Plaintiff does not identify a specific,

---

[5] *Hannah v. Armor Corr. Health Servs., Inc.*, No. 19-CV-596, 2021 WL 1777881, at *6 (M.D. Fla. Mar. 8, 2021) (noting that a basis to reject the plaintiff's argument is the "fail[ure] to cite any specific, persuasive authority in support [because] the Court need not develop [p]laintiff's conclusory arguments or address arguments unsupported by authority").

separate tying product. Nor does Plaintiff explain how the release of claims and revenue sharing proposals offered by Duran constitute separate tying products sold by YouTube.

Plaintiff's FDUTPA claim, Count XII, is premised on the same allegations as its Sherman Act claim. *See* [ECF No. 1 at 45] (alleging that YouTube's terms for use of the Content ID system are an unfair and deceptive trade practice). Because Plaintiff's antitrust claim fails, so too does its FDUTPA claim. *QSGI, Inc. v. IBM Glob. Fin.*, No. 11-80880-CIV, 2012 WL 1150402, at *4 (S.D. Fla. Mar. 14, 2012) ("When, as here, a plaintiff's FDUTPA claim is based on the same allegations as its antitrust claim, failure to establish a violation of antitrust law is sufficient to conclude that the plaintiff has also failed to state a FDUTPA claim.").[6]

## II.    Copyright Infringement Claims

Defendants argue that Plaintiff's claims for copyright infringement (and its § 1202(b) claims), Counts I-XI, are time-barred as Copyright Act claims must be "commenced within three years after the claim accrued." 17 U.S.C. § 507(b).[7] Specifically, Defendants argue that those claims that occurred before May 3, 2018,[8] are time-barred.

In the Eleventh Circuit, dismissal on statute of limitations grounds is appropriate "if it is apparent from the face of the complaint that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citation omitted). "[A] copyright infringement cause of action accrues when a copyright owner knew or should have known of the alleged infringement." *On Top Recs. Corp. v. Sunflower Ent. Co.*, No. 15-CV-22664, 2015 WL 13264196, at *3 (S.D. Fla. Oct. 28, 2015). It is clear from the Complaint that Plaintiff was aware of the infringement as early

---

[6] In its response, Plaintiff acknowledges that its Sherman Act and FDUTPA claims rise and fall together. *See* [ECF No. 21 at 17] ("For the same reasons the antitrust claims are legally and factually established, the FDUTPA allegations state a cause of action.").
[7] Section 507(b) applies to any civil action "under the provisions of this title [Title 17]," which includes 17 U.S.C. § 1202(b) claims.
[8] The Complaint in this action was filed on May 3, 2021. [ECF No. 1].

as 2015, when it complained to Defendants. While Plaintiff does not specifically allege when the infringement or violations occurred, it admits that "[f]or the past six years, Plaintiff's representatives have sent over ten thousand (10,000) notices of violations to YouTube for copyright infringement of Plaintiff's content on the YouTube website." [ECF No. 1 at 21]. Moreover, the exhibits attached to the Complaint contain notices Plaintiff sent to YouTube from 2016 to 2021 identifying the infringement of its copyrighted materials. [ECF No. 1-2]. Therefore, based on the Complaint, Plaintiff's copyright infringement cause of action began accruing as early as 2015 when Plaintiff knew or should have known of the alleged infringement. Thus, Plaintiff's claims that accrued before May 3, 2018, must be dismissed as time-barred.[9]

### III. Section 1202(b) Claims

In Counts VII and XI, Plaintiff alleges that Defendants violated § 1202(b) of the Digital Millennium Copyright Act. Specifically, Plaintiff alleges that Defendants, while processing third-party uploads of Plaintiff's works to the YouTube Platform, removed and/or altered Plaintiff's copyright management information ("CMI") and continued to display the works upon notice of the lack of CMI. CMI includes "information conveyed in connection with copies" of the work, such as "the name of, and other identifying information about, the copyright owner of the work[.]" 17 U.S.C. § 1202(c). Defendants argue that these counts should be dismissed because Plaintiff's allegations are conclusory and lacking in factual support. The Court disagrees.

Section 1202(b) prohibits (1) "intentionally remov[ing] or alter[ing] any copyright management information," *id.* § 1202(b)(1), and (2) distributing copies of works "knowing that copyright management information has been removed or altered" without authorization, *id.* §

---

[9] Plaintiff does appear to contest that some of its claims fall outside of the statute of limitations period, just that dismissal of the claims in their entirety is not warranted. *See* [ECF No. 21 at 9] ("Plaintiff sufficiently alleges many copyright infringement acts perpetuated by Defendants within the three-year statute of limitations[.]").

8

1202(b)(3). Both provisions require a plaintiff to show that a defendant knew or had "reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any" copyright. *Id.* § 1202(b). "Courts have applied this statute in a straightforward manner such that Plaintiffs here need only allege (1) the existence of Copyright [m]anagement [i]nformation on the work in question; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally." *Dermansky v. Tel. Media, LLC*, No. 19CV1149, 2020 WL 1233943, at *3 (E.D.N.Y. Mar. 13, 2020) (citation omitted).

Here, Plaintiff alleges that its works contain CMI that identify Plaintiff "as creator and copyright owner of the works." [ECF No. 1 at 43]. This CMI is included in Plaintiff's works as metadata or in packaging. As an exhibit, Plaintiff identifies its works that are improperly shown on the YouTube Platform. [ECF No. 1-1]. Plaintiff alleges that Defendants, when processing the uploads of its works, removed the affiliated CMI and then distributed those works. Furthermore, Plaintiff alleges that the takedown notices it provided to Defendants identified the infringed materials and that Plaintiff was the copyright owner of the materials, providing Defendants with knowledge of the CMI. Plaintiff alleges that, despite this knowledge, Defendants continued to display Plaintiff's materials. At this stage of the litigation, the Court finds that Plaintiff has sufficiently stated its claims. *See Lamonte Sims v. Amazon.com, Inc., et al.*, No. 220CV04389, 2022 WL 739524, at *8 (C.D. Cal. Jan. 27, 2022) (finding allegations that an unauthorized version of the plaintiff's work was published, distributed, and duplicated on YouTube's website with the CMI removed, and that YouTube failed to remove the content after notice, was sufficient, at the motion to dismiss stage, to plead knowledge); *Affordable Aerial Photography, Inc. v. Illustrated Properties Real Est., Inc.*, No. 16-CV-80109, 2016 WL 8786785, at *3 (S.D. Fla. May 3, 2016) (denying dismissal of § 1202(b) claim where the plaintiff alleged that the works at issue contained

9

CMI, which was removed by the defendants); *Prokos v. Exceedant LLC*, No. 19-CV-508, 2019 WL 5698379, at *2 (M.D. Fla. Aug. 27, 2019) (denying dismissal of § 1202(b) claim where the plaintiff alleged the work contained CMI that the defendants displayed after its removal).

## CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss, [ECF No. 14], is **GRANTED in part** and **DENIED in part**.

2. The Motion is **DENIED** as to Counts VII and XI.

3. The Motion is **GRANTED** as to Counts XII and XIII. Counts XII and XIII are **DISMISSED without prejudice**.

4. As to Counts I-XI, Plaintiff's claims that accrued before May 3, 2018, are **DISMISSED with prejudice**. The Motion is **otherwise DENIED** as to these counts.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29th day of March, 2022.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE