

Monday, April 25, 2022

**VIA E-MAIL**

Chief Judge Darrin P. Gayles
Wilkie D. Ferguson, Jr.
United States Courthouse
400 North Miami Avenue
Room 11-1
Miami, Florida 33128

      **RE:**    Athos Overseas, Ltd. Vs. YouTube, Inc., Youtube, LLC, and Google, LLC
              Court Case No.: 1:21-cv-21698-DPG

Dear Judge Gayles:

    I represent the Plaintiff in the above-referenced case which is pending in your division. The Parties have conferred and have agreed to enter into a Joint ESI plan. Attached please find the ESI plan for your review and execution.

    Kindly have your Judicial Assistant contact our office should your Honor need anything further.

                                  Very truly yours,

                                  Rey Dorta, Esq.

*Enclosures*
cc: Jay B. Shapiro, Esq., Brian M. Willen, Esq., Lucy Yen, Esq., and Dylan Byrd, Esq. (Letter only, via e-mail)

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 1:21-cv-21698-DPG

ATHOS OVERSEAS, LTD,

*Plaintiff,*

v.

YOUTUBE, INC. et al.,

*Defendants.*
_____/

**STIPULATED DISCOVERY ORDER ESTABLISHING PROTOCOL FOR PRODUCING DOCUMENTS AND ESI**

Pursuant to Rules 16 and 26(f) of the Federal Rules of Civil Procedure ("Federal Rules"), Plaintiff Athos Overseas, LTD ("Plaintiff") and Defendants YouTube, LLC, and Google LLC ("Defendants") (collectively, the "Parties" and each a "Party") have agreed on the procedures set forth herein regarding the production of electronically stored information ("ESI") in this case, which the Court finds appropriate.

1. **Proportionality.** Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information consistent with Fed. R. Civ. P. 26(b)(1).[1] This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues. A party's meaningful compliance with this order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

---

[1] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

 (a) These data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved pursuant to normal business retention, but not searched, reviewed, or produced:

  (i) backup systems and/or tapes used for disaster recovery;

  (ii) systems, server and network logs; and

  (iii) systems no longer in use that cannot be accessed.

 (b) In furtherance of the Federal Rules on proportionality, the categories of ESI identified in Schedule A attached hereto need not be searched, collected or preserved.

2. **Load Files**. Except for ESI described in sections 3(b) and (c) below, ESI will be produced in electronic format, with files suitable for loading into a litigation support database. The load files will define document breaks, attachments and other information identified below.

 (a) **Image Load File** shall contain the following comma-delimited fields: BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT. Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents in a production should match the total number of records in the data load file.

 (b) **Cross-Reference or Linking File**. The producing party will also provide a cross-reference file that facilitates the linking of the produced image or native file with the litigation database. This cross-reference file will contain fields such as the unique document ID (*i.e.*, BegBates) and the file path of the corresponding image or native file. It should also include a field that identifies whether the image is the first page of a multipage document. The producing party may provide this

        information either in a litigation database format (e.g., an Opticon file) or as a standard delimited ASCII text file. Regardless of format, the linking file must include one entry (row) per image or native file with the requisite fields.

3. **Categories of Production of ESI**. Productions shall include, single page TIFFs, Text Files, an ASCII delimited metadata file (.txt, .dat, or .csv) and an image load file that can be loaded into commercially acceptable production software (e.g., Concordance). ESI will be produced as follows, depending on its classification. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree not to degrade the searchability of documents as part of the document production process.

    (a) **Production of ESI as TIFF Images With Metadata and Extracted Text**. Documents created in standard office automation file formats (including but not limited to Microsoft Word or WordPerfect documents) and ESI that can practicably be converted into TIFF format will be produced as single-page TIFF Group IV images, with any available fielded metadata and text searchable information extracted from the native documents.

        (i) Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Unless excepted below, documents that exist as ESI shall be converted and produced as TIFFs. Unless excepted below, single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). TIFFs shall show all text and images that would be visible to a user of the original documents.

        (ii) **Bates Numbering**. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The

producing party will brand all TIFF images in the lower right-hand corner with its corresponding bates number, using a consistent font type and size. The Bates number must not obscure any part of the underlying image.

(iii) **File Names**. Image file names will be identical to the corresponding bates numbered images, with a ".tif" file extension.

(iv) **Confidentiality Endorsements**. Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file. Those designations must be in a consistent font type and size, and must not obscure any part of the underlying image or Bates number.

(v) **Production of Extracted Full Text**. The producing party will provide extracted full text (i.e., text extracted from ESI) for all material originating as ESI in a text file corresponding to a single page of a document. The full text file name will be composed of the Bates number of the associated document, with a ".txt" file extension. The text file will either accompany the image file in the same folder or will be provided in a separate folder labeled "TEXT" or "OCR." Failing that, the path to the document text file must be indicated in the metadata file. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents. All documents shall be produced with a link in the TextLink field.

(vi) **Production of Metadata**. The parties are only obligated to provide the following metadata for all ESI produced, to the extent such metadata exists. The parties are not obligated to populate manually any of the fields below

if such fields cannot be extracted from a document, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, and CUSTODIAN. The metadata file shall be delimited according to the following characters:

(A)  Delimiter = ¶ (ASCII:020)

(B)  Text-Qualifier = þ (ASCII:254)

(C)  New Line = ® (ASCII:174)

(D)  Multi-value delimiter - ; (ASCII Code 059)

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | Includes the Individual (Custodian) from whom the documents originated and all Individual(s) whose documents de-duplicated out (De-Duped Custodian). |
| SUBJECT | Subject line of email |
| TITLE | Title from properties of document |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| TO | All recipients that were included on the "To" line of the email |
| FROM | The name and email address of the sender of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| AUTHOR | Any value populated in the Author field of the document properties |
| FILENAME | Filename of an electronic document (Edoc or attachment) |

| Field Name | Field Description |
|---|---|
| DATEMOD | Date an electronic document was last modified or created (format: MM/DD/YYYY) (Edoc or attachment) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment) |
| NATIVELINK | Native File Link (Native Files only) |
| TEXTLINK | Link to text files |

      (vii)    **Redaction**. If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data including any metadata therein. If a file that originates in ESI needs to be redacted before production, the file will be rendered in TIFF, and the TIFF will be redacted and produced. However, to the extent that the text is searchable in the native format, the producing party will still provide searchable text for those portions of the document that have not been redacted. The metadata for redacted files may also be redacted when it contains privileged content.

(b)    **Production of Native Format Documents That Are Impractical to Convert to TIFF**. ESI that is not practical to convert to TIFF may be produced using one of the two following methods, which method will be subject to meet and confer between the parties.

      (i)    **Spreadsheets that are Impractical to Convert to TIFF**. Spreadsheets (e.g., MS Excel, Google Sheets) and delimited text files (e.g. comma-separated value (.csv) files and tab-separated value (.tsv) files) shall be produced in either their native format or MS Excel. TIFF images need not be produced unless the files have been redacted, in which instance such files shall be produced in TIFF with OCR Text Files. A TIFF placeholder indicating that the document was provided in native format should accompany the database record. If a file has been redacted, TIFF images

    and OCR text of the redacted document will suffice in lieu of a native file and extracted text.

  (ii) **Encrypted or Password-Protected ESI**. For any ESI that exists in encrypted format or is password-protected, the producing party will make reasonable efforts to provide the propounding party a means to gain access to those native files (for example, by supplying passwords or slip-sheets).

4. **Production Media**. The producing party will use the appropriate electronic media for its ESI production, and will cooperate in good faith to use the highest-capacity available media to minimize associated overhead. The preferred method of production is via FTP for uploading and accessing media by the producing and propounding parties. If the size of the production exceeds the capacity of storage on an FTP, then the producing party, upon conferring with the propounding party which is the preferred method of delivery, may produce via CD, DVD or hard drive. The producing party will label the production media with a production number corresponding to the production volume (e.g., "VOL001," "VOL002"), as well as the volume of the material in that production (e.g. "-001," "-002"). The production media shall also identify: the producing party, production date, the Bates number range of the materials contained on the Production Media, media volume name, and document number range.

5. **Identification of Responsive Documents and ESI**. The parties agree on the following protocol for the identification of responsive documents and ESI.

  (a) **Custodian Protocol.** Subject to any exclusions set forth herein, if proportionate to the needs of the case, as contemplated by Fed. R. Civ. P. 26(b)(1), the parties shall meet and confer to identify no more than 5 custodians most likely to have discoverable information in their possession, custody or control. The parties agree to search the ESI and non-duplicative hard copy documents of these custodians for responsiveness to the requesting party's document requests, subject to the producing party's objections to the document requests. Subject to any exclusions set forth herein, the parties agree to identify potentially relevant data from non-custodial sources to the extent a party reasonably anticipates the source may contain

non-duplicative, discoverable documents. The parties agree to limit the scope of discovery from non-custodial sources if it is unduly burdensome or otherwise disproportionate as contemplated by Fed. R. Civ. P. 26(b)(1).

(b) **Search Term Protocol.** The parties shall work together to agree on a full list of search terms as a means of limiting the volume of ESI to be reviewed for responsiveness to discovery requests propounded by the parties. Each party may propose a list of 10 terms to be used by the opposing party (irrespective of any other terms the party may employ to locate documents for potential use in the litigation). The parties shall meet and confer on any modifications to the proposed terms needed to improve their efficacy in locating discoverable information and ensuring that the terms are proportional to the needs of the case as required by Fed. R. Civ. P. 26(b). Absent a showing of good cause, a requesting party may not request additional terms to be used in connection with the electronic searches. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "UI" and "desktop") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (e.g., "but not," "w/x") is expected.

  (i) Subject to the parties' agreement, or Court Order, regarding the scope of Plaintiff's or Defendants' document requests, the agreed-upon search terms shall be used to identify ESI that will be reviewed for responsiveness to Plaintiff's or Defendants' discovery requests and produced if responsive and non-privileged subject to and without waiver of a party's objections to the opposing party's discovery requests and to any agreements reached in the parties' meet-and-confer process. With respect to ESI, the fact that a document is captured by application of agreed-upon search terms to the ESI

     from agreed-upon custodians does not mean that such document is responsive to any propounded discovery request or otherwise relevant to this litigation. Propounded discovery requests shall govern the scope of documents to be produced, subject to the parties' objections and any agreements reached in the parties' meet-and-confer process or to any other disclosure obligations ordered by the Court or required by applicable rules.

(ii) Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Additional culling of file types based on file header information may include, but are not limited to: Application Package File, Backup Files, Batch Files, Binary Disc Image, C++ File Formats, Cascading Style Sheet, Configuration File, Database File, Dictionary files, Dynamic Link Library, Event Log Files, Executables Files, Hypertext Cascading Stylesheet, Java Archive Files, JavaScript files, JavaScript Source Code and Class Files, Macintosh Resource Fork Files, MP3 Files, MP4 Files, Package Manager Files, Program Files, Program Installers, Python Script Files, Quicktime Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, TrueType Font Files, Video Media Files, Waveform Audio File Format, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File.

(iii) A party is required to produce only a single copy of a responsive document, and a party may de-duplicate responsive ESI across Custodians. A party may also de-duplicate email threads and attachments as follows: In an email thread, only the most evolved responsive email in a thread will be produced. Where an earlier-in-thread email has a responsive attachment not contained within the most evolved responsive email, the most evolved earlier-in-thread email containing the attachment will also be produced along with its

     attachment. An attachment is a file associated with an email for retention and storage as a single message unit.

(c)  **Query Protocol.** Queries will be run against all ESI collected from agreed-upon custodians, including emails and their attachments. If a query returns an email or an attachment to an email, both the email and any attachment(s) will be reviewed and produced, if responsive and non-privileged, and subject to the parties' objections to discovery requests and any agreements reached in the parties' meet-and-confer process. All queries will be run in a non-case sensitive manner, except as provided in the agreed-upon search terms or otherwise agreed to by the parties. Hyphenation of terms will not affect search results (e.g., a query for "all inclusive index" will return "all-inclusive index" and vice versa). If the search syntax required by the tool being used is different from the search syntax provided in the agreed upon search term list or in any agreed-upon search terms to be applied to any party's ESI, the actual syntax used for the search and the tool used will be identified to the requesting party prior to conducting the search.

(d)  **Documents that are not word-searchable.** If the parties have ESI, such as PDF and TIFF files (including PDF and TIFF files stored within RAR or ZIP files) and/or scanned or faxed files, that pertain to one of the agreed upon custodians or which the party must otherwise review, to which search terms cannot be applied then that party will notify the propounding party and meet-and-confer with the propounding party to try to come to an agreement with respect to a protocol for reviewing and producing such documents.

(e)  **Obligation to conduct reasonable search.** With respect to ESI, and for those of Plaintiff's or Defendants' Document Requests that the parties have agreed (or the Court has ordered) can be addressed by using search terms, (i) a party's obligation to conduct a reasonable search for documents in response to propounded discovery requests shall be deemed to be satisfied by reviewing documents that are captured by utilizing the agreed-upon search terms to be applied to ESI from agreed-upon custodians; and (ii) a party shall have no obligation to produce any documents,

except as otherwise agreed to in writing by the parties, that are not either (a) captured by one or more of the agreed-upon search terms to be applied to ESI of agreed-upon custodians and identified as non-privileged and responsive to a specific propounded discovery request or (b) otherwise identified by the party as non-privileged and responsive to a specific propounded discovery request.

Notwithstanding the above, the Parties to this ESI plan agree and understand that nothing in this agreement eliminates their obligation to respond to discovery requests seeking the production of non-electronic documents consistent with the Federal Rules of Civil Procedure.

6. **Privilege and Privacy.**

   (a) The parties are to confer on the nature and scope of privilege logs for the case, including whether categories of information may be excluded from any logging requirements and whether alternatives to document-by-document logs can be exchanged.

   (b) With respect to information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

   (c) Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

   (d) Pursuant to Federal Rules of Evidence 502(d) and (e), the production of a privileged or work-product-protected document is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privilege or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or any other federal or state proceeding. Information that contains privileged matter or attorney work product shall be immediately returned if such information appears on its face to have been produced or if notice is provided.

    (e)    Nothing in this Order shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI. Disclosures among defendants' attorneys of work product or other communications relating to issues of common interest shall not affect or be deemed a waiver of any applicable privilege or protection from disclosure.

    (f)    Nothing in this Order shall be interpreted to require disclosure of information subject to privacy protections, including information that may need to be produced from outside of the United States and/or may be subject to foreign laws.

7.    **Modification.** This Stipulated Order may be modified by the parties or by the Court for good cause shown. Any such modified Stipulated Order will be titled sequentially as follows, "First Modified Stipulated Discovery Order."

**IT IS SO STIPULATED**, through Counsel of Record.

| | |
|---|---|
| Dated: 4/25/2022 | DORTA & ORTEGA, P.A.<br>/s/ *Rey Dorta*<br>Rey Dorta, Esq.<br>Florida Bar No. 0084920<br>Omar Ortega, Esq.<br>Florida Bar No.095117<br>Rosdaisy Rodriguez, Esq.<br>Florida Bar No. 112710<br>Yvette C. Buergo, Esq.<br>Florida Bar No. 1003212<br>3860 SW 8th Street, PH<br>Coral Gables, Florida 33134<br>Phone:(305)461-5454<br>Facsimile: (305)461-5226<br>Email: rdorta@dortaandortega.com<br>Email: oortega@dortaandortega.com<br>Email: rrodriguez@dortaandortega.com<br>Email: ybuergo@dortaandortega.com<br>Email: dcruz@dortaandortega.com<br>***Counsel for Plaintiff*** |
| Dated: 4/25/2022 | STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.<br>150 West Flagler Street, Suite 2200<br>Miami, Florida 33130<br>Telephone: (305) 789-3229<br>Facsimile: (305) 789-2664<br>By: /s/ Jay B. Shapiro<br>Jay B. Shapiro, Esq.<br>Florida Bar No. 776361<br>jshapiro@stearnsweaver.com<br>David T. Coulter, Esq.<br>Florida Bar No. 119874<br>dcoulter@stearnsweaver.com<br><br>WILSON SONSINI GOODRICH & ROSATI, P.C.<br>1301 Avenue of the Americas, 40th Floor<br>New York, NY 10019<br>Telephone: (212) 999-5800<br>Facsimile: (212) 999-5801<br>Brian M. Willen, Esq.<br>(Pro Hac Vice)<br>bwillen@wsgr.com<br>Lucy Yen, Esq.<br>(Pro Hac Vice)<br>lyen@wsgr.com |

                                        Dylan Byrd, Esq.
                                        (Pro Hac Vice)
                                        dbyrd@wsgr.com
                                        ***Counsel for Defendants***

**SO ORDERED.**

Dated: _____            _____
                                                            Hon. Darrin P. Gayles
                                                           United States District Judge

## SCHEDULE A

1. Deleted, slack, fragmented, or other data only accessible by forensics.

2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3. On-line access data such as temporary internet files, history, cache, cookies, and the like.

4. Data in metadata fields that are frequently updated automatically, such as last- opened dates.

5. Automatically saved versions of documents and emails.

6. Voice messages.

7. Instant messaging and chat application data.

8. Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

9. Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

10. Logs of calls made from mobile devices.

11. Video and audio recordings.

12. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

13. Data remaining from systems no longer in use that is unintelligible on the systems in use.

14. Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and disposition of computer equipment.