UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:21-cv-21698-DPG

ATHOS OVERSEAS LIMITED CORP.,

    Plaintiff,

v.

YOUTUBE, INC., YOUTUBE, LLC, and GOOGLE LLC,

    Defendants.

## DEFENDANTS YOUTUBE, LLC, AND GOOGLE LLC'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR <u>SUMMARY JUDGMENT</u>

The following Separate Statement of Undisputed Facts is submitted in support of YouTube, LLC and Google LLC's (collectively, "Defendants" or "YouTube") Motion for Summary Judgment in the above-captioned matter.[1] The undisputed material facts support summary judgment:

1. YouTube is an online video hosting service that allows users to upload video content to YouTube's servers. Zhu Decl. ¶¶ 2-3.

2. As of February 2020, more than 500 hours of video were uploaded to YouTube every minute. Zhu Decl. ¶ 10.

3. YouTube is a "service provider" within the meaning of 17 U.S.C. § 512(c), (k)(1)(B). Ex. 7 at 2 (Request 1); Ex. 8 at 1 (same).[2]

---

[1] Abbreviations in this separate statement are the same as, and defined within, Defendants' Motion for Summary Judgment.

[2] References to "Ex. _" are to the Exhibits attached to the Declaration of Brian M. Willen.

4. YouTube has developed and maintains a "policy that provides for the termination in appropriate circumstances of subscribers and account holders . . . who are repeat infringers" on YouTube, within the meaning of 17 U.S.C. § 512(i)(1)(A). Zhu Decl. ¶¶ 17, 19-24; Ex. 18 at 11-15.

5. YouTube has a designated agent for receiving notifications of claimed infringement, as required by 17 U.S.C. § 512(c)(2). Zhu Decl. ¶ 16.

6. YouTube publishes the information required for DMCA complaints related to its service at https://support.google.com/youtube/answer/6005900. Zhu Decl. ¶ 16.

7. It is YouTube's policy to respond expeditiously to notices of copyright infringement directed to YouTube. Zhu Decl. ¶¶ 17-20.

8. YouTube directs complainants to identify in sufficient detail their copyrighted work allegedly infringed on YouTube. Zhu Decl. ¶¶ 20-21.

9. YouTube directs complainants to send DMCA notices to the attention of YouTube's copyright team via YouTube's webform or through email, fax, or postal mail. Zhu Decl. ¶ 19.

10. If a DMCA notice does not contain the required information, YouTube notifies the complainant and asks for more information. Zhu Decl. ¶¶ 20-21.

11. Once a DMCA notice is determined to be substantially complete and valid, YouTube removes the allegedly infringing content at issue. Zhu Decl. ¶ 22.

12. If YouTube receives a counter notification from the uploader in response to a DMCA notice and notifies the complainant of such notice, the complainant is afforded ten business days to notify YouTube that it has taken legal action against the uploader of the allegedly infringing video, lest YouTube may reinstate the video in question on its service. Zhu Decl. ¶ 20.

13. YouTube does not interfere with any known "standard technical measures" within the meaning of 17 U.S.C. § 512(i)(B). Zhu Decl. ¶ 18.

14. Plaintiff never used any "technical measures" to identify or protect its copyrighted works, nor identified any standard technical measures it could or would have used to monitor for alleged infringement of those works. Ex. 1 at 140; *accord* Ex. 12 at 52:01-08.

15. The YouTube Terms of Service advise users that they are not permitted to display copyrighted material unless they have the legal right to do so, and that their accounts may be terminated for violating YouTube's policies. Zhu Decl. ¶ 24.

16. YouTube tracks how many DMCA notices are processed regarding a particular user's account, records strikes for videos removed pursuant to DMCA notices, and, after three strikes, terminates the account, removing all videos uploaded to the channel, along with any associated channels. Zhu Decl. ¶ 23; Ex. 18 at 11-15.

17. YouTube does not prevent copyright owners from collecting information needed to issue notifications of copyright infringement under the DMCA. Zhu Decl. ¶ 19.

18. YouTube automatically transcodes videos uploaded to the service by third parties so that they can be displayed on its service, without manually reviewing the user uploads. Zhu Decl. ¶¶ 11-14.

19. YouTube has built its own suite of copyright-protective tools, including Content ID, which offers copyright owners the ability to block, monetize, or track their videos as they elect. Zhu Decl. ¶¶ 26-32; Ex. 2 at 171:08-173:22.

20. All of the clips-in-suit were uploaded to YouTube by third-party YouTube users other than Defendants YouTube, LLC and Google LLC between 2006 and 2021. Godwin Decl. ¶¶ 2-3; Am. Compl. ¶ 70 & Ex. B.

21. All of the clips-in-suit were stored on YouTube's system after being uploaded by YouTube's users. Zhu Decl. ¶¶ 3, 11; Godwin Decl. ¶¶ 2-3; Am. Compl. ¶ 70 & Ex. B.

22. Plaintiff hired a law firm to monitor YouTube and to send DMCA takedown notices to YouTube identifying allegedly infringing videos. Ex. 15b at 232:24-233:25; Ex. 15a at 139:12-17; Ex. 12 at 15:15-23.

23. YouTube expeditiously removed videos from its service in response to Plaintiff's DMCA takedown requests. Ex. 11 at 2 (YouTube "removed the offending URLs" in response to Plaintiff's takedown requests); Ex. 12 at 74:06-14 ("[I]n response to a takedown notice, YouTube generally undertook to remove the purportedly infringing video within a matter of days after receiving the takedown notice."); *id.* at 78:06-16 (Plaintiff's agents had "no reason to believe" certain videos were not removed by YouTube); Ex. 15(b) at 298:21-301:03; Am. Compl. Ex. B.

24. The content that Plaintiff identified as infringing its copyrights on YouTube was sometimes successfully challenged by the YouTube user who uploaded that video. *E.g.*, Ex. 12 at 71:25-73:18; Ex. 16 at 28:11-30:14, 47:08-48:23.

25. In response to Plaintiff's DMCA takedown requests, all of the videos identified by URL in Plaintiff's Complaint Exhibit B were resolved by YouTube. Am Compl. Ex. B; Ex. 11 at 2; Ex. 12 at 74:06-14, 78:06-16; Ex. 15b at 298:21-301:03. Those resolutions include (1) YouTube's timely removal of the videos, (2) the uploader's removal of the videos, or (3) the uploader's issuance of a counter notice to Plaintiff's takedown request that permitted the videos to be reinstated on YouTube. *Id.*

26. When Plaintiff's videos were removed as a result of a DMCA takedown request, YouTube noted a strike against the account holder who had posted the material. Zhu Decl. ¶¶ 20, 23.

27. YouTube tracks how many DMCA notices are processed regarding a particular YouTube account, and terminates accounts where appropriate. Zhu Decl. ¶ 23; Godwin Decl. ¶ 4; *see, e.g.*, Ex. 12 at 58:03-59:03 (admitting "YouTube terminated repeat offenders 89 out of 90 times"); Am. Compl. Ex. B. YouTube terminated 1,240 accounts against whose videos Plaintiff submitted takedown notices for repeat infringement where the users accrued a sufficient number of strikes pursuant to YouTube's repeat infringer policy during the relevant period in this case. Godwin Decl. ¶ 4.

28. Approximately 90% of the videos identified by URL in Plaintiff's Complaint Exhibit B were, according to Plaintiff, removed from YouTube in less than one week following a valid DMCA takedown request. Am. Compl. Ex. B.

29. Plaintiff does not identify any URLs in Complaint Exhibit B that remained active on YouTube four weeks after the issuance of a DMCA takedown notice as to that URL, absent a counter notice from the uploading user. Am. Compl. Ex. B.

30. Plaintiff does not own all of the copyrighted works listed by title in Exhibits A or B to the Complaint. *Compare* Am. Compl. Ex. A, *with* Ex. 21; Ex. 7 at 7 (Requests 36-37, 39); Ex. 8 at 3 (same); Ex. 15c at 412:10-419:16. The works-in-suit are exhaustively defined as 575 titles. Ex. 21; Ex. 15b at 190:05-16, 207:04-10 (Plaintiff explaining it "understands that" "all of the works that Athos is alleging in this lawsuit that have been infringed" are listed in Exhibit 21); Ex. 22 (Plaintiff's correspondence with defense counsel providing the conclusive works-in-suit spreadsheet); *see* Willen Decl. ¶ 24.

31. There are at least 3,003 clips-in-suit for which Plaintiff sent takedown notices to YouTube before May 3, 2018. Willen Decl. ¶ 14.

32. There are at least 676 clips-in-suit that were publicly posted on YouTube before May 3, 2018 that Plaintiff identified to YouTube after May 3, 2018. Willen Decl. ¶ 14.

33. Plaintiff's subsidiaries, Cine Estelar and Cine Nostalgia, uploaded portions of the works-in-suit to YouTube. Ex. 15c at 443:19-446:17.

34. Plaintiff and its authorized agent used YouTube's search function to identify allegedly unauthorized videos on YouTube. Am. Compl. ¶¶ 9, 70 & Ex. B; Ex. 12 at 25:19-26:16, 52:1-8.

35. YouTube offered Plaintiff access to its copyright management tools, including Content ID and Content Verification. Ex. 14 at 51:20-54:04; Ex. 2 at 157:20-162:24, 147:19-148:10; Ex. 7 at 4 (Request 14); Ex. 8 at 2 (same).

36. In 2015, YouTube twice sent Plaintiff a standard form contract to use Content ID ("CHSA"). Ex. 14 at 53:15-25; Ex. 7 at 4 (Request 18); Ex. 8 at 2 (same); Exs. 3-4.

37. Plaintiff admitted that the "terms on which [YouTube] offered Content ID [were] reflected in the Content Hosting Services Agreement that was provided to [Plaintiff]." Ex. 14 at 56:24-57:06.

38. Under the terms of the CHSA, Plaintiff could have used Content ID solely to block videos matching its works and without any requirement to display or monetize that content. Ex. 2 at 206:02-24; Zhu Decl. ¶¶ 29-32; Exs. 3b, 4b; Ex. 6 (reiterating Defendants' offer of Content ID "without cost"); Ex. 20 at 28 ("YouTube does not force their [Content ID] Partners to monetize any specific videos."); Ex. 19 ¶¶ 49-50.

39. YouTube told Mr. Vasallo that Content ID was available for his use at "no cost." Ex. 6; *see* Ex. 2 at 206:02-24.

40. Plaintiff refused to use Content ID to manage its content on YouTube, and admitted that no further discussions about Content ID occurred after 2016. Ex. 2 at 148:03-10; Ex. 14 at 72:04-74:12; Ex. 7 at 4-6 (Requests 17, 23-24, 28, 34); Ex. 8 at 2 (same); Exs. 5a-5c.

41. Plaintiff refused to use Content Verification to manage its content on YouTube. Ex. 7 at 4 (Request 13); Ex. 8 at 2 (same).

42. Plaintiff did not use YouTube's webform to submit its DMCA takedown requests during the relevant period. Ex. 12 at 66:07-19; Ex. 15b at 293:19-294:21.

43. Plaintiff refused to use any of YouTube's existing copyright management tools during the relevant period other than sending DMCA takedown notices to YouTube via email. Ex. 12 at 52:1-8; Ex. 2 at 206:02-24; Ex. 14 at 72:04-74:12; Ex. 7 at 4-6 (Requests 14, 17, 23-24, 28, 34); Ex. 8 at 2 (same); *see* Exs. 5a-5c.

44. There is no evidence that applying Content ID to search for videos that were near-matches of those identified in Plaintiff's DMCA notices would have identified and blocked any other clip-in-suit that Plaintiff has put at issue in this case.

45. Other than the individual clips-in-suit that were the subject of Plaintiff's DMCA takedown notices, there is no evidence that YouTube had knowledge of any specific alleged infringement of Plaintiff's works-in-suit on YouTube.

46. YouTube does not promote or encourage copyright infringement on its platform. Zhu Decl. ¶ 3.

47. YouTube does not influence what users upload in ways that contribute to infringement. Zhu Decl. ¶ 3.

48. YouTube does not charge YouTube users a fee to host or view content on their YouTube channels. Zhu Decl. ¶¶ 2-4.

49. Not all videos posted on YouTube are eligible for monetization or actually monetized. Rettke Decl. ¶ 7.

50. For the clips-in-suit that Plaintiff identified since January 2018, there is no evidence that [Redacted]. Rettke Decl. ¶¶ 6-7.

51. Plaintiff Athos Overseas Ltd. does not own the copyright for the following works-in-suit: *El Dandy y Sus Mujeres*, *Las Calenturas De Juan Camaney II*, and *El Asesino Del Metro*. Ex. 15c at 412:10-419:16.

52. There is no evidence that YouTube operated its service with the object of promoting its use to infringe Plaintiff's copyrights.

53. There are at least 1,155 clips identified in Exhibit B to the Amended Complaint that do not relate to any of the works-in-suit. Willen Decl. ¶¶ 22-24; Ex. 23.

Respectfully submitted,

Dated: November 30, 2022

STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
150 West Flagler Street, Suite 2200
Miami, Florida 33130
Telephone: (305) 789-3229
Facsimile: (305) 789-2664

By: */s/ Jay B. Shapiro*
   Jay B. Shapiro, Esq.
   Florida Bar No. 776361
   jshapiro@stearnsweaver.com
   David T. Coulter, Esq.

      Florida Bar No. 119874
      dcoulter@stearnsweaver.com

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
    Brian M. Willen, Esq. (*pro hac vice*)
    bwillen@wsgr.com
    Lucy Yen, Esq. (*pro hac vice*)
    lyen@wsgr.com
    Dylan Byrd, Esq. (*pro hac vice*)
    dbyrd@wsgr.com

***Counsel for Defendants***

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 30, 2022, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

*/s/Jay B. Shapiro*
JAY B. SHAPIRO, ESQ.

## SERVICE LIST

Case No. 1:21-cv-21698-DPG
United States District Court, Southern District of Florida

Rey Dorta, Esq.
Florida Bar No. 0084920
Omar Ortega, Esq.
Florida Bar No. 0095117
Rosdaisy Rodriguez, Esq.
Florida Bar No. 112710
Yvette C. Buergo, Esq.
Florida Bar No. 1003212
**DORTA & ORTEGA, P.A**
3860 SW 8th Street, PH
Coral Gables, Florida 33134
Telephone:(305) 461-5454
Facsimile: (305) 461-5226
oortega@dortaandortega.com
rdorta@dortaandortega.com
rrodriguez@dortaandortega.com
ybuergo@dortaandortega.com
dcruz@dortaandortega.com

*Counsel for Plaintiff*