UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:21-cv-21698-DPG

ATHOS OVERSEAS LIMITED CORP.,

        Plaintiff,

   v.

YOUTUBE, INC., YOUTUBE, LLC, and
GOOGLE, LLC,

        Defendants.

**DEFENDANTS YOUTUBE, LLC, AND GOOGLE LLC'S MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE DEFENDANTS'
TENTH AFFIRMATIVE DEFENSE AND, IN THE ALTERNATIVE, CROSS-MOTION
FOR LEAVE TO ASSERT AFFIRMATIVE DEFENSE OF UNCLEAN HANDS**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.......................................................... 2

LEGAL STANDARD........................................................................................................... 7

ARGUMENT ....................................................................................................................... 8

I.     DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES WAS TIMELY AND APPROPRIATE........................................................................................................ 8

II.    DEFENDANTS' UNCLEAN HANDS DEFENSE IS WELL RECOGNIZED IN FEDERAL INTELLECTUAL PROPERTY CASES ....................................................... 11

III.   ALTERNATIVELY, DEFENDANTS CROSS-MOVE FOR LEAVE TO ASSERT THEIR UNCLEAN HANDS DEFENSE ....................................................... 13

CONCLUSION..................................................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*1872 Holdings Int'l, LLC v. Zamora Co. Global, S.L.U.*,
2022 WL 1641851 (S.D. Fla. May 24, 2022) ...........................................................................8

*Camden Reserve, LLC v. Flagstar Bank, FSB*,
2011 WL 13176746 (N.D. Ga. Jan. 18, 2011) .........................................................................9

*Dawes-Ordonez v. Forman*,
2009 WL 3273898 (S.D. Fla. Oct. 9, 2009) ............................................................................11

*Denarii Sys., LLC v. Arab*,
2013 WL 500826 (S.D. Fla. Feb. 11, 2013) ...........................................................................13

*Dionisio v. Ultimate Images & Designs, Inc.*,
391 F. Supp. 3d 1187 (S.D. Fla. 2019) ...................................................................................13

*Discos Fuentes Edimusica, S.A. v. Fuentes*,
2009 WL 10668752 (S.D. Fla. Sept. 18, 2009) ......................................................................11

*ECB USA, Inc. v. Chubb Insurance Co.*,
2021 WL 4973579 (S.D. Fla. June 29, 2021) .........................................................................10

*Gilead Sciences, Inc. v. Merck & Co.*,
888 F.3d 1231 (Fed. Cir. 2018) .........................................................................................11, 14

*Harapeti v. CBS Television Stations, Inc.*,
2021 WL 5812063 (S.D. Fla. Nov. 9, 2021) ........................................................................7, 9

*Hargett v. Valley Fed. Sav. Bank*,
60 F.3d 754 (11th Cir. 1995) ..................................................................................................13

*Home Design Servs., Inc. v. Hibiscus Homes of Fla., Inc.*,
2005 WL 3445522 (M.D. Fla. Dec. 14, 2005).......................................................................11

*Hydentra HLP Int'l Ltd. v. Constantin Luchian*,
2015 WL 12658275 (S.D. Fla. Dec. 4, 2015) ........................................................................11

*Island Wifi Ltd., LLC v. AT&T Mobility Nat'l Accounts LLC*,
2021 WL 8362056 (S.D. Fla. Oct. 29, 2021).........................................................................8

*Quality Roof Services, Inc. v. Intervest National Bank*,
21 So.3d 883 (2009)............................................................................................................2, 12

*Royal Palm Properties, LLC v. Premier Est. Properties, Inc.*,
   2010 WL 3941745 (S.D. Fla. Oct. 6, 2010).................................................................12

*Syngenta Crop Prot., Inc. v. U.S.E.P.A.*,
   222 F.R.D. 271 (M.D.N.C. 2004) ........................................................................8, 9

*TRG Oasis (Tower One), Ltd. v. Crum & Forster Spec. Ins. Co.*,
   2022 WL 4631917 (S.D. Fla. Sept. 14, 2022) .........................................................8

*Varnes v. Local 91, Glass Bottle Blowers Ass'n of United States & Canada*,
   674 F.2d 1365 (11th Cir. 1982) ..............................................................................9

*VPNetworks, LLC v. Collective 7, Inc.*,
   2020 WL 13227750 (M.D. Fla. Feb. 20, 2020) ....................................................7, 9

*Vrtoysone, LLC v. Disney Interactive Studios, Inc.*,
   2022 WL 1601385 (C.D. Cal. Feb. 23, 2022)....................................................10, 14

*Wyne v. Carnival Corp.*,
   2022 WL 6127876 (S.D. Fla. Oct. 7, 2022).............................................................8

## RULES

Fed. R. Civ. P. 15(a) ...........................................................................................7, 8, 13

Defendants YouTube, LLC and Google LLC ("Defendants") submit this memorandum in opposition to Plaintiff's Motion to Strike Defendants YouTube, LLC, and Google LLC's Tenth Affirmative Defense Asserted in Defendants' Answer to the Amended Complaint and Affirmative Defenses (Dkt. No. 111, "Motion to Strike" or "Mtn."). Alternatively, Defendants cross-move for leave to assert an affirmative defense of unclean hands.

## INTRODUCTION

In response to Plaintiff's Amended Complaint filed October 17, 2022, Defendants timely filed their Answer and Affirmative Defenses on October 31, 2022. In so doing, Defendants dropped certain affirmative defenses, while adding a defense of unclean hands. That defense arises, at least in part, directly out of Plaintiff's amendment, in which it now asserts claims on behalf of a different corporate entity than the original named plaintiff, and whose identity, as well as the identity of the new entity's officers and directors, had been improperly withheld from Defendants in discovery. The unclean hands defense is also based on other discovery misconduct by Plaintiff that occurred or was revealed at the end of fact discovery, within weeks of the filing of the new affirmative defense.

Plaintiff's request for the disfavored remedy of striking the affirmative defense is meritless. Defendants' answer was timely filed within the 14-day response period provided by Federal Rule of Civil Procedure 15(a). And leave of court is not required for a party to file a responsive pleading to an amended complaint—particularly not where, as here, the new content in the responsive pleading relates to the new content of the amendment itself. In that regard, Plaintiff's procedural complaints ring especially hollow. It was Plaintiff that waited until the last day of fact discovery to even seek leave to amend to substitute a new corporate plaintiff that had been known to Plaintiff since the outset of this litigation. And it was Plaintiff that deliberately withheld from Defendants the existence of that new corporate entity and the identity of its officers and directors until three weeks before the close of discovery—despite months-old discovery requests from Defendants and two court orders compelling the disclosure of that information. Nor is there any viable claim of prejudice: Plaintiff does not even try to explain why further discovery would be needed in

connection with Defendants' unclean hands defense. Nor could it: all the evidence supporting that defense is already in the record—in the form of Plaintiff's own discovery misconduct.

And an unclean hands defense is far from futile: federal courts have routinely recognized the validity of such a defense in copyright and other federal intellectual property actions based on a plaintiff's litigation misconduct. In arguing otherwise, Plaintiff relies exclusively—and inexplicably—on a single Florida state court case, which Plaintiff completely misreads. That case holds that an unclean hands defense can be *extended* to misconduct directed at a third party—not that it is *limited* to that situation. *Quality Roof Services, Inc. v. Intervest National Bank*, 21 So.3d 883, 885 (2009). In any event, Florida law does not bear on the validity of an affirmative defense in a case that asserts only *federal* copyright infringement claims.[1] In short, Plaintiff has no valid basis to object to a responsive pleading occasioned by—and responsive to—its own belated amendment.

While Plaintiff's Motion to Strike should be denied, if the Court thinks Defendants should have sought leave to assert their unclean hands defense, Defendants cross-move, in the alternative, for leave to assert their unclean hands defense. If the Court applies the same exercise of discretion it applied to Plaintiff's belated motion to amend (and Plaintiff's equally tardy recent motion for a jury trial), such a request should readily be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

***Plaintiff's Obfuscation and Misconduct Related To Its New Corporate Entity.*** This copyright infringement action was filed on May 3, 2021, in the name of a British Virgin Islands entity called Athos Overseas, Ltd. *See* Dkt. No. 1. That entity claimed to be the owner of the films whose copyrights are at issue here. *Id.* at ¶¶ 1-3. Among other things, the initial complaint alleged that this British Virgin Islands entity was "a wholly-owned company of Carlos Vasallo . . . who, through several holding companies, owns the world's largest collection of Mexican and Latin

---

[1] All of Plaintiff's non-copyright claims (a Sherman Act Section 1 claim and a claim under Florida's Deceptive and Unfair Trade Practices Act) were dismissed by the Court on March 29, 2022 [Dkt. No. 44], and were thereafter abandoned by Plaintiff.

American movies." *Id.* at ¶ 1. Given that copyright ownership is an essential prerequisite to asserting a copyright infringement claim, early on in the case Defendants sought discovery about the entity's corporate structure, legal status, officers and directors, relationship to affiliated entities, and ownership of the works-in-suit. *See* Dkt. No. 94 at 4.

For nearly nine months, Plaintiff obstructed that discovery. Plaintiff first purported to object to the discovery, only then to give a partial answer that "Carlos Vasallo is the sole owner and is solely responsible for the operations of Athos Overseas Ltd." *Id.* After two orders compelling complete answers to Defendants' discovery, Plaintiff finally provided—on August 22, 2022, only three weeks before the close of fact discovery—documents that revealed for the first time that the named plaintiff, from the British Virgin Islands, had been dissolved ***before this action was filed*** and allegedly reconstituted in Panama. *Id.* at 7. The documents also disclosed, for the first time, that the Panamanian entity had its own president, treasurer, secretary, and directors apart from Mr. Vasallo. *Id.*

In deposition, moreover, Plaintiff simply refused to answer legitimate questions about its corporate structure, including the dissolution of the British Virgin Islands entity and alleged reconstitution through a Panamanian entity. For example:

> Q:   Mr. Vasallo, are you prepared to discuss the topics listed in Topic Number 1 [Athos Overseas' corporate organization, capital structure, and compliance with corporate formalities]?
>
> A:   No. I don't discuss – I am not here to discuss because it sounds like a fight. What I am prepared for is to answer questions for an owner and CEO, no questions for an attorney or legal matters, that's for them. I mean, there are corporate attorneys, which are the ones who handled these things. You are asking for corporate things, so I can't understand that. That's what attorneys are for.

Dkt. 114-1 Exhibit 1 ("Plaintiff Tr.") at 383:10-20. And when pressed more specifically about the discontinued plaintiff that brought this suit:

> Q:   Has Athos Overseas Limited been discontinued?
>
> A:   Everything has been filed with the court. Go to court and ask, or ask my attorneys, or file it in writing. Legal stuff and everything legal, ask the attorneys.

. . .

Q:    Are there any documents showing assignment of any of the Works in Suit
      to Athos Panama?

. . .

A:    Take that to the attorneys.

Q:    Are you refusing to answer the question?

. . .

A:    No, I'm not refusing to answer the question. You should just be ashamed of
      asking that because that is a question, if you want to ask it, you should have
      it in writing to Mr. Ortega and Mr. Dorta [Plaintiff's litigation counsel], not
      me. And any questions you have, take it to the judge.

. . .

Q:    What is your basis for asserting that works assigned to Athos BVI are owned
      by Athos Panama?

. . .

A:    No, no, no, take that to the attorneys. There is no Athos Panama or Athos
      Overseas. It's only one Athos. And if you don't understand that, then go
      back to law school.

*Id.* at 379:19-24, 423:12-24, 424:16-23.[2]

---

[2] Before his October 26, 2022 deposition, Mr. Vasallo testified twice as the corporate
representative of Athos Overseas, Ltd. (the original named Plaintiff in this case). Despite being
the sole designee under Rule 30(b)(6), Mr. Vasallo's testimony revealed Plaintiff's failure to take
seriously its obligations under that Rule. According to Mr. Vasallo, "[o]ne thing is being
designated for the [deposition] topics and another one is that I have to know about the topics. It's
different things. . . . I don't need to prepare." Plaintiff Tr. at 245:23-246:5. More broadly,
throughout these depositions, Mr. Vasallo repeatedly (at times on the improper instruction of
counsel, without any claim of privilege) refused to answer straightforward questions about facts
related to Plaintiff's claims. Defendants invite the Court to review the transcripts of Plaintiff's
deposition, attached in full to Plaintiff's Separate Statement in Support of its Partial Summary
Judgment (Dkt. No. 114) at Exhibit 1; *see, e.g.*, Plaintiff Tr. at 405:13-24 ("Q: So you're refusing
to answer the question? . . . A: Well, I guess I do. Honestly, I guess I do."). For example, rather
than answer questions, Mr. Vasallo (sitting as Plaintiff's corporate representative) repeated over
thirty times a variation of: "All I have to say is reflected in the lawsuit, the papers of the lawsuit,
and the contracts of the lawsuit." *E.g.*, *id.* at 216:3-5. Plaintiff also refused to provide corporate
testimony on the registration of its purported copyrights (*id.* at 193:17-194:20), its officers and
corporate structure (*id.* at 43:10-44:17, 50:15-52:12, 57:13-59:22), whether its works-in-suit were
licensed (*id.* at 215:13-223:7), or how Plaintiff monitored for potential infringement of its works

---

***Plaintiff's Misrepresentations and Misconduct Relating To Discovery Responses on Licensing, Authorization, and Ownership.*** Plaintiff's concealment of facts relating to the new Panamanian entity was not the only instance where Plaintiff provided false, misleading or omissive answers in discovery about material issues. Plaintiff misrepresented its use of YouTube's service, access to which is dependent upon agreement to certain terms of service. Those terms of service have far-reaching implications, including regarding licensing of content to YouTube, limitations of liability, limitations of action, choice of law, and forum selection. *See* Ex. 1 to Zhu Decl. in Support of Defendants' Motion for Summary Judgment (Dkt. No. 116-2).

Plaintiff was asked, by interrogatory, to "Identify any YouTube accounts created or used by You [*i.e.*, Plaintiff or its subsidiaries] and individuals acting on Your behalf, including but not limited to Carlos Vasallo." Ex. 1, Defendants' Third Set of Interrogatories, No. 24.[3] This was Plaintiff's response, sworn by Mr. Vasallo:

> To the extent this interrogatory relates to the Works in Suit, none. Athos has not created or used any YouTube accounts. There are no YouTube Accounts created or used by Plaintiff. Plaintiff, as well as Carlos Vasallo, does not have a YouTube account.

*Id.*, Plaintiff's Amended Response to Defendants' Third Set of Interrogatories, No. 24. In an RFA response, Plaintiff similarly denied that "[Plaintiff] or individuals acting on [Plaintiff, its affiliates or agent's] behalf have created a YouTube account." Exs. 2-3, Request and Response to RFA 9; *see also* Plaintiff Tr. at 229:14-230:01 (testimony that Plaintiff's subsidiaries did not "have the right to promote portions of the movies" on the internet).

But Mr. Vasallo's testimony on October 26, 2022 revealed those answers to be false—in at least two different respects. First, when asked, "Do you have an account with YouTube," Mr. Vasallo testified that not only did he have "an account for music," he also created one "to keep an eye on you guys" regarding the works-in-suit. Ex. 4 ("Vasallo Tr.") at 34:22-25. Mr. Vasallo

---

(*id.* at 243:6-246:20)—despite the fact that Mr. Vasallo was the only individual designated to speak on behalf of the company on those topics.

[3] All references to ("Ex.__") are exhibits to the attached Declaration of Dylan Byrd.

---

testified that he uses that service "[e]very single day." *Id.* at 34:5-13. Second, Mr. Vasallo for the first time admitted (shortly after he had again angrily denied)[4] that not only do Plaintiff's subsidiaries use YouTube, but ***at least two of those subsidiaries used their accounts to upload promotional clips of the copyrighted movies at issue in this case to YouTube***. Plaintiff Tr. at 444:13-446:17 ("Q: Is it the same with Cine Nostalgia that someone may have uploaded portions of Works in Suit on YouTube for Cine Nostalgia? . . . A: No, no portions, but maybe promos . . . of course, before notifying you guys of the movies, there may be about 2,000 chunks of movies[] accepted by you guys."); *accord* Exs. 5-6 (identifying promos of works-in-suit uploaded to YouTube by Plaintiff's subsidiaries, Cine Estelar and Cine Nostalgia). Mr. Vasallo's testimony on these points is flatly contrary to Plaintiff's prior sworn discovery responses. And these are not minor points: the fact that Plaintiff's subsidiaries deliberately uploaded authorized promotional clips of the works-in-suit to YouTube directly undercuts Plaintiff's core theory that none of Plaintiff's content is authorized to be on YouTube and that YouTube should simply remove all instances of such material as infringing without any specific request from Plaintiff.[5]

***Plaintiff's Belated Amendment Substituting A New Corporate Entity As Named Plaintiff.*** After having stonewalled, obstructed, and misled, on the day discovery formally closed, Plaintiff filed a motion to amend the operative complaint to substitute in the Panamanian entity (Athos Overseas Limited Corp.) for the British Virgin Islands entity (Athos Overseas Ltd.). Dkt. No. 90. Defendants opposed the motion, not just because it was untimely and unsupported by good cause, but because a substitution after the close of discovery would be prejudicial to Defendants. As Defendants explained: "Plaintiff's delay has deprived Defendants of the ability to take

---

[4] *See* Plaintiff Tr. at 440:25-441:6 ("none of my companies have ever, ever uploaded one single of my movies to YouTube. Never. And it's shameful that you ask me that").

[5] Beyond that, the obfuscating and misleading information Plaintiff has provided about the scope of licenses it has given has made it impossible to know what rights were licensed to whom (and thus whether licensed parties uploaded any of the allegedly infringing clips to YouTube, as well as other online platforms). *See, e.g.*, Plaintiff Tr. at 391:3-14 (when asked about the scope of Athos's subsidiaries' licenses to the works-in-suit, Plaintiff responded "I'm not answering. I'm not answering that. I'm here to testify on behalf of Athos.").

---

discovery into the basic question of whether the entity that Plaintiff now seeks to substitute in as a Plaintiff actually owns the copyrights at issue." Dkt. No. 94 at 14. Defendants also explained that Plaintiff's belated disclosure of the existence of an entirely new set of officers and directors, despite Defendants' straightforward discovery requests and two orders from Magistrate Judge Torres requiring this information months earlier, precluded Defendant from deposing any of these newly disclosed officers and directors on any of the critical issues in this lawsuit. *See* Dkt. No. 96.

The Court gave Plaintiff leave to amend, and Plaintiff filed its Amended Complaint on October 17, 2022. Dkt. No. 100. In response, Defendants filed their Answer and Affirmative Defenses on October 31, 2021. Dkt. No. 106. In that responsive pleading, Defendants dropped an affirmative defense[6] and added a single additional affirmative defense of unclean hands. That additional defense, which is the only identifiable part of that pleading about which Plaintiff now complains, states:

> Plaintiff's claims are barred in whole or in part by unclean hands. For example, Plaintiff has misrepresented its use of Defendants' services, including relevant negotiations and agreements between the parties and their agents. Plaintiff has also provided contradictory information on the scope of the licenses it has issued for the Works in Suit, making it impossible for Defendants to identify how, or if, the Works in Suit were monetized or what rights were licensed to whom. Moreover, Plaintiff has engaged in obstreperous and obstructive conduct during discovery including refusing to answer straightforward questions about topics relevant to Plaintiff's claims and Defendants' defenses.

*Id.* at 32. Plaintiff has moved to strike that defense.

## LEGAL STANDARD

Federal Rule of Civil Procedure 15 sets a default timeframe for filing a responsive pleading to an amended complaint of "14 days after services of the amended pleading." Fed. R. Civ. P. 15(a). A party does not need to ask for leave of court to answer an amended complaint. *Id.*; *see Harapeti v. CBS Television Stations, Inc.*, 2021 WL 5812063, at *2 (S.D. Fla. Nov. 9, 2021); *VPNetworks, LLC v. Collective 7, Inc.*, 2020 WL 13227750, at *3 (M.D. Fla. Feb. 20, 2020) (explaining that defendants did not need motion for leave to file an amended answer where court

---

[6] Defendants dropped their copyright misuse defense. *Compare* Dkt. No. 47, *with* Dkt. No. 106.

had granted plaintiff's motion for leave to file an amended complaint) (citing cases); *Syngenta Crop Prot., Inc. v. U.S.E.P.A.*, 222 F.R.D. 271, 273 n.2 (M.D.N.C. 2004) (plaintiff's "filing of an amended complaint automatically gives [defendant] the right to file a new answer").

The relief sought by Plaintiff's Motion is considered a "drastic remedy" that is greatly "disfavored" in the Eleventh Circuit. *Wyne v. Carnival Corp.*, 2022 WL 6127876, at *1 (S.D. Fla. Oct. 7, 2022); *TRG Oasis (Tower One), Ltd. v. Crum & Forster Spec. Ins. Co.*, 2022 WL 4631917, at *1 (S.D. Fla. Sept. 14, 2022) (same); *1872 Holdings Int'l, LLC v. Zamora Co. Global, S.L.U.*, 2022 WL 1641851, at *2 (S.D. Fla. May 24, 2022) (denying motion to strike unclean hands defense in garden variety breach of contract suit). A motion to strike should be granted only when the pleading to be stricken has "no possible relation to the controversy." *Wyne*, 2022 WL 6127876, at *1; *TRG Oasis*, 2022 WL 4631917, at *1; *1872 Holdings*, 2022 WL 1641851, at *1. Thus, to strike a defense as "insufficient as a matter of law," it must be "on the face of the pleadings, . . . patently frivolous, or . . . clearly invalid as a matter of law." *1872 Holdings*, 2022 WL 1641851, at *1; *Island Wifi Ltd., LLC v. AT&T Mobility Nat'l Accounts LLC*, 2021 WL 8362056, at *1 (S.D. Fla. Oct. 29, 2021) ("Striking an affirmative defense is a drastic remedy that is disfavored and that will be granted only if it is clear that the defense must fail.").

## ARGUMENT

### I. DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES WAS TIMELY AND APPROPRIATE

Citing no authority, Plaintiff claims that Defendants' answer was "untimely." Mtn. at 4. This is clearly wrong. Rule 15 sets a default timeframe for filing a responsive pleading to an amended complaint of "14 days after service of the amended pleading." Fed. R. Civ. P. 15(a). Here, no court order was entered altering that timeframe. Plaintiff filed the Amended Complaint on October 17, 2022, and Defendants timely answered on October 31, 2022. The Answer and Affirmative Defenses were timely.

Plaintiff next complains that Defendants filed their answer "without seeking leave from this Court prior to amending." Mtn. at 4. But a party does not need to ask for leave of court to

answer an amended complaint. *See* Fed. R. Civ. P. 15(a); *accord VPNetworks*, 2020 WL 13227750, at *3 ("Plaintiff will be granted leave to file an amended complaint. Therefore, NordVPN's motion for leave to amend its answer is DENIED as moot, as NordVPN will be permitted to assert its counterclaim in its answer to Plaintiff's amended complaint."); *Syngenta*, 222 F.R.D. at 273 n.2 ("EPA's Motion for Leave to Amend its Answer is moot because Syngenta's filing of an amended complaint automatically gives EPA the right to file a new answer.").

Plaintiff further suggests even if Defendants had sought leave to answer the amended complaint, "the only changes that should have been made to their Answer would have had to have been related to the corporate name change made in Plaintiff's Amended Complaint and nothing further." Mtn. at 5. Plaintiff again fails to cite authority to support this proposition, which is doubly misguided. *First*, there is no rule that categorically bars defendants, in an answer to an amended complaint, from asserting affirmative defenses that were not previously available. To the contrary, when a party files an amended complaint "the responding party is entitled to take a position on the new pleading, including setting forth an affirmative defense not included in its prior response." *Camden Reserve, LLC v. Flagstar Bank, FSB*, 2011 WL 13176746, at *2 (N.D. Ga. Jan. 18, 2011) (citing *Varnes v. Local 91, Glass Bottle Blowers Ass'n of United States & Canada*, 674 F.2d 1365, 1369 (11th Cir. 1982)); *cf. Harapeti*, 2021 WL 5812063, at *2 (where Plaintiff filed an amended complaint close to the end of discovery and Defendant answered the complaint, asserting new affirmative defenses based on facts gleaned during discovery, the defenses remained in the case and no further discovery on same was permitted because Plaintiff had access to all of the relevant facts). Here, as Plaintiff acknowledges, it would have been "impossible" for Defendants to assert their unclean hand defense in their answer to the initial complaint. Mtn. at 6. This defense only materialized as discovery progressed, culminating with Mr. Vassallo's deposition performance shortly before Defendant's Answer to the Amended Complaint was filed.

*Second*, and even more importantly, Plaintiff incorrectly presumes that Defendants' unclean hands defense is unrelated to the changes Plaintiff made to the case through the Amended Complaint. But that is not so. As discussed above, Plaintiff's Amended Complaint introduced a

new corporate entity to the case and, at minimum, new issues about the named Plaintiff's acquisition, ownership, and licensing of the copyrights to the works-in-suit. Much of Plaintiff's discovery misconduct was directly related to the issues that brought about Plaintiff's belated request for amendment, misconduct that worked to prevent Defendants from taking meaningful discovery about that issue. It was perfectly appropriate for Defendants to interpose an affirmative defense predicated, in part, on that very misconduct. *See, e.g.*, *ECB USA, Inc. v. Chubb Insurance Co.*, 2021 WL 4973579, at *4 (S.D. Fla. June 29, 2021) (where new affirmative defense of unclean hands was interposed in response to newly asserted counterclaims, new affirmative defenses were permitted because they "ha[d] a possible relationship to the facts of this case").

Plaintiff's final argument is that "[Plaintiff] has no means of using discovery to obtain the factual basis of the defense." Mtn. at 6. This claim of prejudice is conspicuously empty. Defendants' unclean hands defense rests on Plaintiff's own misconduct in the litigation of this case, so there is no further discovery that would shed light on that defense. The relevant facts are already in the record and known to both parties. *See, e.g.*, *Vrtoysone, LLC v. Disney Interactive Studios, Inc.*, 2022 WL 1601385, at *3 (C.D. Cal. Feb. 23, 2022) (permitting unclean hands defense to be pleaded post-discovery because "no additional discovery should be necessary on Plaintiffs' part because all of the document[s] and information related to Plaintiffs' own inequitable conduct and unclean hands are and have been exclusively within Plaintiffs' possession, custody, or control"). Beyond that, the "prejudice" that Plaintiff now claims is the result of circumstances it created. Plaintiff did not file the Amended Complaint until after discovery closed—and it waited until the very last day of discovery to even seek leave to amend, even though the bases for the proposed amendment should have been known to Plaintiff since before this case was filed. Having done so, Plaintiff surely would have known that Defendants' answer to the Amended Complaint would also come after the close of discovery. Plaintiff nevertheless chose to plod ahead with that course; having made that choice, Plaintiff should not now be heard to complain of the situation it created through its own intentional delay.

## II.   DEFENDANTS' UNCLEAN HANDS DEFENSE IS WELL RECOGNIZED IN FEDERAL INTELLECTUAL PROPERTY CASES

Plaintiff does not address the controlling standard for striking affirmative defenses. Nor does it cite a single federal copyright or other intellectual property case, or even a federal case at all, on the unclean hands defense it asks the Court to strike as legally insufficient. Instead, in support of its argument that amendment would be futile, the only case Plaintiff cites is *Quality Roof Services*, a Florida appellate court decision, applying only Florida law, which Plaintiff cites for the proposition that the "defense of 'unclean hands' may be asserted by a defendant who claims that the plaintiff acted **towards a third party** with unclean hands with respect to the matter in litigation." Mtn. at 5 (emphasis added).

Because it is a Florida case applying only Florida law, by definition the *Quality Roof Services* case does not apply to this federal copyright lawsuit. Federal courts have routinely recognized the viability of an unclean hands defense where, as here, a plaintiff has committed discovery or other litigation-related misconduct that prejudices its adversary. *See, e.g.*, *Gilead Sciences, Inc. v. Merck & Co.*, 888 F.3d 1231, 1244-46 (Fed. Cir. 2018) (vacating $200 million damage award in a federal patent infringement suit based on the plaintiff's unclean hands, based on, *inter alia*, its "litigation misconduct" which included the plaintiff's corporate representative giving "false" and "evasive" answers to questions in his deposition); *Home Design Servs., Inc. v. Hibiscus Homes of Fla., Inc.*, 2005 WL 3445522, at *9 (M.D. Fla. Dec. 14, 2005) (denying summary judgment on unclean hands defense in copyright infringement case where plaintiff failed to disclose facts relating to legal or beneficial ownership of copyrights and whether those rights were assigned to third parties); *Hydentra HLP Int'l Ltd. v. Constantin Luchian*, 2015 WL 12658275, at *2 (S.D. Fla. Dec. 4, 2015) (denying motion to strike unclean hands defense in copyright case); *Dawes-Ordonez v. Forman*, 2009 WL 3273898, at *2 (S.D. Fla. Oct. 9, 2009) (same); *Discos Fuentes Edimusica, S.A. v. Fuentes*, 2009 WL 10668752, at *6-7 (S.D. Fla. Sept. 18, 2009) (same).

But even if *Quality Roof Services* applied, the case plainly does not stand for the proposition that an unclean hands defense is limited to situations where a plaintiff acted with

unclean hands towards a third party. In fact, it stands for precisely the opposite proposition. What the court actually held was:

> Although the unclean hands defense may be asserted in foreclosure cases when the parties are in privity, privity is not an essential element of the equitable defense. Unclean hands may be asserted by a defendant who claims that the plaintiff acted toward a third party with unclean hands with respect to the matter in litigation.

21 So.3d at 885 (internal citations omitted). Accordingly, the appellate court reversed the trial court's decision not to allow the defendant to assert its unclean hands defense. *Id. Quality Roof Services* simply does not say that the unclean hands defense cannot be asserted by the party against whom the litigation misconduct was directed. Of course it can. *See, e.g.*, *Royal Palm Properties, LLC v. Premier Est. Properties, Inc.*, 2010 WL 3941745, at *2 (S.D. Fla. Oct. 6, 2010) (denying motion to strike unclean hands defense based on plaintiff's harmful actions toward defendant).

Plaintiff's other arguments against the defense on the merits fare no better. Plaintiff complains that Defendants asserted the unclean hands defense "without establishing any evidence to the contrary." Mtn. at 5. It is not clear what this means, but insofar as Plaintiff is suggesting that Defendants were somehow required to put forward evidence that Plaintiff did ***not*** act improperly, that is not the role of an answer nor Defendants' responsibility in an adversarial legal system. Plaintiff also says that "Defendants simply just don't like the response they have received from Plaintiff." *Id.* Not quite. Where Plaintiff actually gave answers rather than refusing them, what Defendants "don't like" is having received false or misleading discovery responses and being forced to sift through Plaintiff's obfuscations to discover what really happened. *See supra* at 2-6.[7]

---

[7] Plaintiff also posits that some depositions were "incredibly drawn out," but that could have largely been avoided by straightforward responses without instructions not to answer. Mtn. at 6; *supra* n.2. Indeed, Mr. Vasallo refused to get off of his cell phone multiple times on the record, and unilaterally suspended the deposition for phone calls. *E.g.*, Vasallo Tr. at 8:12-9:6, 47:16-49:7, 70:13-23, 105:18-106:21. Even Plaintiff's counsel struggled with Mr. Vasallo's conduct at times, instructing him to answer questions and arguing with his client across two transcript pages to "[l]et her finish her question. . . . Mr. Vasallo, let her finish her question. . . . Just let her finish the question." Plaintiff Tr. at 422:4-423:15. Moreover, the belated substitution of a different Plaintiff in this case, incorporated in a different country, with a different set of officers and directors necessitated additional lines of questions that Plaintiff still refused to answer. *E.g.*, *id.* at 421:21-431:23. The depositions were further "drawn out" due to Plaintiff's counsel's insistence that Mr. Vasallo's depositions be conducted through a translator even though Mr. Vasallo has testified in

---

Lastly, Plaintiff suggests that evidence about "contradictory information" given by Plaintiff "should be saved for trial where a trier of fact is able to determine the credibility of a witness and weigh the evidence provided to them." Mtn. at 5-6. Exactly—which is why Defendants have asserted this defense, and why Plaintiff's motion to strike it is improper.

## III. ALTERNATIVELY, DEFENDANTS CROSS-MOVE FOR LEAVE TO ASSERT THEIR UNCLEAN HANDS DEFENSE

If the Court believes that seeking leave to assert the unclean hands defense is the better approach, Defendants seek it now. Rule 15(a)(2) "allows amendments to the pleadings before trial 'with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires.'" *Dionisio v. Ultimate Images & Designs, Inc.*, 391 F. Supp. 3d 1187, 1193 (S.D. Fla. 2019) (quoting Fed. R. Civ. P. 15(a)(2)). "Unless a motion to amend a pleading is made in bad faith or for undue delay, constitutes dilatory conduct or will prejudice a non-movant, leave to amend should be given freely." *Denarii Sys., LLC v. Arab*, 2013 WL 500826, at *2 (S.D. Fla. Feb. 11, 2013) (citing *Hargett v. Valley Fed. Sav. Bank*, 60 F.3d 754, 761 (11th Cir. 1995)).

Plaintiff itself admits that it "is well established that District Courts have discretion to allow an answer to be amended to assert an affirmative defense not raised initially." Mtn. at 4. And just in the last month, Plaintiff has borrowed on similar discretion twice. Nearly a year after the deadline to do so had passed, Plaintiff sought leave to amend its complaint to assert facts known to Plaintiff well before this case was initiated. And nearly a year after initiating this case, and well beyond the time to do so, Plaintiff sought leave to interpose an untimely jury demand. The Court found good cause to allow both changes. The good cause allowing Defendants to assert an unclean hands defense is orders of magnitude more compelling. Specifically, as Plaintiff admits, the facts underlying the defense were not available to Defendants until very recently and certainly not at the time the original Answer was filed. Additionally, Defendants have ample cause for asserting that

---

other lawsuits in English (*id.* at 9:24-10:21), and he even corrected the translator's translations (*see, e.g.*, *id.* at 177:13-178:8). Counsel's own disruptions did not help either, like unilaterally stopping the deposition and leaving the room in the midst of a pending question, or repeatedly testifying on the record over objection. *See, e.g.*, Vasallo Tr. at 38:7-42:12.

defense in response to the extensive discovery misconduct recounted above; such a defense is supported by established law, and Plaintiff has no viable claim of prejudice from being faced with the consequences of their own litigation choices. *See, e.g.*, *Vrtoysone*, 2022 WL 1601385, at *3 (plaintiff's own inequitable conduct sufficient basis to plead unclean hands defense); *Gilead Sciences*, 888 F.3d at 1248 (upholding unclean hands defense where "litigation misconduct infected this entire case").

## CONCLUSION

For these reasons, the Court should deny Plaintiff's Motion to Strike. In the alternative, Defendants respectfully seek leave *nunc pro tunc* to assert their unclean hands defense.

Date: December 5, 2022                    Respectfully submitted,

STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
150 West Flagler Street, Suite 2200
Miami, Florida 33130
Telephone:  (305) 789-3229
Facsimile:  (305) 789-2664

By:     */s/ Jay B. Shapiro*
        Jay B. Shapiro, Esq.
        Florida Bar No. 776361
        jshapiro@stearnsweaver.com
        David T. Coulter, Esq.
        Florida Bar No. 119874
        dcoulter@stearnsweaver.com

WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone:  (212) 999-5800
Facsimile:  (212) 999-5801

        Brian M. Willen, Esq. (*admitted pro hac*)
        bwillen@wsgr.com
        Lucy Yen, Esq. (*admitted pro hac*)
        lyen@wsgr.com
        Catherine Hartman, Esq. (*admitted pro hac*)
        chartman@wsgr.com

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 5, 2022, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

*/s/ Jay B. Shapiro*
JAY B. SHAPIRO, ESQ.

## SERVICE LIST

Case No. 1:21-cv-21698-DPG
United States District Court, Southern District of Florida

Rey Dorta, Esq.
Florida Bar No. 0084920
Omar Ortega, Esq.
Florida Bar No. 0095117
Rosdaisy Rodriguez, Esq.
Florida Bar No. 112710
Natalie A. Ferral, Esq.
Florida Bar No. 1012314
**DORTA & ORTEGA, P.A**
3860 SW 8th Street, PH
Coral Gables, Florida 33134
Telephone:(305) 461-5454
Facsimile: (305) 461-5226
oortega@dortaandortega.com
rdorta@dortaandortega.com
rrodriguez@dortaandortega.com
ybuergo@dortaandortega.com
dcruz@dortaandortega.com

***Counsel for Plaintiff***