UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:21-cv-21698-DPG

ATHOS OVERSEAS LIMITED CORP.,

    Plaintiff,

v.

YOUTUBE, INC., YOUTUBE, LLC, and
GOOGLE, LLC,

    Defendants.

**DEFENDANTS YOUTUBE, LLC AND GOOGLE LLC'S REPLY
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

## **TABLE OF CONTENTS**

**Page**

ARGUMENT .................................................................................................................................. 1

I.  PLAINTIFF FAILS TO ESTABLISH A TRIABLE ISSUE ON THE STATUTE
    OF LIMITATIONS FOR MOST OF ITS CLIPS-IN-SUIT ............................................... 1

II. PLAINTIFF FAILS TO CARRY ITS BURDEN ON OWNERSHIP ............................... 2

III. PLAINTIFF FAILS TO ESTABLISH A TRIABLE ISSUE ON THE DMCA ................ 2

    A.  Plaintiff Does Not Meet Its Burden Of Showing That YouTube Knew Of
        And Failed To Remove Specific Instances Of Alleged Copyright
        Infringement ................................................................................................................ 3

    B.  Plaintiff Cannot Disqualify YouTube Under The Control/Benefit
        Provision ..................................................................................................................... 8

IV. PLAINTIFF FAILS TO ESTABLISH A TRIABLE ISSUE ON INDUCEMENT ......... 10

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Capitol Recs., LLC v. Vimeo, LLC*,
   972 F. Supp. 2d 500 (S.D.N.Y. 2013) ............................................................................. 5, 6, 9

*Capitol Recs., LLC v. Vimeo, LLC*,
   826 F.3d 78 (2d Cir. 2016) ......................................................................................................7

*Davis v. Pinterest*,
   — F. Supp. 3d —, 2022 WL 1316566 (N.D. Cal. May 3, 2022) ............................................9

*Disney Enters., Inc. v. Hotfile Corp.*,
   2013 WL 6336286 (S.D. Fla. Sept. 20, 2013) ......................................................................6, 9

*Downs v. Oath Inc.*,
   385 F. Supp. 3d 298 (S.D.N.Y. 2019) ...................................................................................10

*Perfect 10, Inc. v. CCBill LLC*,
   488 F.3d 1102 (9th Cir. 2007) .................................................................................................8

*Perfect 10, Inc. v. Giganews, Inc.*,
   993 F. Supp. 2d 1192 (C.D. Cal. 2014) ...................................................................................6

*Sieger Suarez Architectural P'ship, Inc. v. Arquitectonica Int'l Corp.*,
   998 F. Supp. 2d 1340 (S.D. Fla. 2014) ....................................................................................1

*Steinmetz v. Shutterstock, Inc.*,
   — F. Supp. 3d —, 2022 WL 4342174 (S.D.N.Y. Sept. 19, 2022) .........................................5

*UMG Recordings, Inc. v. Shelter Cap. Partners LLC*,
   718 F.3d 1006 (9th Cir. 2013) ........................................................................................ *passim*

*Ventura Content, Ltd. v. Motherless, Inc.*,
   885 F.3d 597 (9th Cir. 2018) ............................................................................................5, 10

*Viacom Int'l Inc. v. YouTube, Inc.*,
   718 F. Supp. 2d 514 (S.D.N.Y. 2010) .....................................................................................5

*Viacom Int'l, Inc. v. YouTube, Inc.*,
   676 F.3d 19 (2d Cir. 2012) ............................................................................................ *passim*

*Viacom Int'l Inc. v. YouTube, Inc.*,
   940 F. Supp. 2d 110 (S.D.N.Y. 2013) ............................................................................4, 5, 9

*Wolk v. Kodak Imaging Network, Inc.*,
   840 F. Supp. 2d. 724 (S.D.N.Y. 2012), *aff'd*,
   569 F. App'x 51 (2d Cir. 2014) ............................................................................................5, 7

**Statutes**

17 U.S.C. § 512 ............................................................................................................... *passim*

Plaintiff's Opposition (Dkt. 138, "Pl. Opp'n") confirms YouTube is entitled to summary judgment. Plaintiff concedes that most of its infringement claims are time-barred. Plaintiff also begrudgingly acknowledges that it does not own all the works-in-suit, and fails to cite any actual evidence that it owns any of them. Moreover, by defending Plaintiff's inducement claim in a one-sentence footnote bereft of any legal argument or evidentiary citation, the Opposition effectively abandons that count. That leaves the DMCA safe harbor, where Plaintiff tries to avoid summary judgment by rewriting the statute, disregarding the long line of cases that have rejected its arguments, and ignoring the undisputed record.

## ARGUMENT

### I. PLAINTIFF FAILS TO ESTABLISH A TRIABLE ISSUE ON THE STATUTE OF LIMITATIONS FOR MOST OF ITS CLIPS-IN-SUIT

Plaintiff concedes that the statute of limitations requires summary judgment for YouTube on the more than 3,000 clips-in-suit Plaintiff identified in takedown notices sent on or before May 3, 2018. Pl. Opp'n at 18; Dkt. 115 ("YT MSJ") at 7; YT SUF Reply (filed herewith) ¶ 31. Plaintiff also admits that there were "at least 676 clips-in-suit[] publicly posted on YouTube before May 3, 2018 that Plaintiff identified to YouTube after May 3, 2018." YT SUF Reply ¶ 32. Plaintiff recognizes that these clips are also time-barred under the injury rule. Pl. Opp'n at 18-19; *see* YT MSJ 7-8. It asks this Court to instead apply the "discovery rule" to these additional clips, which Plaintiff argues raises a factual issue. Pl. Opp'n at 19. But Plaintiff's own citation applies the discovery rule to dismiss time-barred claims where, as here, the plaintiff was on notice of the need to investigate potential infringement. *Sieger Suarez Architectural P'ship, Inc. v. Arquitectonica Int'l Corp.*, 998 F. Supp. 2d 1340, 1355 (S.D. Fla. 2014). And there is no genuine dispute on this point: Plaintiff admits that its agents were actively monitoring potential infringement on YouTube at the time these 676 clips were publicly available, well in advance of the limitations period, but Plaintiff delayed sending DMCA notices and ultimately waited more than three years to file suit. YT SUF Reply ¶¶ 22, 34; YT MSJ 4. Plaintiff offers no explanation for why its agents did not or could not have discovered those clips sooner, and certainly no facts that would allow a jury to find

for Plaintiff. These claims too are time-barred. Dkt. 116-1 Ex. 13 (identifying time-barred clips).

## II. PLAINTIFF FAILS TO CARRY ITS BURDEN ON OWNERSHIP

Plaintiff has failed to meet the basic evidentiary requirement to prove that it owns all the works-in-suit at issue. Plaintiff argues that the entire universe of works-in-suit "[was] identified in discovery in document bate-numbered [sic] ATHOS_0022611." YT SUF Reply ¶ 63. But that document—a single-column spreadsheet listing movie titles (*see* Dkt. 116-1 Ex. 21)—is not evidence that Plaintiff actually owns anything. YT MSJ at 8-9.[1] Indeed, Plaintiff now admits that it does ***not*** own all of the titles on that spreadsheet. YT SUF Reply ¶ 51. Even Plaintiff agrees that YouTube is entitled to summary judgment on those works (*El Dandy y Sus Mujeres*, *Las Calenturas de Juan Camaney II*, and *El Asesino Del Metro*). But the Opposition ignores the additional 1,155 clips-in-suit that come from at least 88 other works that Plaintiff also does not own (YT MSJ at 8-9), while admitting elsewhere that such "films are not a part of works in suit and Plaintiff does not seek damages for those infringements" (YT SUF Reply ¶ 53). Plaintiff's lack of ownership entitles YouTube to summary judgment on these 1,155 clips-in-suit as well.

## III. PLAINTIFF FAILS TO ESTABLISH A TRIABLE ISSUE ON THE DMCA

The Opposition concedes most of YouTube's DMCA defense. Plaintiff does not dispute that YouTube: (1) is a "service provider"; (2) maintained a designated DMCA agent; (3) adopted, reasonably implemented, and informed users of its repeat-infringer policy; (4) does not interfere with "standard technical measures"; and (5) that the infringement claims at issue arise by reason of "storage at the direction of a user." YT MSJ at 2, 9-12; YT SUF Reply ¶¶ 3-17, 26-29. That leaves only two DMCA elements, on which Plaintiff bears the burden of proof. Plaintiff argues: (1) that YouTube's Content ID tool confers the requisite knowledge of infringement of clips similar to those identified in Plaintiff's DMCA notices; and (2) that YouTube has the right and ability to control alleged infringements from which it earned a direct financial benefit. Pl. Opp'n

---

[1] While uncited in its Opposition, Plaintiff's ownership documents show, at most, that certain works-in-suit were owned by the entity based in the British Virgin Islands (Athos Overseas, Ltd.) that originally filed this lawsuit. But that entity was discontinued, and Plaintiff has provided no actual evidence that its purported successor entity (which is now the named Plaintiff) actually owns any of the works-in-suit. Dkt. 114-1 Ex. 1 at 421:06-422:03; Dkt. 139 ("YT Opp'n") at 18-19.

at 3-18. Plaintiff fails to create a jury issue on either theory. YT MSJ at 12-20.

      **A.    Plaintiff Does Not Meet Its Burden Of Showing That YouTube Knew Of And Failed To Remove Specific Instances Of Alleged Copyright Infringement**

*There Is No Factual Basis For Plaintiff's Knowledge Theory*. Plaintiff does not argue that YouTube failed to expeditiously remove any clip-in-suit that was actually identified in Plaintiff's DMCA notices or that YouTube was specifically aware of allegedly infringing clips-in-suit before they were removed. Instead, Plaintiff's core DMCA argument is that YouTube should have used Content ID to search for clips different from—but similar to—the ones identified in Plaintiff's takedown notices. Pl. Opp'n at 6-12. As discussed in YouTube's Motion (and below), this argument fails as a matter of law. But the Court need not reach that legal issue at all.

In its Motion (at 16-17), YouTube explained that this case is limited to a defined set of clips-in-suit and that Plaintiff has no evidence showing that, if YouTube had used Content ID as Plaintiff now demands, that would have identified—much less blocked or removed—any actual clips-in-suit. Plaintiff does not respond, other than to say that it repeatedly sent DMCA notices "for the same work." Pl. Opp'n at 8; YT SUF Reply ¶ 61; *see id.* ¶ 44. But this is sleight of hand, which conflates ***works*** (movies) with ***alleged infringements*** (the specific video clips alleged to be infringing). The fact that a clip from a given movie was identified in a DMCA notice does not mean that Content ID would be able to find some other clip from the same movie. For example, fingerprinting the "King of the World" scene from *Titanic* would not help find a clip of the scene where the ship hits the iceberg. And Plaintiff points to no evidence that any of the clips-in-suit are substantially identical to clips that Plaintiff previously identified in its DMCA notices—much less make any kind of factual showing that Content ID would have found a single clip-in-suit before that clip was removed through YouTube's regular DMCA process.[2] Plaintiff's silence concedes that it cannot create a triable issue on this point. That renders Plaintiff's legal arguments about the DMCA's knowledge provision entirely academic—abstract theories about how the DMCA should

---

      [2] Plaintiff also ignores that YouTube at all relevant times used hashing technology to block users from uploading ***identical*** copies of videos removed via DMCA notices. YT MSJ at 14 n.5.

be applied without any evidentiary connection to the particular clips-in-suit. The Court need go no further to grant summary judgment to YouTube. *See Viacom Int'l Inc. v. YouTube, Inc.*, 940 F. Supp. 2d 110, 115 (S.D.N.Y. 2013) ("*Viacom III*").

*Plaintiff's Knowledge Argument Is Wrong On The Law*. Even if it were a live issue, Plaintiff's effort to rewrite the DMCA to require YouTube to use its technology to "fingerprint" the videos identified in DMCA notices and then scour its service for other, unidentified videos should be rejected as a matter of law. The theory directly contradicts both the DMCA's text and more than a decade of case law.

As explained in YouTube's Motion (at 14-15), § 512(m) expressly states that safe-harbor protection cannot be conditioned on the service provider "monitoring its service or affirmatively seeking facts indicating infringing activity." Additionally, the statute makes clear that a DMCA notice must identify, with particularity, the specific infringing material to be removed (§ 512(c)(3)(A)(iii), (v)) and that a notice that does not properly identify the infringing material cannot be used to impute disqualifying knowledge (§ 512(c)(3)(B)(i)). *See Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 30 (2d Cir. 2012) ("*Viacom II*") ("expeditious removal is possible only if the service provider knows with particularity which items to remove"). Those provisions are dispositive, and it is telling that the Opposition does not discuss § 512(m) or 512(c)(3)(B)(i). While Plaintiff says (at 11-12) that its theory would not impose a duty to monitor, that is clearly wrong. Requiring YouTube to affirmatively use its tools to search for clips similar to ones taken down is a paradigmatic example of the monitoring that § 512(m) rules out, as *Viacom II* makes clear. 676 F.3d at 40-41. Plaintiff points to the fact that YouTube uses Content ID in collaboration with copyright owners—as it offered to do with Plaintiff. But to impose such monitoring as a condition of DMCA protection is expressly forbidden by the statute. *See id*.

Nor does Plaintiff contend with the long line of cases that have rejected its arguments. Plaintiff complains that "YouTube only removed Plaintiff's content when it received a takedown notice, but failed to remove fingerprint matches of that infringing material elsewhere on its

platform." Pl. Opp'n at 6-7.³ This is the very argument that the courts in *Viacom*, *Vimeo*, and *Shelter Capital* rejected (YT MSJ 15-16)—precisely because it would "eviscerate the required specificity of notice" and "would put the provider to the factual search forbidden by § 512(m)," *Viacom Int'l Inc. v. YouTube, Inc.*, 718 F. Supp. 2d 514, 528-29 (S.D.N.Y. 2010) ("*Viacom I*"). Plaintiff says this case is somehow different because of Content ID. But *Viacom* involved exactly the same Content ID technology, and the Second Circuit expressly held that YouTube could not be excluded from the DMCA because it supposedly "set up its identification tools to try to avoid identifying infringements of class plaintiffs' works." *Viacom II*, 676 F.3d at 40-41; *accord Viacom III*, 940 F. Supp. 2d at 116-17 & n.3 ("Plaintiffs often suggest that YouTube can readily locate the infringements by using its own identification tools. It had no duty to do so.").

Plaintiff cannot get around this problem by asserting that its takedown notices provided all the information YouTube needed to find additional clips. Pl. Opp'n at 11 (discussing § 512(c)(3)(A)). There is no dispute that YouTube promptly removed all the clips actually identified (by URL or otherwise) in Plaintiff's DMCA notices. The issue here is other clips posted by different users at different locations that Plaintiff does not dispute its notices did ***not*** identify (by URL or otherwise). A DMCA notice failing to identify such clips is not sufficient under § 512(c)(3)(A) to require YouTube to search for and remove them—as courts have repeatedly held. *See Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 612 (9th Cir. 2018) ("[A]s a practical matter what [service provider] needed to remove them was a URL for each [alleged infringement]."); *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 746-47 (S.D.N.Y. 2012) (rejecting, as inconsistent with § 512(c)(3)(A), "a system where one notice of infringement would apply to all instances of that image appearing on the website"), *aff'd*, 569 F. App'x 51 (2d

---

³ While it makes no difference legally, Plaintiff's suggestion that YouTube automatically fingerprints all uploaded videos and generates matches to any other similar videos misconstrues Kevin Zhu's testimony. What Mr. Zhu actually testified is that YouTube fingerprints new uploads and compares them ***to reference files in the Content ID corpus***—surfacing matches to content owners participating in the Content ID program. Dkt. 137 Ex. 6 (Zhu Tr.) at 103:03-10. Mr. Zhu did not say (and Plaintiff offers no evidence) that YouTube had fingerprint matches comparing videos removed based on Plaintiff's DMCA notices with all other videos on the service.

Cir. 2014); *Viacom I*, 718 F. Supp. 2d at 528-29 (same, discussing legislative history); *Steinmetz v. Shutterstock, Inc.*, — F. Supp. 3d —, 2022 WL 4342174, at *7 (S.D.N.Y. Sept. 19, 2022) (DMCA notice deficient where plaintiff did not specify "the URLs where he was able to view his image"); *Perfect 10, Inc. v. Giganews, Inc.*, 993 F. Supp. 2d 1192, 1198-1203 (C.D. Cal. 2014) (copyright owner required to include specific Message-IDs—a "unique identifier" that functioned "like a URL"—for DMCA notices to be sufficient to identify infringing material).

That does not change merely because of Content ID. Even beyond the factual problem discussed above, "§ 512(m) and attendant case law make clear that service providers are under no affirmative duty to seek out infringement. This remains the case even when a service provider has developed technology permitting it to do so." *Capitol Recs., LLC v. Vimeo, LLC*, 972 F. Supp. 2d 500, 525 (S.D.N.Y. 2013). Providers that choose to go beyond what the law requires in implementing fingerprinting tools are not thereby saddled with broad new obligations to use such technology in response to every takedown notice they receive. Section 512(c)(1)(C) cannot be read to require YouTube to do exactly what § 512(m) disclaims. *Cf. UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1023-24 (9th Cir. 2013) (rejecting argument that "Veoh should have taken the initiative to use search and indexing tools to locate and remove from its website any other content by the artists identified in the notices" as in "conflict with § 512(m) [and] § 512(c)(1)(C)"). Not only does that disregard the statute's text, it would create a massive disincentive for the voluntary development of technology that can be used to help address copyright issues. YT MSJ at 16. The Court should reject Plaintiff's effort to rewrite the DMCA to ensure that no good deed goes unpunished.[4]

---

[4] Plaintiff cites *Disney Enterprises, Inc. v. Hotfile Corporation*, which held that the defendant was outside the DMCA safe harbor because it failed to implement a repeat-infringer policy—a requirement that Plaintiff does not challenge here. 2013 WL 6336286, at *25 (S.D. Fla. Sept. 20, 2013). In dicta, the court remarked that there might be a triable issue on knowledge. But Hotfile's service was totally different from YouTube's: Hotfile stored files, then provided individualized links allowing users to download a given file. In some instances, the evidence suggested that Hotfile became "attuned to the infringing nature of the files"—but only would remove a single link, rather than the underlying file itself. *Id.* at *2-3, *25, *28. Nothing like that occurred here. The only other case Plaintiff cites is *Venus Fashions, Inc. v. ContextLogic, Inc.*, which was decided on a motion for preliminary injunction, and involved the use of fingerprinting technology to

Plaintiff's approach would also wreak havoc. Contrary to what Plaintiff seems to assume, the fact that a given YouTube video has been alleged via DMCA notice to be infringing does ***not*** mean that even similar content posted by a different user in a different video is necessarily infringing. Mistaken takedown notices, complex licensing practices, and nuanced fair-use issues are endemic on YouTube. Dkt. 137 Ex. 6 (Zhu Tr.) at 151:02-10; *id.* Ex. 5 (Carver Tr.) at 29:02-30:14, 51:17-21, 76:02-08; *cf. Capitol Recs., LLC v. Vimeo, LLC*, 826 F.3d 78, 97 (2d Cir. 2016). Thus, even if it were possible for YouTube to use Content ID to search for and automatically remove any video similar to (or with content from the same work as) each video removed based on a DMCA notice, the collateral damage to legitimate expression would be immense. The consequences of any incorrect takedown notice would be vastly magnified, and countless potential fair uses would be swept up in the dragnet, along with many videos properly licensed or even uploaded by rightsholders themselves. Dkt. 137 Ex. 5 (Carver Tr.) at 30:02-14; *accord Wolk*, 840 F. Supp. 2d at 747.

The record in this case bears that out. Many of Plaintiff's DMCA notices were successfully countered by uploaders, often on the grounds that the videos identified were licensed or fair uses. YT MSJ at 5, 16 n.6; YT Opp'n at 10, 12; Dkt. 140-1 Exs. N-O. And there is undisputed evidence that Plaintiff's own agents uploaded thousands of clips from the works at issue to YouTube. YT SUF Reply ¶ 33; *see* Dkts. 129-6, 129-7. Plaintiff's own experience thus underscores that blindly using Content ID to remove all clips similar to those identified in DMCA notices would create untoward opportunities for error, removing potentially large amounts of non-infringing material, possibly including clips that Plaintiff's agents themselves posted. Despite Plaintiff's rhetoric,

---

identify photographs. 2017 WL 2901695, at *24 (M.D. Fla. Jan. 17, 2017). The service provider was actively using that technology to scan for the plaintiff's images, and the court found that the plaintiff had a likelihood of succeeding in showing that would amount to red-flag knowledge. This case is different, as YouTube did not use Content ID to scan for Plaintiff's movies—precisely because Plaintiff rejected YouTube's offer to give it access to Content ID. YT SUF Reply ¶¶ 35-40. But insofar as *Venus* could be read to suggest that the DMCA requires service providers to affirmatively use fingerprinting technology to search for additional instances of allegedly infringing content, which is not actually identified in a DMCA notice, it erroneously departs from the text of the statute and the many cases that have correctly rejected that idea.

recognizing this reality does not favor infringers over copyright owners. Instead, it respects the balance struck in the DMCA, which puts the burden of identifying specific infringing material on copyright owners and disclaims any affirmative search requirements—precisely so that the rights of innocent third parties will not be impaired based on the mere possibility that there might be infringement afoot. *See* YT MSJ at 2-3; *Shelter Cap.*, 718 F.3d at 1022; *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1112 (9th Cir. 2007).

Finally, Plaintiff's argument about Content ID ignores another obvious reality: the undisputed fact that YouTube offered Content ID to Plaintiff in 2015 and Plaintiff rejected that offer. YT SUF Reply ¶¶ 35-40. At all relevant times, therefore, Plaintiff could have had access to Content ID and used it to manage its content on YouTube, including by blocking unwanted clips. Having chosen not to use Content ID in the cooperative way appropriate for such a powerful technology,[5] Plaintiff is especially ill-positioned to demand that the Court rewrite the DMCA to force YouTube to apply Content ID in a very different way, which involves no active participation by copyright owners. Plaintiff's decision not to cooperate is no reason to require YouTube to act on its own.

### B. Plaintiff Cannot Disqualify YouTube Under The Control/Benefit Provision

*The DMCA Does Not Codify The Common Law Of Vicarious Infringement.* Like its knowledge argument, Plaintiff's argument under the DMCA's control provision advocates for a radical departure from settled law. Here, too, the Court should decline that invitation.

Plaintiff argues that the control provision merely codifies the common-law doctrine of vicarious-copyright liability. Pl. Opp'n at 14. But this exact argument has been rejected by every court to consider it, including after extended analysis by the Second and Ninth Circuits, which explained, among other things, that this reading would render the DMCA "internally inconsistent."

---

[5] Plaintiff tries to excuse its rejection of Content ID by grumbling that the contractual terms were "those of a monopoly and abusive," Pl. Opp'n at 9, without offering any support for that assertion. Tellingly, Plaintiff has now abandoned its (demonstrably false) allegations in its Complaint that Plaintiff would have been required to monetize content on YouTube or give up its rights to bring infringement claims had it accepted YouTube's offer to use Content ID. YT SUF Reply ¶¶ 35-40.

*Shelter Cap.*, 718 F.3d at 1027-29 (explaining a fatal flaw in codification argument: that a service's ability to remove content, a requirement for DMCA safe-harbor eligibility, would also constitute control at common law, thus disqualifying the provider from eligibility); *Viacom II*, 676 F.3d at 36-38 (same).[6] Instead of duplicating the common law, the DMCA's "control" provision asks whether the service exerts "substantial influence on the activities of users." *Shelter Cap.*, 718 F.3d at 1030-31. That renders all Plaintiff's non-DMCA vicarious liability cases—the only ones it relies on in arguing that YouTube had "the right and ability to control"—irrelevant. *Cf. Hotfile*, 2013 WL 6336286, at *40 n.26 (explaining that the standard for vicarious liability and DMCA control are different).

Plaintiff makes no serious attempt to identify any triable issue as to whether YouTube exercised the kind of "substantial influence" that could potentially disqualify it from the DMCA under Section 512(c)(1)(B). YT MSJ at 17-19; YT SUF Reply ¶¶ 18, 20, 46-47. The Opposition makes a half-hearted argument that YouTube's advertising, monetization, and algorithmic curation somehow amount to control. Pl. Opp'n at 16. They do not—as case after case makes clear. *See Viacom III*, 940 F. Supp. 2d at 120-21 (neither YouTube's "search technologies," nor its "related videos" feature, which suggested videos for users to watch based on their viewing history, amounted to DMCA "control"); *Davis v. Pinterest*, — F. Supp. 3d —, 2022 WL 1316566, at *15 (N.D. Cal. May 3, 2022) (no DMCA control despite "Pinterest's control over its algorithms or the advertising on its platform"); *Vimeo*, 972 F. Supp. 2d at 528-30 (same, despite service's promotion of particular user-uploaded content for greater visibility, demotion of undesirable content, and highlighting of popular content).[7]

---

[6] Plaintiff relies almost exclusively on a snippet from the DMCA's legislative history. Pl. Opp'n at 14. But the Ninth Circuit expressly (and correctly) rejected this argument, explaining that the passage came from a report that "referred to a version of the bill different from the one ultimately passed, and the discussion of vicarious liability is omitted from all later reports and, notably, from the statutory language." *Shelter Cap.*, 718 F.3d at 1028; *accord Viacom II*, 676 F.3d at 36-37. The later legislative history in fact makes clear that the statute was specifically intended to protect against vicarious liability. *Shelter Cap.*, 718 F.3d at 1028.

[7] Plaintiff also claims that YouTube has control because it "willfully and intentional [sic] chooses not to use digital fingerprinting to take down video content identical to that for which it has received take-down notices." Pl. Opp'n at 16. This just duplicates Plaintiff's failed knowledge

*Plaintiff Cannot Carry Its Burden to Show a Direct Financial Benefit.* While the Court need not address financial benefit in the absence of evidence of "control," Plaintiff's argument fails there as well. Plaintiff says that advertising is only "one form of monetization" and "does not account for other forms of revenue." Pl. Opp'n at 18. But Plaintiff fails to identify what those other forms might be, or meet its burden of "put[ing] forth evidence of a connection between the allegedly infringing activity and the financial benefit that [YouTube] received." *Downs v. Oath Inc.*, 385 F. Supp. 3d 298, 307 (S.D.N.Y. 2019). That evidentiary hole is dispositive of the 90% of clips-in-suit, for which there is indisputably no evidence that YouTube earned *any* ad revenue. YT MSJ at 19-20. Plaintiff's argument also fails as to the other 10%. Plaintiff adduces no evidence that the ad revenue was *targeted* at allegedly infringing material, rather than *coincidentally* appearing before or after it. *Id*. That is not enough. As in *Downs*, "the undisputed evidence shows that [YouTube] simply ran advertisements on user-generated [videos], some of which inevitably contained infringing material." 385 F. Supp. 3d at 307; *accord Motherless*, 885 F.3d at 613.

## IV.   PLAINTIFF FAILS TO ESTABLISH A TRIABLE ISSUE ON INDUCEMENT

Finally, YouTube's Motion explained that Plaintiff's inducement claim fails because there is no evidence that YouTube ever took "active steps" to affirmatively promote infringement. YT MSJ at 20. Plaintiff does not respond, other than a hand-waving footnote that offers no argument and cites no evidence. Pl. Opp'n at 17 n.9. That cannot stave off summary judgment.

## CONCLUSION

YouTube's Motion for Summary Judgment should be granted.

---

argument, and it fails for the same reasons. *See Viacom III*, 940 F. Supp. 2d at 120 ("YouTube's decisions to restrict its monitoring efforts to certain groups of infringing clips . . . do not exclude it from the safe harbor."); *Shelter Cap.*, 718 F.3d at 1030 (rejecting argument that Veoh had "control" because it "could have implemented, and did implement, filtering systems" and "could have searched for potentially infringing content").

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: December 21, 2022 | STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.<br>150 West Flagler Street, Suite 2200<br>Miami, Florida 33130<br>Telephone: (305) 789-3229<br>Facsimile: (305) 789-2664<br><br>By: */s/ Jay B. Shapiro*<br>   Jay B. Shapiro, Esq.<br>   Florida Bar No. 776361<br>   jshapiro@stearnsweaver.com<br>   David T. Coulter, Esq.<br>   Florida Bar No. 119874<br>   dcoulter@stearnsweaver.com<br><br>WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br>1301 Avenue of the Americas, 40th Floor<br>New York, NY 10019<br>Telephone: (212) 999-5800<br>Facsimile: (212) 999-5801<br>      Brian M. Willen, Esq. (*pro hac vice*)<br>      bwillen@wsgr.com<br>      Lucy Yen, Esq. (*pro hac vice*)<br>      lyen@wsgr.com<br>      Dylan Byrd, Esq. (*pro hac vice*)<br>      dbyrd@wsgr.com<br><br>***Counsel for Defendants*** |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 21, 2022, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

*/s/Jay B. Shapiro*
JAY B. SHAPIRO, ESQ.

## SERVICE LIST

Case No. 1:21-cv-21698-DPG
United States District Court, Southern District of Florida

Rey Dorta, Esq.
Florida Bar No. 0084920
Omar Ortega, Esq.
Florida Bar No. 0095117
Rosdaisy Rodriguez, Esq.
Florida Bar No. 112710
Yvette C. Buergo, Esq.
Florida Bar No. 1003212
**DORTA & ORTEGA, P.A**
3860 SW 8th Street, PH
Coral Gables, Florida 33134
Telephone:(305) 461-5454
Facsimile: (305) 461-5226
oortega@dortaandortega.com
rdorta@dortaandortega.com
rrodriguez@dortaandortega.com
ybuergo@dortaandortega.com
dcruz@dortaandortega.com

*Counsel for Plaintiff*